## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **JERONIQUE D. CUNNINGHAM** | ) | **CASE NO.  3:06CV0167** |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **JUDGE PETER C. ECONOMUS** |
| **v.** | ) | |
| | ) | |
| **STUART HUDSON, WARDEN** | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| **Respondent.** | ) | |

This matter is before the Court upon Petitioner Jeronique D. Cunningham's ("Cunningham" or "Petitioner") Motions to Expand the Record (ECF 67), Compel Discovery from the Respondent and for Leave to Take Depositions from Various Individuals After the Documentary Evidence Has Been Completed (ECF 79), for Evidentiary Hearing Pursuant to Rule 8 of the Rules Governing Section 2254 Cases (ECF 68), and for Funds to Employ a Ballistic Expert. (ECF 69). In addition to the briefs in support of Cunningham's Motions, the Court has considered Respondent Stuart Hudson's ("Respondent") Opposition to Cunningham's Motions to Expand the Record (ECF 72), to Conduct Discovery (ECF 84), for Evidentiary Hearing (ECF 75), and for Funds to Employ a Ballistic Expert (ECF 74), as well as Cunningham's reply in support of his Motion to Expand the Record. (ECF 80).  For the following reasons, Cunningham's Motion to Compel Discovery will be granted in part and denied in part. The remaining Motions will be denied.

### I. FACTS

On January 3, 2002, Cunningham and his half-brother, Cleveland Jackson, Jr., robbed a group of eight people, and then fired their guns into the group from close range. Three year-old Jayla Grant and 17 year-old Leneshia Williams died of gunshot wounds. Other individuals suffered

gunshot wounds. Earlier that afternoon, Tara Cunningham, Cunningham's sister and Jackson's half-sister, saw Cunningham and Jackson. According to Tara, Cunningham "was wiping off a gun and Jackson was wiping off a clip with bullets in it." Tr. Vol. 6, pg. 1095. Tara heard Jackson tell Cunningham that he was going to "hit a lick," i.e., "rob somebody." Tr. Vol. 6, pg. 1096. A jury convicted Cunningham of the aggravated murder of Grant and Williams. Both Cunningham and Jackson had guns and were seen firing them. The defense did not dispute that Cunningham brandished a gun both before and during the shootings. The defense's theory was that Cunningham's gun was inoperable, and that he had neither planned nor intended to kill anyone.

## II. EXPAND THE RECORD

Rule 7 of the Rules Governing Section 2254 Cases provides:

(a) In General. If the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the petition. The judge may require that these materials be authenticated.
(b) Types of Materials. The materials that may be required include letters predating the filing of the petition, documents, exhibits, and answers under oath to written interrogatories propounded by the judge. Affidavits may also be submitted and considered as part of the record.
(c) Review by the Opposing Party. The judge must give the party against whom the additional materials are offered an opportunity to admit or deny their correctness.

Cunningham requests the following:

State court records from *State of Ohio v. Cleveland Jackson*, Court of Common Pleas Allen County Case No. CR2002-0011, Ohio Supreme Court Case No. 2002-1604;

the state court records of the post-conviction proceedings in *State of Ohio v. Cleveland Jackson*, Court of Common Pleas Allen County Case No. CR2002-0011, Third District Court of Appeals, Case No. 1-04-31, Ohio Supreme Court Case No. 2004-1939; and

the state court records of *State of Ohio v. Cleveland Jackson*, Court of Common Pleas Allen County Case No. CR2002-0011, on remand from the Ohio Supreme Court.

Rule 7 allows the record to be expanded to include additional material relevant to the merits of the petition. *Adkins v. Konteh,* 2007 WL 461292, *20 (N. D. Ohio Feb. 7, 2007)(citing *Jamison v. Collins,* 291 F.3d 380, 387 (6th Cir. 2002)). In fact, its purpose is to clarify the relevant facts. *Vasquez v. Hillery,* 474 U.S. 254, 258 (1986). In *Holland v. Jackson*, 542 U.S. 649, 653 (2004), the United States Supreme Court held that the restrictions set forth in 28 U.S.C. § 2254(e)(2) "apply *a fortiori* when a prisoner seeks relief based on new evidence without an evidentiary hearing." *Stallings v. Bagley*, 2007 WL 437888 * 2 (N. D. Ohio Feb. 6, 2007); *Phillips v. Bradshaw*, 2006 WL 2855077 * 10 (N. D. Ohio Sep. 29, 2006).[1] After *Holland*, the § 2254(e)(2) standards are applied to motions to expand the record. *Phillips*, 2006 WL 2855077 at * 10 (citing *Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1241 (9th Cir. 2005).

The record shows that Cunningham's post-conviction counsel requested from the Allen County prosecutor the entire files related to the  homicides and shootings as well as the files from the Allen County Children's Services related to the  neglect, abuse and dependency in the

---

[1]  28 U.S.C. § 2254(e)(2) provides:

2) If the applicant has failed to develop the factual basis of a claim in State court
   proceedings, the court shall not hold an evidentiary hearing on the claim unless the
   applicant shows that--
(A) the claim relies on--

  (i) a new rule of constitutional law, made retroactive to cases on collateral review by
      the Supreme Court, that was previously unavailable; or

  (ii) a factual predicate that could not have been previously discovered through the
       exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and
    convincing evidence that but for constitutional error, no reasonable factfinder
    would  have found the applicant guilty of the underlying offense.

Cunningham and Jackson families. Apx. Vol. 6, pg. 484.  The request was denied because, in Ohio,

a post-conviction petitioner is not entitled to discovery.  Apx. Vol. 6, pg. 570. *See Cowens v. Bagley*,

236 F. Supp.2nd 841, 865 (S.D. Ohio 2002)(it is well settled under Ohio law that petitioners

pursuing post-conviction relief pursuant to R.C. 2953.21 are not entitled to discovery); *Mitts v.

Bagley*, 2005 WL 2416929 *37 (N.D. Ohio Sep. 19, 2005).[2] The Court finds that it is not clear

whether the requests made in the state court are the same as now requested. In any event, the Court

will deny expansion of the record for the reasons that follow.

Cunningham contends that in order to fully assess his claims, the Court must have the state

court proceedings of Cleveland Jackson, his half-brother and participant in the crimes for which he

has been convicted.

Claims 1 and 2 concern jury selection and qualification. Cunningham's request as to these

claims is based on the fact that Jackson's death penalty conviction was vacated as to Jayla Grant

because the judge did not allow *voir dire* as to the fact that she was three years old. Cunningham's

trial was presided over by a different judge. There is no indication that his counsel was prohibited

from inquiring into any possible bias because of Jayla Grant's age. Cunningham has submitted no

other reasons for expanding the record in this regard.

Cunningham asserts that claims 3 and 4 assert issues surrounding the Ohio court's failure

to permit full discovery and failure of the prosecutor to reveal exculpatory, impeachment, or

mitigation evidence. The records in *Jackson* allegedly contain materials revealed to Jackson or his

---

[2] A district court in the Southern District of Ohio, in an unreported case, held that requests for discovery and evidentiary hearing in post-conviction proceedings satisfied § 2254(e)(2). *Ashworth v. Bagley*, 2002 WL 485003 * 4 (S.D. Ohio Mar. 28, 2002).

attorneys that may not have been revealed to Cunningham whose trial occurred earlier. Cunningham points only to the testimony of Coron Liles in Jackson's trial where it was revealed that the prosecutors failed to disclose a photo array shown to him. Although *Brady* may have been violated in this regard, Cunningham did not raise this issue in his habeas petition. His claim pertained to inconsistent statements, allegedly a violation of Ohio Criminal Rule 16(B)(1). The Ohio Supreme Court found that no inconsistencies existed. *State v. Cunningham*, 105 Ohio St.3d 197, 206-07 (2004). Furthermore, many witnesses identified Cunningham as a participant in the robbery and murders.

In claim 5, Cunningham argues that his counsel were ineffective for failing to obtain a ballistic expert. The expert would have testified on the issues of firearm operability, actual shooter and Cunningham's relative role in the offense. In claim 6, Cunningham contends that the prosecutor committed misconduct by remarking about the whereabouts of the bullets. Claim 10 is related in that Cunningham asserts that, based on the fact that his gun was allegedly inoperable, his death sentence is arbitrary and capricious and violates the Eighth Amendment. Cunningham and Jackson each blame the other for the murders. The materials in Jackson's case will allegedly demonstrate these issues, and they will also reveal mitigation evidence not presented to Cunningham's jury, including Jackson's role as the actual shooter.

Cunningham's argument as to expansion of the record for claims 5, 6 and 10 is without merit. Cunningham was seen firing a gun. More importantly, even though Cunningham may not have fired his gun, the  evidence showed that he participated. Since the murder charge against him was based on prior calculation and design, not under a principal offender theory, evidence in this regard presented in Jackson's case will not help Cunningham.

5

Claim 7 presented issues of ineffective assistance of counsel for failing to investigate and present mitigating evidence. Since Jackson is both the co-defendant and Cunningham's half-brother, his case allegedly will contain a plethora of mitigation evidence that was available to Cunningham's counsel but was not investigated. Cunningham asserts that the evidence will include the issues relating to the actual shooter and relative role in the offense, as well as family history, medical and mental issues and other social history factors that Cunningham's jury should have heard.

The record in Cunningham's case shows that his counsel submitted evidence about his mother's problems and his bad childhood. His counsel obtained his records from the Allen County Children's Services. A forensic psychologist testified regarding the Children's Services involvement with the family, specifically relaying the circumstances surrounding multiple referrals and home visits. Mitigation evidence from Jackson's case concerning Cunningham would most likely be cumulative. Jackson's mitigation evidence would be irrelevant.

Cunningham contends that materials are necessary as to claim 8, the court's jury instruction on inconsistencies in witness testimony and claim 9, errors by the court in sentencing Cunningham to death, specifically the failure to obtain a jury verdict regarding Cunningham's specific culpability under *Enmund v. Florida*, 458 U.S. 782 (1982) or *Tison v. Arizona*, 481 U.S. 137 (1987). A valid sentence requires a jury verdict as to every element enhancing a sentence. *Apprendi v. New Jersey*, 530 U.S. 466, 483 (2000). *See Ring v. Arizona*, 536 U.S. 584, 589 (2002). The *Jackson* proceeding will allegedly demonstrate the existence of this error as well as prejudice. These are legal issues. The Court finds that Cunningham has not sufficiently shown how materials in Jackson's case can help him on these issues.

Claim 11 involves issues of pretrial publicity. Jackson's case contained a specific challenge

6

to the venire based on pretrial publicity as well as *voir dire* on this issue. *State v. Jackson*, 107 Ohio St.3d  53, 58-59 (2005). Cunningham asserts that this material is relevant to demonstrate the scope of publicity as well as the public awareness and impact of that publicity.

This request is without merit. Pretrial publicity relates to the individual case. Perspective jurors, who were to make the decision in Cunningham's case were asked about their knowledge of the case. What the jurors in Jackson's case knew about pretrial publicity is irrelevant.

## III. DISCOVERY

A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course. *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).  Nevertheless, the All Writs Act, 28 U.S.C. § 1651, gives federal courts the power to "fashion appropriate modes of procedure," including discovery, to dispose of habeas petitions "as law and justice require." *Id.*  A habeas petitioner's discovery request is governed by Rule 6 of the Rules Governing Section 2254 Cases in the United States District Courts.  The rule provides:

> A judge may, for *good cause*, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery. If necessary for effective discovery, the judge must appoint an attorney for a petitioner who qualifies to have counsel appointed under 18 U.S.C. § 3006A.

Rule 6(a), Rules Governing Section 2254 Cases in the United States District Courts (emphasis added).

Good cause exists where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief. *Harris v. Nelson,* 394 U.S. 286, 300 (1969); *Williams v. Bagley,* 380 F.3d 932, 974 (6th Cir. 2004);

*Lott v. Coyle*, 261 F.3d 594, 602 (6th Cir. 2001). The additional discovery need only show good cause that the evidence sought would lead to relevant evidence. *Payne v. Bell*, 89 F. Supp.2d 967, 970 (W.D. Tenn. 2000)(citing *Calderon v. U.S. Dist. Court for the Northern Dist. of California,* 98 F.3d 1102, 1106 (9th Cir. 1996)). *See Keenan v. Bagley*, 262 F. Supp.2d 826, 838 (N.D. Ohio 2003), *vacated on other grounds*, 400 F.3d 417 (6th Cir. 2005). Vague and conclusory allegations are not sufficient to allow discovery under Rule 6, and a petitioner may not embark on a fishing expedition in order to develop claims for which there is no factual basis. *Williams*, 380 F.3d at 974.

The Sixth Circuit has not determined whether § 2254(e)(2) applies to motions for discovery. Although the statute mentions only evidentiary hearings, it has been held applicable to motions to expand the record with new evidence that is intended to achieve the same purposes. *Cowens v. Bagley*, 2002 WL 31370475 * 4 (S.D. Ohio Sep. 30, 2002). The reasoning in *Holland,* 542 U.S. at 653, which held that § 2254(e)(2) applies to motions to expand the record, should extend to discovery if the request is intended to develop evidence on the merits. *See Creech v. Hardison*, 2008 WL 696933 * 2 (D. Idaho Mar. 13, 2008). *Contra Sutton v. Bell*, 2007 WL 4570884 *2 n. 2 (E.D. Tenn. Dec. 26, 2007)(28 U.S.C. § 2254(e)(2) pertains to evidentiary hearings, not discovery). Usually, a request for discovery and evidentiary hearing in post-conviction proceedings satisfies § 2254(e)(2). *Ashworth v. Bagley*, 2002 WL 485003 * 2 (S.D. Ohio Mar. 38, 2002) (citing *Williams v. Taylor*, 529 U.S. 420, 437 (2001); *Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir. 2001)). Regardless whether the § 2254(e)(2) restrictions have been satisfied, Cunningham must still show good cause to obtain discovery related to his claims on the merits. Therefore, the Court will make its determination whether to allow discovery on that basis.

### IV. MERITS OF CUNNINGHAM'S REQUEST FOR DISCOVERY

Cunningham requests the following discovery pertaining to the issue of juror bias, ineffective assistance of counsel during the guilt and mitigation phases of the trial and prosecutorial misconduct.

1. Allen County Children Services Records pertaining to Jeronique Cunningham  and/or his family.

2. Medical, psychiatric, and social service records of Bettye Cunningham.

3. School and juvenile court records of Jeronique Cunningham, Cleveland Jackson, and/or their family.

4. Police, prosecution, court, social services and other governmental records pertaining to the death of Cleveland Jackson, Sr.

5. Prosecution files including, but not limited to, the Allen County Prosecutor's Office files for the trial, appellate, post-conviction, and other litigation, police, BCI, and other law enforcement agencies' investigative files, medical/pathologist files of the victims, voice stress analysis and/or polygraph examination files, including, but not limited to, the statements, raw data, test results, reports, audio or video tapes of the tests, pertaining to the prosecution of Jeronique Cunningham.

6. Prosecution files including, but not limited to, the Allen County Prosecutor's Office files for the trial, appellate, post-conviction, and other litigation, police, BCI, and other law enforcement agencies' investigative files, medical/pathologist files of the victims, voice stress analysis and/or polygraph examination files, including, but not limited to, the statements, raw data, test results, reports, audio or video tapes of the tests, pertaining to the prosecution of Cleveland Jackson.

7. Release of all evidence related to the ballistic evidence in both Jeronique Cunningham's and Cleveland Jackson's cases. This includes, but is not limited to photographs, shell casings, bullets, bullet fragments, reports, and testing protocols and results.

After discovery is completed, Cunningham seeks leave to take the following depositions:

1.   Juror Nichole June Mikesell;

2.   All seated Jurors and Alternate Jurors in Jeronique Cunningham's case;

3.   Allen County Children Service workers;

4.   Counsel for Jeronique Cunningham—Gregory Donohue, Robert Grzybowski, Pamela Prude-Smithers, Kelly L. Culshaw, Richard Vickers,

Kathryn Sandford;

5.   Investigator Gary Ericson;

6.   Trial counsel for Cleveland Jackson – William F. Kluge, John A. Sabol; and

7.   Allen County prosecutors David Bowers; M. Daniel Berry; Juergen Waldick; Jana Gutman.

### A. Juror Misconduct.

Cunningham has alleged that a writ of habeas corpus should be granted because of a juror's alleged prior knowledge about him. Nichole Mikesell, the foreperson of the jury, worked at the Allen County Children's Services as an investigator. Cunningham contends that as a result of her employment she was aware of extra-judicial information regarding Cunningham and had formed an opinion about his worth as a human being and whether he should receive the death penalty. Evidence presented in post-conviction proceedings allegedly showed that this juror relied on evidence outside of the trial to form the opinion that "Jeronique was an evil person." She said that some social workers worked with Jeronique in the past and were afraid of him. She also said that, "If you observe one of the veins starting to bulge in his head, watch out and stay away because he might try to kill you." She also stated that Jeronique has "no redeeming qualities." Investigator's Report, Apx. Vol. 6, pg. 311.

The Sixth and Fourteenth Amendments provide a criminal defendant the right to an impartial jury. *Wolfe v. Brigano*, 232 F.3d 499, 501 (6th Cir. 2000)(citing *Morgan v. Illinois*, 504 U.S. 719 (1992)). The presence of a single biased juror deprives the defendant of a fair trial. *Morgan,* 504 U.S at 729; *Williams*, 380 F.3d at 944. Failure to remove a biased juror requires reversal of the conviction. *United States v. Martinez-Salazar*, 528 U.S. 304, 316 (2000); *Hughes v.*

10

*United States*, 258 F.3d 453, 463 (6th Cir. 2001). Whether or not a prospective juror is impartial is a factual determination entitled to a presumption of correctness pursuant to 28 U.S.C. § 2254(e)(1). *Williams*, 380 F.3d at 953; *Bowling v. Parker*, 344 F.3d 487, 519 (6th Cir. 2003), *cert. denied*, 543 U.S. 842 (2004).

   Federal Rule of Evidence 606(b), quite similar to Ohio Rule of Evidence 606(B), allows a juror to testify only as to whether extraneous prejudicial information was improperly brought to the jury's attention and whether an outside influence was brought to bear on any juror. *United States v. Gonzales*, 227 F.3d 520, 524 (6th Cir. 2000). A juror cannot testify about the motives and influences affecting the verdict. *Id.* An "outside influence" usually means a factor originating outside of normal courtroom procedures which influences jury deliberations, such as a threat against a juror. *United States v. Jones*, 132 F.3d 232, 245 (5th Cir. 1998), *aff'd.*, 527 U.S. 373 (1999). An "extraneous influence" occurs when a juror has a specific knowledge about a relationship with either the parties or their witnesses. *United States v. Herndon*, 156 F.3d 629, 636 (6th Cir. 1998). When a potential meritorious claim of extraneous influence is raised, the court must conduct a hearing pursuant to *Remmer v. United States*, 347 U.S. 227 (1954), to give the defendant an opportunity to show bias.  *United States v. Davis,* 177 F.3d 552, 557 (6th Cir. 1999). The court should look to the nature of the extraneous material and its likely effect on the hypothetical average jury, not the source of the information or the locus of its communication, which determines whether the defendant has been prejudiced and thus whether his constitutional rights were violated.  *United States ex rel. Owen v. McMann*, 435 F.2d 813, 820 (2nd Cir. 1970). Jury testimony cannot be used to impeach a verdict. *Tanner v. United States*, 483 U.S. 107, 119 (1987).  Otherwise, every case would result in an investigation of the jury in an effort to acquire evidence showing misconduct sufficient to overturn

11

the verdict. *Id.*

Although Mikesell told an investigator that she believed the State had some weaknesses in its case, and that she followed the evidence closely and had no doubt about Cunningham's guilt, Apx. Vol. 6, pgs. 310-11, she may have had information that could have influenced her verdict, especially as to the imposition of the death penalty. Because the presence of a single biased juror deprives a defendant of a fair trial, Cunningham is entitled to discovery regarding when she acquired this information, who she learned it from, whether she told any other jurors and whether this information influenced her or any other jurors to convict Cunningham and/or vote for the death penalty. Therefore, Cunningham shall have leave to take the following depositions:

1. Juror Nichole Mikesell;

2. All seated jurors and alternate jurors in Cunningham's case;

3. Allen County Children's Services employees as to this issue only; and

4. Investigator Gary Ericson.

### B. Ineffective Assistance of Counsel

Cunningham asserts that his counsel were ineffective for failure to investigate and present mitigation evidence and for failing to investigate the ballistic evidence.  In order to establish a claim for ineffective assistance of counsel, a habeas petitioner must demonstrate that (1) counsel's performance was deficient, and (2) counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 698 (1984). The benchmark for judging a claim of ineffectiveness is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Id.* at 686.

12

The Court must determine whether the investigation supporting counsels' decision whether or not to introduce evidence was reasonable. *Id.* at 284; *Wiggins v. Smith*, 539 U.S. 510, 523 (2003)(citing *Strickland*, 466 U.S. at 690-91)). Reasonableness is assessed by considering the quantity of evidence known to counsel, as well as whether that evidence should have led a reasonable attorney to investigate further. *Id.* at 527; *Clark v. Mitchell,* 425 F.3d 270, 284 (6th Cir. 2005).

Defense counsel filed a Motion for Appropriation of Funds for a Defense Mitigation Specialist who would help in collecting records. Apx. Vol 1, pg. 214.  They also moved for funds for a defense investigator, Apx. Vol. 1, pg. 217, and for a psychologist. Apx. Vol. 1, pg. 201. The Motions were granted, and $8500 was appropriated for the mitigation specialist, investigator and psychologist. Further, the court ordered the Allen County Children's Services, the Allen County Juvenile Court, the Family Resource Center, the Tri-Star n/k/a Lutheran Services, the Department of Corrections, and all hospitals, institutions and doctors to release to defense counsel, or the investigator, all records pertaining to Cunningham.  Apx. Vol. 1, pgs. 366, 367, 368.

Cunningham asserts that his counsel failed to present evidence from the records of the Allen County Children's Services and records of his mother's mental illness, killing of her husband, her suicide attempts and her substance abuse. Tara Cunningham, Petitioner's sister, Bettye Cunningham, his mother, and Dr. Daniel Davis testified about Cunningham's terrible childhood. Tara told the jury that Bettye's husband beat her three times a week in front of the children as well as beating Cunningham.  Tr. Vol. 9, pg. 30.  She further stated that the beatings resulted in Bettye stabbing him to death with the children present. Tr. Vol. 9, pg. 31.  Afterward, Bettye began using drugs and was also an alcoholic. Tr. Vol. 9, pg. 32.  She stayed away from home causing the

13

children to move in with their grandmother. Tr. Vol. 9, pg. 31. When Bettye left, Cunningham would take care of his siblings. Tr. Vol. 9, pg. 32.  Tara also testified that Bettye often physically abused Cunningham. Tr. Vol. 9, pg. 33.  The Allen County Children Services removed the five children from the home three different times. Tr. Vol. 9, pg. 34.

Bettye Cunningham testified about the abuse from her husband, but said that Cunningham was whipped with a belt like a normal child. Tr. Vol. 9, pg. 42.  The jury heard testimony about the beatings of Cunningham from his sister as well as Bettye's atrocious parenting skills, drug and alcohol abuse, mental illness, attempted suicide, and murder of her husband.  The jury was not likely to believe that her beatings of her son were normal.

It appears that Cunningham's counsel performed a complete investigation of his juvenile history, children's services records, and his medical history. A forensic psychologist testified during mitigation regarding the involvement of the Allen County Children's Services with the family, specifically pointing out the circumstances surrounding the multiple referrals and visits.  Tr. Vol. 9, pgs. 53-78. A strategic decision to pursue or not to pursue a particular trial tactic "after thorough investigation of law and facts," is "virtually unchallengeable." *Clark,* 425 F.3d at 286.

Cunningham contends that his counsel should have obtained  a ballistics expert to prove that he was not the actual killer.  With a reasonable investigation, Cunningham asserts that counsel would have been able to prove that he could not have been a murderer.

Defense counsel obtained funds from the court to hire a ballistics expert. Apx. Vol. 2, pgs. 188, 217.  There was a discussion on the record about the testimony and availability of the  expert. Tr. Vol. 1, pgs. 56-60. Cunningham was not charged as the principal offender. In fact he was charged with prior calculation and design. Ohio Revised Code Section 2929.04(A)(7) allows

14

imposition of the death penalty for prior calculation and design, apparently to enable conviction where it is difficult to prove whether the defendant was the actual killer or took part in the preparation of the crime. The evidence showed that Cunningham participated in the robbery. Witnesses also testified that Cunningham fired his revolver. Since Cunningham was not charged as a principal offender, whether or not his gun actually fired is inconsequential. Therefore, any discovery relating to ballistic evidence or actual innocence would not be helpful.

The Court finds that Cunningham has not shown good cause to obtain discovery on his ineffective assistance of counsel claims.

### C. Prosecutorial Misconduct

Cunningham alleges a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and Ohio Crim. R. 16 in his Motion for Discovery. During Cleveland Jackson's trial, it was revealed that the prosecutor failed to disclose two photo arrays containing Cunningham's picture shown to witness Coron Liles. The photo arrays were not disclosed or discussed at Cunningham's trial. Also, the issue was not raised in Cunningham's federal habeas action.

A prosecutor is required to turn over material that is both favorable to the defendant and material to guilt or punishment. *Brady*, 373 U.S. at 87. The prosecutor's duty to disclose includes impeachment evidence, exculpatory evidence and evidence known only to police investigators. *Strickler v. Greene*, 527 U.S. 263, 280-81 (1999). In *Strickler*, 527 U.S. at 281-82, the Court found that in order to prove a *Brady* violation the petitioner must show that: (1) the evidence in question was favorable to the defendant; (2) the evidence was suppressed by the state; and (3) the defendant was prejudiced by the suppression. A *Brady* violation is proven "by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine

15

confidence in the verdict." *Id.*

In *Kyles v. Whitley*, 514 U.S. 419 (1995), the Supreme Court emphasized the following four aspects of materiality. First,

> a showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal... The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.

*Id.* at 434.

Second, materiality is not a sufficiency of the evidence test. Even if the evidence, including the suppressed exculpatory evidence, is sufficient to support a conviction, a *Brady* claim may still be successful. *Id.* at 435. A *Brady* violation is proven "by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.* Third, once a *Brady* violation is found, there is no need for further harmless-error review. *Id*. A *Brady* violation is never harmless. *Bell v. Bell*, 460 F.3d 739, 750 (6th Cir. 2006), *on reh. en banc, aff'd*., 512 F.3d 223 (6th Cir. 2008). Fourth, when materiality is assessed, the court must look at the suppressed evidence collectively, not item by item. *Kyles,* 514 U.S. at 436.

Cunningham has not shown good cause for discovery as to a *Brady* violation concerning the undisclosed photo arrays. Even if this issue had been raised in the habeas action, he cannot show prejudice, the third factor required to prove a violation of *Brady*. The evidence against Cunningham was overwhelming. There is no doubt that he participated in the robbery. Identification was not problematical. Many witnesses testified that he fired his gun. Even though he may be able to prove a *Brady* violation, the outcome of the trial would not have been altered in light of the testimony from

16

the other surviving witnesses.

Cunningham also alleges that multiple statements of witnesses were not disclosed. The materials will allegedly demonstrate whether evidence was withheld, whether it was improperly withheld, and permit a determination of prejudice. Cunningham did not specify which witnesses' statements were withheld. The record shows that police reports contained statements either not adopted by the witnesses or were turned over and found not to contain inconsistent statements. At trial, an initial statement of a witness lacked many of the details included in his testimony. However, failure to produce the less detailed statement would not have created a reasonable probability that the result of the proceeding would have been different if the prosecutor had disclosed the evidence to the defense.

The Court finds that Cunningham has shown good cause to obtain discovery on the issue of juror misconduct. Good cause has not been shown as to ineffective assistance of counsel and prosecutorial misconduct.

## V. EVIDENTIARY HEARING

Evidentiary hearings in federal habeas cases are governed by 28 U.S.C. § 2254(e)(2). *See* footnote 1. If the applicant has failed to develop the factual basis of a claim in state court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant satisfies the criteria set forth in the statute. A failure to develop the factual basis exists when there is a lack of diligence, or some greater fault, attributable to the defendant or defendant's counsel. *Williams v. Taylor*, 529 U.S. 420, 432 (2000). "Diligence" for purposes of the opening clause of § 2254(e)(2) "requires that the defendant make a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." *Id*. at 435, 437; *Bowling,* 344

F.3d at 511. Further, "Diligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by law." *Williams*, 529 U.S. at 437. If the petitioner is diligent in developing the record, the district court may hold an evidentiary hearing. *Id.* at 433. *See Vroman v. Brigano*, 346 F.3d 598, 606 (6th Cir. 2003)(evidentiary hearings not mandatory, but are held at the discretion of the court). An evidentiary hearing is not required if allowing it would be futile. *McAdoo v. Elo*, 365 F.3d 487, 500 (6th Cir. 2004). Where the record is complete and there is no fact that could be developed that would result in the granting of the writ, an evidentiary hearing is unwarranted. *Id*.

Cunningham seeks an evidentiary hearing on his first, second, third, fourth, fifth, sixth and seventh claims for relief wherein he will present testimony of witnesses identified in his discovery request.

*(a) Claims 1 and 2*

Claims 1 and 2 concern jury selection and qualification. Cunningham asserted in claim 1 that a specific juror was biased because she had worked at the Allen County Children's Services, where Cunningham attended, as an investigator. During post-conviction proceedings she said that some social workers worked with Jeronique in the past and were afraid of him. She also said that "if you observe one of the veins starting to bulge in his head, watch out and stay away because he might try to kill you." Investigator's Report, Apx. Vol. 6, pg. 311. Cunningham argues that the juror's testimony is necessary to resolve this claim as to what she knew, when she learned it and from whom she learned it.

The Court has granted discovery as to this issue. Whether an evidentiary hearing is necessary will be determined after discovery in this regard is completed. If counsel is of the opinion that an

18

evidentiary is necessary, they shall so move the Court.

Cunningham contends that the testimony of defense counsel and Allen County prosecutors is relevant to address the claims of professional misconduct in jury selection, including the discriminatory use of peremptory challenges against senior citizens. *Batson v. Kentucky*, 476 U.S. 79, 91 (1986)(Equal Protection Clause forbids a prosecutor from challenging potential jurors on account of race). An evidentiary hearing is not needed on this issue as the Sixth Circuit has held that age is not a prohibited reason for excluding a juror with a peremptory challenge. *United States v. Maxwell,* 160 F.3d 1071, 1075 (6th Cir. 1998). *See United States v. Hibbler,* 193 Fed. Appx. 445, 452 (6th Cir. 2006).

Cunningham also asserts that testimony of defense counsel is necessary to demonstrate the restrictions imposed by the trial court on the scope of *voir dire*, including limitations on life qualification and consideration of mitigating factors. The Court finds that testimony of defense counsel would not aid the Court in resolving an alleged error of the trial court. The record contains sufficient evidence to determine this issue.

### (b) Claims 3 and 4

In his third ground for relief, Cunningham alleges that, pursuant to Ohio Crim. R. 16(B)(1)(g), the trial court violated the confrontation clause by not allowing him to confront witnesses with their prior statements. Cunningham argues that the testimony of trial counsel, Cleveland Jackson and the Allen County prosecutors is pertinent to issues of prosecutorial misconduct, including *Brady* and confrontational issues. The scope of pretrial discovery, disparities in discovery and other factors critical to a full and fair determination of these claims can allegedly only be determined through the testimony of the attorneys.

19

Habeas relief is unavailable for mere errors of state law and a federal court will not review a state court's decision on a matter of purely state law. *Estelle v. McGuire,* 502 U.S. 62, 69-70 (1991). The state court found that defense counsel made Crim. R. 16(B)(1)(g) motions as to six witnesses. No inconsistencies were found as to three of them, a requirement for use of this rule. *State v. Cunningham*, 105 Ohio St.3d 197, 204 (2004).

Cunningham complains about statements of Dwight Goodloe, Jr. Coron Liles, Tomeaka Grant and James Grant.  Goodloe and James Grant did not give a written statement to the police. The police officer that interviewed them later wrote a synopsis of what he had been told. Apx. Vol. 6, pg. 293; Apx. Vol. 6, pgs. 140-46.  Under Rule 16(B)(1)(g), these pretrial statements that were never adopted by the witnesses were not subject to an in camera inspection.  Also, contrary to counsels' assertions, James Grant's prior January 9, 2002 statement was given to defense counsel during trial. Tr. Vol. 7, pg. 1296; Apx. Vol. 9, pg. 211. So unless these statements were exculpatory under *Brady,* there was no obligation to turn them over to defense counsel.

According to Cunningham, Goodloes's initial statement lacked many of the details included in his testimony.  Failure to elaborate does not amount to inconsistencies, especially since he did not know at the time that Cunningham was going to claim that his gun was inoperable. At trial he was asked to elaborate.

Coron Liles and Tameaka Grant also gave statements to police. Apx. Vol 9, pgs. 201, 205, 207.  None of these statements were written or adopted by the witnesses. Thus, they were not subject to in camera inspection. The Court concludes that testimony of defense counsel and the Allen County prosecutors would not help resolve this issue which alleges a violation of state law.

In ground four of the Petition, Cunningham alleges that the prosecution violated his

20

constitutional rights under *Brady*. Specifically, he claims that prior inconsistent statements from Dwight Goodloe, Jr. and James Grant should have been given to defense counsel before trial.

Cunningham's contention involves the fact that Goodloe's testimony at trial was more elaborate than his earlier statement to the police. Even if the statement should have been produced pursuant to *Brady*, the requested depositions would not help resolve this issue because failure to produce the less detailed statement would not have created a reasonable probability that the result of the proceeding would have been different.

James Grant testified at Cunningham's trial that he was certain that Cunningham shot him. Tr. Vol. 7, pg. 1288. In his prior statements there is no reference to his being shot by Cunningham. The record shows that James Grant's statements were given to defense counsel for cross-examination. *Brady* is not violated if previously undisclosed evidence is disclosed during trial unless the defendant is prejudiced by its prior nondisclosure. *Thomas v. Warren,* 398 F.Supp.2d 850, 858 (E.D. Mich. 2005)(citing *United States v. Word*, 806 F.2d 658, 665 (6th Cir. 1986)). Cunningham did not address this issue in his Traverse, and therefore, has not shown that he was prejudiced by nondisclosure of the statements before trial.

*(c) Claim 5*

Claim 5 concerns Cunningham's contention that his counsel were ineffective for not obtaining a ballistics expert to prove that he was not the actual killer. The testimony of trial counsel and a ballistic expert are allegedly necessary to determine whether the decision not to call a ballistic expert was strategic and to investigate the prejudice from counsels' failure to present the proper and true ballistic evidence to the jury. Cunningham was charged with aggravated murder with prior calculation and design. Ohio Revised Code Section 2929.04(A)(7) allows imposition of the death

21

penalty for prior calculation and design, apparently to enable conviction where it is difficult to prove whether the defendant was the actual killer or took part in the preparation of the crime. Therefore, whether or not Cunningham actually killed Jayla Grant or Leneshia Williams is unimportant. The issue is more fully discussed below.

> *(d) Claim 6*

In his sixth claim for relief, Cunningham alleges that the prosecutor made improper remarks in closing arguments. In response to the defense's closing arguments, the prosecutor speculated about the whereabouts of the bullets that may have been fired from petitioner's gun. "Let's not get caught up in a smokescreen about the bullets. Those bullets could be lost-lost in blood, they could disintegrate when they hit a wall because they're not jacketed." Tr. Vol. 7, pg. 1443. The prosecutor also informed the jury that the failure of the State to produce the bullets was of no consequence. When commenting about victim Jayla Grant he stated, "She never asked to be there and she was never given a chance. She was never given justice like he's receiving." Tr. Vol. 7, pg. 1448. In addition, the prosecutor commented that, "This is absolutely the most cold-blooded calculated inhumane murder that anyone could ever imagine. Absolutely the most cold-blooded inhumane murder anyone could imagine." Tr. Vol. 7, pg. 1449.  The prosecutor stated in regard to Cunningham's unsworn statement, "So, with that the question becomes does the fact that the defendant made a statement that was not under oath in contrast to all other witnesses and that he was not subject to cross examination does that lessen his moral culpability?" Tr. Vol. 9, pg. 116. Testimony from defense attorneys and prosecutors is allegedly necessary because the record does not reveal the tone, manner and other characteristics of the  prosecutor's closing arguments and the impact of the misconduct. The Court agrees with the Respondent's statement that the record speaks

22

for itself, and concludes that it will be able to resolve this issue without such testimony.

*(e) Claim 7*

The issue of ineffective assistance of counsel during the mitigation phase of the trial was raised in claim 7. The testimony of trial counsel, a ballistic expert, a cultural expert, Allen County social workers, and others to be identified through investigation and discovery are allegedly necessary to resolve the "strategy decision" issue, as well as the prejudice resulting from the failure of counsel to investigate and present the available mitigation evidence.

Cunningham contends in claim 7 that his counsel failed to present evidence from the records of the Allen County Children's Services and records of his mother's mental illness, killing of her husband, her suicide attempts and her substance abuse.  A review of the record shows that defense counsel possessed the records of the Allen County Children's Services. Information contained therein was presented to the jury through a psychologist. Family witnesses testified as to the Cunningham's personal and family problems.  Additional evidence would have been cumulative. *See Broom v. Mitchell*, 441 F.3d 392, 410 (6th Cir. 2006)(failure  to present additional mitigating evidence that is merely cumulative does not rise to the level of a constitutional violation). A strategic decision to pursue or not to pursue a particular trial tactic "after thorough investigation of law and facts," is "virtually unchallengeable." *Clark,* 425 F.3d at 286. The court must determine whether the investigation supporting counsel's decision whether or not to introduce evidence was reasonable. *Id.* at 284. This Court has sufficient evidence to enable it to determine this issue.

*(f) Respondent's Asserted Affirmative Defense, Cause and Prejudice, Actual Innocence*

Cunningham alleges that the testimony of his trial, appellate, post-conviction, and other state

23

court litigation attorneys is necessary to resolve questions of exhaustion, default, cause and prejudice, "trial strategy" and actual innocence in response to Respondent's assertions of exhaustion and default defenses. Procedural default will not be an issue in Cunningham's habeas case because the Court will decide the merit of all of his claims. Furthermore, the facts of this case and because he was charged with committing aggravated murder with prior calculation and design will not allow a claim of actual innocence.

## VI. FUNDS TO EMPLOY A BALLISTIC EXPERT

Cunningham requests funds to hire a ballistic expert pursuant to 18 U.S.C. § 3599(f). He asserts that such expert is necessary because a major issue in his case was whether he actually shot any of the victims, whether his gun was inoperable, and whether his gun was capable of firing any of the bullets recovered at the scene or from the victims. If appointed, his expert will perform scientific tests regarding:

> a. ability of .380 ACP ammunition, and .380 ammunition in general, to be loaded into .38 Special, .357, and .44 caliber revolvers;
>
> b. ability of .38 Special, .357, and .44 caliber revolvers to discharge 380 ACP or other .380 ammunition;
>
> c. physical and other properties of .380 ACP ammunition, and .380 ammunition in general, specifically relating to the physical and testimonial evidence in Mr. Cunningham's trial;
>
> d. such other physical, scientific, and expert evaluations as necessary for a full and fair determination of the *habeas* claims pertaining to the ballistic evidence; and
>
> e. prepare and submit a report on the outcome of the expert investigation and relationship to the merits of Mr. Cunningham's claims.

In order to receive funds to hire an expert, the petitioner must show that the experts services are reasonably necessary for his or her representation. 18 U.S.C. § 3599(f). The request must demonstrate some factual allegation of a claim yet unexplored. *Lawson v. Dixon*, 3 F.3d 743, 753

(4th Cir. 1993). "Expert services are 'reasonably necessary' when 'a substantial question exists over an issue requiring expert testimony for its resolution and the defendant's position cannot be fully developed without professional assistance.'" *Powell v. Kelly*, 492 F.Supp.2d 552, 557 (E. D.Va. 2007) (quoting *Wright v. Angelone*, 151 F.3d 151, 163 (4th Cir.1998)). "Further, 'expert services are not reasonably necessary if the record, viewed in light of the forecasted evidence, would not entitle the petitioner to an evidentiary hearing on his claims, or if the petitioner would not be able to win on the merits regardless of the expert's findings.'" *Id*. (quoting *Bell v. True,* 366 F.Supp.2d 403, 405 (W. D. Va. 2005)) (citing *Lawson,* 3 F.3d at 753)).

Cunningham requests the services of a ballistic expert regarding the issues of his intent and ineffective assistance of counsel. However, he has not brought an actual innocence claim. Furthermore, his counsel hired a ballistic expert. There was a discussion on the record about the testimony and availability of the expert. Tr. Vol. 1, pgs. 56-60, May 24, 2002. Counsel may have made a strategic decision not to call the expert because he may have believed it not helpful or unnecessary.

Cunningham was not charged as the principal offender. In fact he was charged with prior calculation and design. Ohio Revised Code Section 2929.04(A)(7) allows imposition of the death penalty for prior calculation and design, apparently to enable conviction where it is difficult to prove whether the defendant was the actual killer or took part in the preparation of the crime. The evidence showed that Cunningham participated in the robbery. Witnesses also testified that Cunningham fired his revolver. The evidence showed that only five bullets out of thirteen fired were recovered from the scene of the crime. The five found bullets were from the same gun. Not all the fired bullets were recovered. The fact that no other bullets were found does not mean that the other bullets were not

25

fired by Cunningham. Since Cunningham was charged as the principal offender, the State was not required to prove that his gun was the murder weapon.

## VII. CONCLUSION

Cunningham's Motions to Expand the Record (ECF 67), and for Funds to Employ a Ballistic Expert (ECF 69) are denied. His Motion to Compel Discovery from the Respondent and for Leave to Take Depositions from Various Individuals After the Documentary Evidence Has Been Completed (ECF 79 ) is granted in part and denied in part.  Cunningham shall have leave to take the following depositions:

1. Juror Nichole Mikesell;

2. All seated jurors and alternate jurors in Cunningham's case;

3. Allen County Children's Services employees as to this issue only; and

4. Investigator Gary Ericson.

Such discovery shall be completed within 120 days of this Order. Discovery is denied as to the issues of ineffective assistance of counsel and prosecutorial misconduct. The Motion for Evidentiary Hearing Pursuant to Rule 8 of the Rules Governing Section 2254 Cases (ECF 68) is denied without prejudice in accordance with this Order.

**IT IS SO ORDERED.**

Date:  June 9, 2008                    **s/ Peter C. Economus**
                                       **JUDGE PETER C. ECONOMUS**
                                       **UNITED STATES DISTRICT JUDGE**

26