IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


JERONIQUE CUNNINGHAM, ) CASE NO.  3:06CV0167
 )
Petitioner, )
 ) JUDGE PATRICIA A. GAUGHAN
v. )
 )
STUART HUDSON, WARDEN, ) MEMORANDUM OF OPINION
 )  AND ORDER
Respondent. )


　　　　This matter is before the Court upon Jeronique Cunningham's ("Cunningham" or "Petitioner")

Petition and Amended Petition under 28 U.S.C. § 2254 for Writ Of Habeas Corpus By A Person In

State Custody ("Petition") (Docs.19, 141). Cunningham alleges fourteen separate grounds for relief

in the Petition. Also before the Court are Respondent's Return of Writ (Doc. 23), Petitioner's

Traverse To Respondent's Return Of Writ (Doc. 62), and Respondent's Reply to Cunningham's

Traverse (Doc. 70). For the reasons that follow, Cunningham's Petition for Writ of Habeas Corpus

is DENIED.



**I. Introduction**

-1-

On June 18, 2002, Jeronique Cunningham was convicted by a jury in the Common Pleas Court of Allen County, Ohio of purposely causing the deaths of Jayla Grant and Leneshia Williams during an aggravated robbery. Following the sentencing phase of the trial, the jury, further finding that the aggravated circumstances outweighed the mitigating factors, recommended a sentence of death. The trial judge adopted the jury's recommendation and Cunningham received the death penalty. After presenting an appeal through the State courts, he has filed this Petition for Writ of Habeas Corpus.

## II. Factual Background

The facts as stated by the Ohio Supreme Court are as follows:

On January 3, 2002, in Lima, Ohio, Jeronique D. Cunningham, defendant-appellant, and his half-brother, Cleveland Jackson Jr., robbed a group of eight people and then fired their weapons into the group from close range. Three-year-old Jayla Grant and 17-year-old Leneshia Williams died of gunshot wounds. A jury convicted Cunningham of the aggravated murders of Grant and Williams and sentenced him to death.

In the early afternoon of January 3, 2002, Cunningham met his friend, Lashane ("Shane") Liles, at the home of Cunningham's sister, Tara Cunningham. After discussing a drug transaction, Shane and Cunningham went to Shane's apartment on East Eureka Street, in Lima, where Shane sold Cunningham crack cocaine.

Later that afternoon, Tara saw Cunningham and Jackson. According to Tara, Cunningham "was wiping off a gun and Jackson was wiping off a clip with bullets in it." Tara heard Jackson tell Cunningham that he was going to "hit a lick," i.e., rob somebody, and Jackson mentioned Shane Liles.

In the evening of January 3, Cunningham and Jackson went to Shane's apartment. Shane was not home, but several family members and friends were there. Shane came home shortly thereafter, and Cunningham told Shane that Jackson wanted to purchase drugs. Shane and Jackson then talked about drugs on the staircase near the living room. While Shane and Jackson talked, Cunningham sat in the living room and watched a movie with teenagers Coron Liles and Dwight Goodloe Jr.

As Shane and Jackson continued to talk, Cunningham stood up and ordered Coron and Goodloe into the kitchen. When Coron and Goodloe did not immediately obey, Cunningham, who was wearing gloves, pulled out a gun and struck Coron in the face with the gun barrel, breaking his jaw. When Cunningham hit Coron, Jackson pulled out his gun and aimed it at Shane. Coron and Goodloe then ran into the kitchen followed by Cunningham pointing his gun at them. Tomeaka Grant, Armetta Robinson, James Grant, his three-year-old daughter, Jayla, and 17-year-old Leneshia Williams were already in the kitchen. Cunningham held the group at gunpoint. The

group huddled together against the back wall and tried to shield themselves behind the kitchen table. Cunningham pushed the table and chairs away, locked the back door, and checked the basement for other people. People in the group were crying and praying, and James repeatedly pleaded with Cunningham not to hurt Jayla.

Meanwhile, Jackson forced Shane upstairs and robbed him of money and drugs. Jackson then tied Shane's hands behind his back and forced him into the kitchen at gunpoint. In the kitchen, the group was ordered to place money, jewelry, and watches on the table. Cunningham and Jackson grabbed some items from the table and put them into their pockets. Jackson believed that they had more money and asked Shane for the rest. When Shane said that was all he had, Jackson shot Shane in the back.

Cunningham and Jackson then fired their weapons at the rest of the group. Goodloe testified that he saw Coron's head "snap back" when Cunningham shot Coron in the mouth. Goodloe also heard Cunningham's gun fire "numerous times" and saw smoke coming from Cunningham's gun. Coron testified that Cunningham pointed his gun at him and fired. Coron also saw Cunningham shoot Jayla and Tomeaka. Coron said that both Cunningham and Jackson had fired their weapons, and he saw sparks coming from Cunningham's gun. Tomeaka saw Cunningham and Jackson pulling the triggers of their guns and heard more than one gun firing. James was holding Jayla when Cunningham pointed the gun and shot him in the face. Once the shooting stopped, the victim heard clicking sounds as Cunningham and Jackson continued pulling the triggers of their guns even after they were out of bullets.

The deputy coroner determined that Jayla Grant and Leneshia Williams had been killed by gunshot wounds to the head. Jayla was shot twice in the head; either wound would have been fatal. One bullet went through her brain; the other penetrated her scalp, causing a skull fracture and a brain contusion. Leneshia suffered a gunshot wound to the back of her head. The bullet traveled through her brain; she died within seconds of being shot. The coroner recovered no bullets or bullet fragments from the victims during the autopsies and was unable to identify the caliber of the bullets that caused the deaths.

The surviving victims all suffered gunshot injuries as well. Shane suffered a gunshot wound to his back. Robinson was shot in the back of the head and was in a coma for 47 days. James was shot five times and sustained injuries to his head, arm, and hand. Tomeaka was shot in the head and arm and lost her left eye. Coron was shot in the mouth, lost teeth, and sustained other injuries to his mouth. A bullet grazed Goodloe's side near his rib.

Eight spent shell casings and five spent bullets were found at the scene. One fragmented lead core from a full-metal-jacketed bullet was also recovered. One bullet from the shooting was still lodged in Tomeaka's arm, and Coron testified that he had spit a bullet from his mouth outside the apartment after the shooting stopped. This bullet was never found. Police photographed and recovered a bullet from the front porch of the apartment, but this bullet was subsequently misplaced.

John Heile, a firearms expert for the Bureau of Criminal Identification and Investigation, performed testing on the shell casings and bullets recovered from the scene, but no guns were recovered for testing. Heile was able to identify the spent shell

casings and bullets recovered as .380-caliber ammunition. Heile testified that state's exhibits 10-17 (shell casings) and exhibits 18, 19, 21, and 23 (spent bullets) were all fired from the same semiautomatic pistol. Exhibit 20 was the same caliber and possessed the same general characteristics (e.g., lands and grooves) as the other spent bullets, but Heile could not confirm that it came from the same weapon. In addition, Heile was unable to identify the caliber of exhibit 22 (fragmented lead core) or determine whether it came from the same weapon as the other spent bullets.

At trial, the defense presented testimony from three witnesses. William Reiff, a local gun dealer, testified regarding the differences between semiautomatic pistols and revolvers. Reiff explained that a semiautomatic weapon is loaded by inserting a magazine (i.e., clip) through the butt of the gun handle. Reiff also testified that a larger weapon, such as a .44-caliber, is "considerably louder" than a .380-caliber weapon and that .44-caliber bullets are much larger than .380-caliber bullets. On cross-examination, Reiff admitted that he did not know which type of gun was used in the shootings. He also acknowledged that a .380-caliber bullet has approximately the same diameter as a .38 bullet and that .38 rounds are generally fired from a revolver.

Joann Davis and her daughter, Mary, lived next door to Shane's apartment, and both testified that they did not hear any noises at the time of the shootings. On cross-examination, Joann said that she was taking medication that night for congestive heart failure and a severe back condition. She also verified that there is a concrete firewall between her apartment and Shane's.

The defense did not dispute that Cunningham brandished a gun both before and during the shootings. The defense's theory was that Cunningham's gun was inoperable and that he had neither planned nor intended to kill anyone. The defense relied heavily on the physical evidence found at the scene in arguing that only Jackson had fired a weapon. At trial, witnesses unequivocally recalled a revolver in Cunningham's hands and a semiautomatic pistol with a clip in Jackson's hands. The bullet casings and spent bullets recovered from the scene, except exhibit 22, were all identified as .380-caliber ammunition that is typically fired from a semiautomatic handgun, not from a revolver. Cunningham was indicted on two counts of aggravated murder. Count One charged Cunningham with purposely causing the death of Jayla Grant during an aggravated robbery. Count Two charged Cunningham with purposely causing the death of Leneshia Williams during an aggravated robbery. R.C. 2903.01(B). Cunningham was charged with aggravated robbery in Count Three and with six counts of attempted murder in Counts Four through Nine. Cunningham was also charged with having a weapon under disability in Count Ten, but this charge was dismissed.

The aggravated-murder counts each contained two death-penalty specifications. The first specification charged aggravated murder as part of a course of conduct to kill or attempt to kill two or more persons. R.C. 2929.04(A)(5). The second specification charged aggravated murder during an aggravated robbery and that the murder was committed with prior calculation and design. R.C. 2929.04(A)(7). Firearm and repeat-violent-offender specifications were attached to all counts except Count Ten. The jury convicted Cunningham of all charges, the death-penalty specifications, and

-4-

the firearm specifications. After a penalty hearing, the trial court sentenced Cunningham to death on Counts One and Two consistent with the jury's recommendation. The trial court imposed consecutive sentences of ten years each for Cunningham's convictions of aggravated robbery and six counts of attempted murder, plus three-year consecutive sentences for the firearm specifications. Pursuant to R.C. 2941.149, the trial court determined that Cunningham was a repeat violent offender, sentenced him to nine years on each specification, and ordered those sentences to run concurrently with each other but consecutively to the 13-year sentences for Counts Three through Nine.

*State v. Cunningham*, 105 Ohio St.3d 197, 198-200 (2004).

## III. Procedural History

On January 10, 2002, the Allen County Grand Jury indicted Petitioner in a ten count Indictment. Count One charged Cunningham with the aggravated murder of Jala Grant and Count Two concerned the aggravated murder of Leneshia Williams, both counts in violation of R.C. 2903.01. It also included two death penalty specifications charging aggravated murder as part of a course of conduct to kill or attempt to kill two or more persons, R.C. 2929.04 (A)(5), and aggravated murder during an aggravated robbery, and that the murder was committed with prior calculation and design. R.C. 2929.04(A)(7). Count Three charged Cunningham with aggravated robbery, R.C. 2911.01, and Counts Four through Nine charged him with the attempted murders of six other individuals. R.C. 2923.02, 2903.01(B). In the Tenth Count, Cunningham was charged with having a weapon while under a disability.[1] Firearm and repeat violent offender specifications were attached to all Counts except Count Ten. Apx. Vol. 1, pgs. 34-44. He entered a plea of not guilty on January 18, 2002, and on the same day the court appointed Gregory William Donohue and Robert Adam Grzybowski to represent Cunningham. Apx. Vol. 1, pgs. 48, 58-59. On June 10, 2002, the parties began *voir dire*. Tr. Vol. 2, pg.1. Trial commenced on June 13, 2002, with opening statements. Tr.

---

[1] The Tenth Count was dismissed.

Vol. 5, pg. 902. On June 18, 2002, the jury returned a verdict of guilty of all charges. Tr. Vol. 8, pgs. 1499-1508. The penalty phase of the trial began on June 20, 2002. The trial court merged the aggravating circumstances so that only the specification of aggravated murder as part of a course of conduct to kill or attempt to kill two or more persons was before the jury. The jury recommended a sentence of death on June 20, 2002. Tr. Vol. 9, pgs. 155-55, Apx. Vol. 3 pgs. 200-01. On June 25, 2002, the trial court followed the jury's recommendation and sentenced Cunningham to death. In addition, the court imposed consecutive sentences of ten years each for the convictions of aggravated robbery and six counts of attempted murder, plus three-year consecutive sentences for the firearm specifications.  Tr. Vol 10, pg. 11, Apx. Vol. 3, pgs. 202-218.

On August 9, 2002, Cunningham filed a Notice of Appeal in the Ohio Supreme Court alleging the following fifteen propositions of law. Apx. Vol. 4, pg. 4.

### Proposition of Law No. I
A DEFENDANT'S RIGHT UNDER THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT AND THE CONFRONTATION CLAUSE OF THE SIXTH AMENDMENT ARE VIOLATED WHEN A TRIAL COURT PROHIBITS DEFENSE COUNSEL FROM REVIEWING WITNESS STATEMENTS PURSUANT TO CRIMINAL RULE 16(B)(1)(G). U.S. CONST. AMENDS. VI AND XIV.

### Proposition of Law No. II
A CAPITAL DEFENDANT'S RIGHT TO DEFEND AGAINST THE STATE'S CHARGES, TO CONFRONT THE STATE'S WITNESSES, HIS RIGHT TO RELIABLE SENTENCE, AS WELL AS HIS RIGHTS TO DUE PROCESS AND EQUAL PROTECTION ARE VIOLATED WHEN THE TRIAL COURT INSTRUCTS THE JURY IN A MANNER CALCULATED TO DEFEAT THE EFFECTIVENESS OF CROSS-EXAMINATION. U.S. CONST. AMENDS. V, VI, VIII, AND XIV.

### Proposition of Law No. III
JERONIQUE CUNNINGHAM'S SENTENCE OF DEATH IS INAPPROPRIATE. CUNNINGHAM'S CHILDHOOD, HIS ROLE IN THE OFFENSE, AND HIS EXPRESSED REMORSE, ALL FAVOR A LIFE SENTENCE.

### Proposition of Law No. IV
A CAPITAL DEFENDANT'S RIGHT TO A RELIABLE DEATH SENTENCE AS WELL AS HIS RIGHT TO A FAIR AND IMPARTIAL JURY ARE VIOLATED

WHEN THE DEFENDANT IS PROHIBITED, OR UNDULY RESTRICTED FROM ASKING QUESTIONS DURING *VOIR DIRE* ABOUT THE PROSPECTIVE JURORS' ABILITY TO CONSIDER MITIGATING FACTORS. U.S. CONST. AMENDS. VI, VIII, AND XIV.

### Proposition of Law No. V

THE RIGHTS OF THE ACCUSED TO A FAIR TRIAL, TO A FAIR AND IMPARTIAL JURY, AND TO DUE PROCESS ARE VIOLATED WHEN PRETRIAL PUBLICITY IS SO PERVASIVE THAT THE PREJUDICE TO THE ACCUSED MUST BE PRESUMED, AND WHEN THE *VOIR DIRE* OF THE PROSPECTIVE JURORS REINFORCES THE PREJUDICE CAUSED BY THE PUBLICITY. U.S. CONST. AMENDS. VI, XIV.

### Proposition of Law No. VI

THE ADMISSIONS OF IRRELEVANT, REPETITIVE, AND INFLAMMATORY PHOTOGRAPHS INTO EVIDENCE AT BOTH PHASES OF A CAPITAL TRIAL VIOLATES THE DEFENDANT'S RIGHT TO DUE PROCESS WHEN, THE PROBATIVE VALUE OF THE PHOTOGRAPHS IS OUTWEIGHED BY THE DANGER OF PREJUDICE TO THE DEFENDANT, AND THE PHOTOGRAPHS ARE CUMULATIVE OF OTHER EVIDENCE AND REPETITIVE OF OTHER PHOTOGRAPHS. U.S. CONST. AMEND. XIV; OHIO CONST. ART. I, § 16.

### Proposition of Law No. VII

THE CAPITAL DEFENDANT'S RIGHT AGAINST CRUEL AND UNUSUAL PUNISHMENT AND HIS RIGHT TO DUE PROCESS ARE VIOLATED WHEN THE LEGAL ISSUE OF RELEVANCE IS LEFT TO THE JURY REGARDING SENTENCING CONSIDERATIONS. U.S. CONST. AMENDS. VIII, XIV.

### Proposition of Law No. VIII

A CAPITAL DEFENDANT IS DENIED HIS SUBSTANTIVE AND PROCEDURAL DUE PROCESS RIGHTS TO A FAIR TRIAL AND RELIABLE SENTENCING AS GUARANTEED BY THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, §§ 9 AND 16 OF THE OHIO CONSTITUTION WHEN A PROSECUTOR COMMITS ACTS OF MISCONDUCT DURING THE TRIAL PHASE AND SENTENCING PHASE OF HIS CAPITAL TRIAL.

### Proposition of Law No. IX

THE DEFENDANT'S RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL IS VIOLATED WHEN COUNSEL'S PERFORMANCE IS DEFICIENT TO THE DEFENDANT'S PREJUDICE. U.S. CONST. AMEND. VI; OHIO CONST. ART. I, §10.

### Proposition of Law. No. X

WHEN A TRIAL COURT IGNORES COMPELLING MITIGATION EVIDENCE AND FAILS TO CONSIDER THE PENALTY FOR EACH AGGRAVATING MURDER COUNT SEPARATELY, THE CAPITAL DEFENDANT IS DEPRIVED OF THE RIGHT TO INDIVIDUALIZED SENTENCING AND OF HIS LIBERTY INTEREST IN THE STATUTORY SENTENCING SCHEME IN VIOLATION OF RIGHTS AS GUARANTEED BY U.S. CONST. AMENDS. V, VIII AND XIV;

OHIO CONST. ART. I, §§ 9 AND 16.

### Proposition of Law No. XI

A CAPITAL DEFENDANT'S RIGHT AGAINST CRUEL AND UNUSUAL PUNISHMENT UNDER THE EIGHT AND FOURTEENTH AMENDMENTS IS DENIED WHEN THE SENTENCER IS PRECLUDED FROM CONSIDERING RESIDUAL DOUBT OF GUILT AS A MITIGATING FACTOR. THE PRECLUSION OF RESIDUAL DOUBT FROM A CAPITAL SENTENCING PROCEEDING ALSO VIOLATES THE DEFENDANT'S DUE PROCESS RIGHT TO REBUTTAL UNDER THE FOURTEENTH AMENDMENT. THE PRECLUSION OF RESIDUAL DOUBT MAY ALSO INFRINGE A CAPITAL DEFENDANT'S RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS. U.S. CONST. AMENDS. VI, VIII, XIV; OHIO CONST. ART. I, §§ 9, 10, 16.

### Proposition of Law No. XII

A CAPITAL DEFENDANT'S RIGHT TO DUE PROCESS IS VIOLATED WHEN THE STATE IS PERMITTED TO CONVICT UPON A STANDARD OF PROOF BELOW PROOF BEYOND A REASONABLE DOUBT. U.S. CONST. AMENDS. VI, VIII, XIV; OHIO CONST. ART. I, § 16.

### Proposition of Law No. XIII

OHIO'S DEATH PENALTY LAW IS UNCONSTITUTIONAL. OHIO REV. CODE ANN. §§ 2903.01, 2929.02, 2929.021, 2929.022, 2929.023, 2929.03 TA /s "O.R.C. § 2929.03," 2929.04, AND 2929.05 DO NOT MEET THE PRESCRIBED CONSTITUTIONAL REQUIREMENTS AND ARE UNCONSTITUTIONAL ON THEIR FACE AND AS APPLIED TO JERONIQUE CUNNINGHAM. U.S. CONST. AMENDS. V, VI, VIII, AND XIV; OHIO CONST. ART. I, §§ 2, 9, 10, AND 16. FURTHER, OHIO'S DEATH PENALTY STATUTE VIOLATES THE UNITED STATE'S OBLIGATIONS UNDER INTERNATIONAL LAW.

### Proposition of Law No. XIV

IRREGULARITIES IN THE *VOIR DIRE* PROCESS VIOLATE JERONIQUE CUNNINGHAM'S RIGHT TO A FAIR TRIAL BY AN IMPARTIAL JURY, DUE PROCESS, AND A RELIABLE SENTENCE. U.S. CONST. AMENDS. VI, VIII, XIV; OHIO CONST. ART. I §§ 9, 10, 16.

Apx. Vol. 4, pg. 56. (Case No. 02-1377.)

On July 10, 2003, Cunningham filed a Supplemental Merit Brief adding the following Proposition of Law:

### Proposition of Law No. XV

THE DEFENDANT'S RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL IS VIOLATED WHEN COUNSEL'S PERFORMANCE IS DEFICIENT TO THE DEFENDANT'S PREJUDICE. U.S. CONST. AMEND. VI; OHIO CONST. ART. I, §10.

Apx. Vol. 5, pg. 2. The Ohio Supreme Court affirmed his conviction on December 29, 2004. *State v. Cunningham*, 105 Ohio St.3d 197 (2004).

Cunningham filed a Petition for Writ of Certiorari in the United States Supreme Court which was denied on October 3, 2005. Apx. Vol. 5, pg. 220.

**Post-conviction**

Cunningham filed a Petition to Vacate or Set Aside Judgment and/or Sentence pursuant to R.C. 2953.21 on August 1, 2003, raising the following fourteen grounds for relief:

**First Ground for Relief**

Cunningham's convictions and sentences are void and/or voidable because he was denied effective assistance of counsel during his capital trial as guaranteed by the 5th, 6th, and 14th Amendments to the United State Constitution and Section 10, Art. I of the Ohio Constitution.

**Second Ground for Relief**

Trial prosecutors failed to meet their constitutional obligations. The State violated its affirmative duty to provide defense counsel with the statements taken by investigating police of the eyewitnesses who testified against Jeronique. Cunningham. These statements would have allowed defense counsel to attack or impeach the accuracy of the testimony presented at trial and to impeach the testimony of these critical witnesses. The State's failure constituted a violation of the rule of *Brady v. Maryland* and its progeny.

**Third Ground for Relief**

Cunningham's sentence is void or voidable because he was denied the effective assistance of counsel at the trial phase of his capital trial as guaranteed by the 5th, 6th, 8th, 9th, and 14th Amendments to the United State's Constitution and Sections 1, 2, 5, 9, 10, 16, and 20 of Art. I of the Ohio Constitution when counsel failed to adequately question James Grant about inconsistencies in his story.

**Fourth Ground for Relief**

Cunningham's convictions and sentence are void and/or voidable because he was denied effective assistance of counsel during his capital trial as guaranteed by the 6th and 14th Amendments to the United State's Constitution and Sect. 10, Art. I of the Ohio Constitution.

**Fifth Ground for Relief**

The failure of the trial court to allow defense counsel to participate in the *in camera* inspection of Dwight Goodloe's statements and call to the court's attention any perceived inconsistencies constitutes a violation of Cunningham's rights to confront witnesses and due process pursuant to the 6th and 14th Amendments to the United State's Constitution.

-9-

**Sixth Ground for Relief**

Cunningham's conviction and sentence are void or voidable because the prosecution withheld material evidence in violation of his rights to due process and a fair trial as guaranteed by the 5th, 6th, 8th, 14th Amendments to the United State's Constitution and Sections 1, 2, 5, 9, 10, 16, and 20 of Article I of the Ohio Constitution.

**Seventh Ground for Relief**

The presence of Nichole Mikesell on Cunningham's jury violated his right to a fair and impartial jury and due process rights in violation of 5th and 14th Amendments to the United State's Constitution.

**Eighth Ground for Relief**

Cunningham's right to effective assistance of counsel during *vior dire* was violated when counsel failed to adequately *voir dire* Nichole Mikesell in violation of the 5th, 6th and 14th Amendments.

**Ninth Ground for Relief**

Cunningham's sentence is void or voidable because he was denied the effective assistance of counsel at the mitigation phase of his capital trial as guaranteed by the 5th, 6th, 8th, and 14th Amendments to the United State's Constitution and Sections 1, 2, 5, 9, 10, 16, and 20 of Article I of the Ohio Constitution when counsel failed to present evidence from Allen County Children's Services to the jury.

**Tenth Ground for Relief**

Cunningham's sentence is void or voidable because he was denied the effective assistance of counsel at the mitigation phase of his capital trial as guaranteed by the 5th, 6th, 8th, and 14th Amendments to the United State's Constitution and Sections 1, 2, 5, 9, 10, 16 and 20 of Article I of the Ohio Constitution when counsel failed to call Sharon Cage to testify at mitigation.

**Eleventh Ground for Relief**

Cunningham's sentence is void or voidable because he was denied the effective assistance of counsel at the mitigation phase of his capital trial as guaranteed by the 5th, 6th, 8th, and 14th Amendments to the United States Constitution and Sections 1, 2, 5, 9, 10, 16, and 20 of Article I of the Ohio Constitution when counsel failed to introduce evidence showing Cunningham had told investigators the truth about his limited involvement in the crime, specifically the shootings.

**Twelfth Ground for Relief**

Cunningham's conviction and sentence are void or voidable because he was denied the effective assistance of counsel at the mitigation phase of his capital trial as guaranteed by the 5th, 6th, 8th, and 14th Amendment to United State's Constitution and Sections 1, 2, 5, 9, 10, 16, and 20 of Article I of the Ohio Constitution when counsel failed to seek a cultural expert to provide mitigation.

**Thirteenth Ground for Relief**

Ohio has systematic Constitutional problems in the administration of capital punishment in violation of the 5th, 6th, 8th, and 14th Amendments to the United State's Constitution.

**Fourteenth Ground for Relief**

The cumulative effect of the errors demonstrated in this petition deprived the

proceedings against Cunningham of fundamental fairness and resulted in his conviction and sentence being void or voidable in violation of the 8th and 14th Amendments to the United State's Constitution.

Apx. Vol. 6, pg. 45 –104. The trial court denied Petitioner's Motion for Post-conviction Relief on February 11, 2004. Apx. Vol. 6, pgs. 545-71.

Petitioner then filed a Notice of Appeal on March 9, 2004 with the Third District Court of Appeals. Apx. Vol. 7, pg. 4. He filed his merit brief on April 28, 2004, setting forth the following assignments of error:

### Assignment of Error No. 1

THE TRIAL COURT ERRED IN DISMISSING APPELLANT'S POST-CONVICTION PETITION WHERE HE PRESENTED SUFFICIENT OPERATIVE FACTS TO MERIT RELIEF OR, AT BARE MINIMUM, AN EVIDENTIARY HEARING.

First and Fourth Grounds for Relief

Counsel failed to obtain the appointment of a qualified ballistics expert to adequately prepare the defense case at Petitioner's trial and to rebut the testimony of key state's witnesses.

Third Ground for Relief

Counsel was rendered prejudicially ineffective due to the state's failure to provide exculpatory evidence to defense counsel concerning James Grant's statement to police.

Eighth Ground for Relief

Defense counsel failed to conduct a reasonable inquiry during *voir dire* to elicit information from Nichole Mikesell about her job with Allen County Children Services.

Second Ground for Relief

The State violated its affirmative duty to provide defense counsel with the statements taken by police of eyewitness Dwight Goodloe Jr. who testified against Jeronique Cunningham.

Sixth Ground for Relief

The State violated its affirmative duty to provide defense counsel with the statements taken by police of eyewitness James L. Grant who testified against Jeronique Cunningham.

Fifth Ground for Relief

The trial court did not permit defense counsel to review Dwight Goodloe's witness statements to investigating police for inconsistencies as required by Ohio R. Crim. P. 16(B)(1 )(g). The failure of the trial court to allow defense counsel to participate in the *in camera* inspection of this witness's statements and call to the court's attention any perceived inconsistencies constitutes a violation of Appellant Cunningham's rights to

-11-

confront witnesses and due process pursuant to the Sixth and Fourteenth Amendments to the United States Constitution and he was thereby prejudiced.

Seventh Ground for Relief

The presence of Nichole Mikesell on Cunningham's jury violated his rights to a fair and impartial jury as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.

Ninth Ground for Relief

Defense counsel was ineffective for failing to present testimony from employees and/or records from the Allen County Children's Services that pertained to Cunningham.

Tenth Ground for Relief

Defense counsel was ineffective for failing to present testimony from Sharon Cage, a nurse's aide at Lima Manor Nursing Home.

Eleventh Ground for Relief

Defense counsel was ineffective for failing to present available mitigating evidence that Appellant told the police the truth about the limited extent of his involvement in the charged capital crimes, specifically the shootings.

Twelfth Ground for Relief

Defense counsel was ineffective for failing to seek the assistance from a cultural expert to provide evidence in mitigation.

Fourteenth Ground for Relief

The cumulative effect of the errors demonstrated in this petition deprived Cunningham of fundamental fairness and resulted in his conviction and sentences being void or voidable.

### Assignment of Error No. 2

THE TRIAL COURT ERRED WHEN IT DENIED PETITIONER'S POST-CONVICTION PETITION WITHOUT FIRST AFFORDING HIM THE OPPORTUNITY TO CONDUCT DISCOVERY.

### Assignment of Error No. 3

THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S MOTION FOR FUNDS TO EMPLOY AN EXPERT.

Apx. Vol. 7, pg. 74.  The Third  District Court of Appeals affirmed the trial court's decision on

November 8, 2004. Apx. Vol.7, pgs. 368-403; *State v. Cunningham*, 2004 WL 2496525 (Ohio

App. 3rd Dist., Nov. 8, 2004).

Petitioner then filed a Notice of Appeal and Memorandum in Support of Jurisdiction

with the Ohio Supreme Court on December 3, 2004. Apx. Vol. 8, pg. 3.  He asserted three

propositions of law:

-12-

**Proposition of Law No. I**

THE TRIAL COURT ERRED IN DISMISSING APPELLANT'S POST CONVICTION PETITION WHERE HE PRESENTED SUFFICIENT OPERATIVE FACTS TO MERIT RELIEF OR, AT BARE MINIMUM, AN EVIDENTIARY HEARING IN VIOLATION OF APPELLANT'S RIGHTS AS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

**Proposition of Law No. II**

THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S POST CONVICTION PETITION WITHOUT FIRST AFFORDING HIM THE OPPORTUNITY TO CONDUCT DISCOVERY.

**Proposition of Law No. III**

THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S MOTION FOR FUNDS TO EMPLOY AN EXPERT IN VIOLATION OF HIS RIGHTS AS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

Apx. Vol. 8, pg. 43.  On March 16, 2005, the Ohio Supreme Court decided not to accept the appeal.

*State v. Cunningham*, 105 Ohio St.3d 1464 (2005).

Application for Reopening

On April 23, 2007, Cunningham filed an Application for Reopening Pursuant to Ohio Supreme

Court Practice Rule XI(6) raising the following fifteen propositions of law:[2]

**Proposition of Law No. 1**

ERRORS IN JURY SELECTION DEPRIVED MR. CUNNINGHAM OF A FAIR TRIAL AND SENTENCING PROCEEDING IN VIOLATION OF THE FOURTH, FIFTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

**Proposition of Law No. II**

THE DENIAL OF THE OPPORTUNITY TO LIFE QUALIFY THE JURY DEPRIVED MR. CUNNINGHAM OF A FAIR AND PROPER *VOIR DIRE* IN VIOLATION OF THE FOURTH, FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

**Proposition of Law No. III**

MR. CUNNINGHAM'S CONFRONTATION RIGHTS WERE DENIED IN VIOLATION OF THE

---

[2]     Ohio Supreme Court Rule XI(6) is similar to Ohio App.Rule 26(B) or *State v. Murnahan*, 63 Ohio St.3d 60 (1992). The Rule applies to ineffective assistance of appellate counsel in the Ohio Supreme Court.

FOURTH, FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

### Proposition of Law No. IV

THE STATE COMMITTED PROSECUTORIAL MISCONDUCT BY SUPPRESSING TWO EXCULPATORY STATEMENTS BY OCCURRENCE WITNESSES IN VIOLATION OF THE FOURTH, FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

### Proposition of Law No. V

TRIAL COUNSEL WERE INEFFECTIVE IN FAILING TO INVESTIGATE, OBTAIN AND USE BALLISTIC EVIDENCE DEMONSTRATING THAT JERONIQUE CUNNINGHAM WAS NOT THE ACTUAL KILLER IN VIOLATION OF THE FOURTH, FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

### Proposition of Law No. VI

THE STATE'S IMPROPER CLOSING ARGUMENTS AT BOTH THE GUILT AND SENTENCING PHASES OF MR. CUNNINGHAM'S TRIAL CONSTITUTED PROSECUTORIAL MISCONDUCT IN VIOLATION OF THE FOURTH, FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

### Proposition of Law No. VII

TRIAL COUNSEL WAS INEFFECTIVE AT SENTENCING FOR FAILING TO INVESTIGATE AND PRESENT IMPORTANT MITIGATING EVIDENCE, FOR CAUSING THE SUBMITTED MITIGATION EVIDENCE TO BE OVERLOOKED AND UNDERSTATED, AND FOR PRESENTING AN INADEQUATE CLOSING ARGUMENT, THEREBY DEPRIVING MR. CUNNINGHAM OF HIS RIGHTS UNDER THE FOURTH, FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

### Proposition of Law No. VIII

THE JURY INSTRUCTIONS DEPRIVED MR. CUNNINGHAM OF HIS RIGHT TO DEFEND AGAINST THE STATE'S CHARGES, TO CONFRONT THE STATE'S WITNESSES, HIS RIGHT TO A RELIABLE SENTENCE, AS WELL AS HIS RIGHTS TO DUE PROCESS AND EQUAL PROTECTION IN VIOLATION OF THE FOURTH, FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

### Proposition of Law No. IX

THE TOTAL BREAKDOWN IN OHIO'S CAPITAL SENTENCING PROCESS DEPRIVED MR. CUNNINGHAM OF HIS RIGHTS UNDER THE FOURTH, FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

### Proposition of Law No. X

MR. CUNNINGHAM'S SENTENCE OF DEATH IS INAPPROPRIATE, ARBITRARY AND CAPRICIOUS IN VIOLATION OF THE FOURTH, FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

### Proposition of Law No. XI

PERVASIVE PRETRIAL PUBLICITY DEPRIVED MR. CUNNINGHAM OF HIS RIGHTS UNDER THE FOURTH, FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

### Proposition of Law No. XII

THE ADMISSION OF IRRELEVANT, REPETITIVE, AND INFLAMMATORY PHOTOGRAPHS

-14-

DEPRIVED MR. CUNNINGHAM OF HIS RIGHTS UNDER THE FOURTH, FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

### Proposition of Law No. XIII

OHIO'S DEATH PENALTY SCHEME VIOLATES ARTICLE VI AND THE FOURTH, FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

### Proposition of Law No. XIV

THE CUMULATIVE IMPACT OF THE ERRORS ADDRESSED IN THE APPLICATION RENDER MR. CUNNINGHAM'S CONVICTION AND SENTENCE UNRELIABLE AND UNCONSTITUTIONAL IN VIOLATION OF ARTICLE VI AND THE FOURTH, FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

### Proposition of Law No. XV

MR. CUNNINGHAM WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL ON APPEAL.

The Ohio Supreme Court denied the Application for Reopening for failure to comply with the 90 day filing deadline in S. CT. Prac. R. XI(6)(A) on August 29, 2007. *State v. Cunningham*, 114 Ohio St.3d1503 (2007).

### Federal Habeas Corpus

Cunningham filed his Petition for Writ of Habeas Corpus in the United States District Court for the Northern District of Ohio on October 2, 2006. (ECF 19). In his Petition, Cunningham presented the following fourteen claims for relief:

### CLAIM FOR RELIEF NO. I

THE STATE COURT DETERMINATIONS THAT ERRORS IN JURY SELECTION DID NOT DEPRIVE MR. CUNNINGHAM OF A FAIR TRIAL AND SENTENCING PROCEEDING REST ON UNREASONABLE DETERMINATION OF FACTS, ARE CONTRARY TO, OR AN UNREASONABLE APPLICATION OF LAW.
A. THE PRESENCE OF A BIASED JUROR DEPRIVED MR. CUNNINGHAM OF A FAIR TRIAL.
B. DISMISSING SENIOR CITIZENS FROM THE JURY VENIRE DENIES A CAPITAL DEFENDANT A JURY POOL DRAWN FROM A REPRESENTATIVE AND FAIR CROSS-SECTION OF THE COMMUNITY AS WELL AS VIOLATES THE EQUAL PROTECTION CLAUSE.
C. THE STATE COURT DETERMINATION THAT TRIAL COUNSEL WAS EFFECTIVE IN CONDUCTING *VOIR DIRE* RESTS ON UNREASONABLE DETERMINATION OF FACTS, ARE CONTRARY TO,

-15-

OR AN UNREASONABLE APPLICATION OF LAW.
D. THE STATE APPELLATE PROCESS DEPRIVED MR. CUNNINGHAM OF
A FULL AND FAIR OPPORTUNITY TO LITIGATE JURY SELECTION
ISSUES.

### CLAM FOR RELIEF NO. II
THE OHIO SUPREME COURT'S DETERMINATION THAT THE DENIAL
OF THE OPPORTUNITY TO LIFE QUALIFY THE JURY DID NOT
DEPRIVE MR. CUNNINGHAM OF A FAIR AND PROPER *VOIR DIRE* WAS
AN UNREASONABLE APPLICATION OF OR CONTRARY TO *MORGAN V.
ILLINOIS* AND/OR IS PREDICATED ON AN UNREASONABLE
DETERMINATION OF FACTS.

### CLAIM FOR RELIEF NO. III
THE OHIO SUPREME COURT AND THE OHIO APPELLATE COURT, IN
AFFIRMING THE TRIAL COURT, ACTED CONTRARY TO OR
UNREASONABLY APPLIED CLEARLY ESTABLISHED UNITED STATES
SUPREME COURT AUTHORITY, VIOLATING PETITIONER'S RIGHTS
UNDER THE CONFRONTATION CLAUSE OF THE SIXTH AMENDMENT
AND THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT.

### CLAIM FOR RELIEF NO. IV
THE DECISION OF THE OHIO APPELLATE COURT AFFIRMING THE
TRIAL COURT'S DECISION THAT THE TRIAL PROSECUTORS DID NOT
COMMIT PROSECUTORIAL MISCONDUCT BY SUPPRESSING TWO
EXCULPATORY STATEMENTS BY OCCURRENCE WITNESSES,
VIOLATED THE DUE PROCESS CLAUSE OF THE FOURTEENTH
AMENDMENT, AND WAS CONTRARY TO OR AN UNREASONABLE
APPLICATION OF CLEARLY ESTABLISHED SUPREME COURT
AUTHORITY.

### CLAIM FOR RELIEF NO. V
THE STATE COURT DETERMINATIONS THAT TRIAL COUNSEL WERE
NOT INEFFECTIVE FOR FAILING TO INVESTIGATE, OBTAIN AND USE
BALLISTIC EVIDENCE DEMONSTRATING THAT JERONIQUE
CUNNINGHAM WAS NOT THE ACTUAL KILLER IS CONTRARY TO OR
AN UNREASONABLE APPLICATION OF *STRICKLAND V. WASHINGTON*.

### CLAIM FOR RELIEF NO. VI
THE OHIO SUPREME COURT DECISION NOT FINDING PROSECUTORIAL
MISCONDUCT FOR IMPROPER CLOSING ARGUMENTS BOTH AT THE
GUILT AND SENTENCING PHASES, IN VIOLATION OF THE EIGHTH
AMENDMENT ADMONITION AGAINST CRUEL AND UNUSUAL
PUNISHMENT AND THE DUE PROCESS CLAUSE OF THE FOURTEENTH
AMENDMENT, WAS CONTRARY TO OR AN UNREASONABLE
APPLICATION OF CLEARLY ESTABLISHED SUPREME COURT AUTHORITY.

### CLAIM FOR RELIEF NO. VII
THE DECISION OF THE OHIO SUPREME COURT AND THE OHIO
APPELLATE COURT HOLDING TRIAL COUNSEL WAS NOT

INEFFECTIVE AT SENTENCING FOR FAILING TO INVESTIGATE AND PRESENT IMPORTANT MITIGATING EVIDENCE, FOR CAUSING THE SUBMITTED MITIGATION EVIDENCE TO BE OVERLOOKED AND UNDERSTATED, AND FOR PRESENTING AN INADEQUATE CLOSING ARGUMENT, WAS CONTRARY TO OR AN UNREASONABLE VIOLATION OF *STRICKLAND V. WASHINGTON* AND ITS PROGENY, AND IN VIOLATION OF PETITIONER'S RIGHTS UNDER THE SIXTH, EIGHTH, AND FOURTEENTH AMENDMENT.

### CLAIM FOR RELIEF NO. VIII

THE JURY INSTRUCTIONS DEPRIVED MR. CUNNINGHAM OF HIS RIGHT TO DEFEND AGAINST THE STATE'S CHARGES, TO CONFRONT THE STATE'S WITNESSES, HIS RIGHT TO A RELIABLE SENTENCE, AS WELL AS HIS RIGHTS TO DUE PROCESS AND EQUAL PROTECTION AND THE STATE COURT DECISIONS TO THE CONTRARY ARE AN UNREASONABLE APPLICATION OF, OR CONTRARY TO LAW. U.S. CONST. AMENDS. V, VI, VIII, AND XIV.

### CLAIM FOR RELIEF NO. IX

THE FAILURE OF THE OHIO COURTS TO CORRECT THE TOTAL BREAKDOWN OF THE CAPITAL SENTENCING PROCESS WAS PREDICATED ON AN UNREASONABLE DETERMINATION OF FACTS, OR WAS AN UNREASONABLE APPLICATION OF, OR CONTRARY TO, CLEARLY ESTABLISHED LAW. *LOCKETT; EDDINGS*.

### CLAIM FOR RELIEF NO. X

JERONIQUE CUNNINGHAM'S SENTENCE OF DEATH IS INAPPROPRIATE, ARBITRARY AND CAPRICIOUS AND THE STATE COURT DECISIONS TO THE CONTRARY REST ON UNREASONABLE DETERMINATION OF FACTS, ARE CONTRARY TO, OR AN UNREASONABLE APPLICATION OF LAW.

### CLAIM FOR RELIEF NO. XI

THE STATE COURT DETERMINATION THAT PRETRIAL PUBLICITY WAS NOT SO PERVASIVE THAT PREJUDICE TO THE ACCUSED ARE [SIC] PREDICATED ON AN UNREASONABLE DETERMINATION OF FACT, OR ARE [SIC] CONTRARY TO , OR AN UNREASONABLE APPLICATION OF LAW.

### CLAIM FOR RELIEF NO. XII

THE OHIO SUPREME COURT'S DETERMINATION THAT THE ADMISSION OF IRRELEVANT, REPETITIVE, AND INFLAMMATORY PHOTOGRAPHS INTO EVIDENCE DID NOT VIOLATE MR. CUNNINGHAM'S RIGHT TO DUE PROCESS WHEN, THE PROBATIVE VALUE OF THE PHOTOGRAPHS IS OUTWEIGHED BY THE DANGER OF PREJUDICE TO THE DEFENDANT, AND THE PHOTOGRAPHS ARE CUMULATIVE OF OTHER EVIDENCE AND REPETITIVE OF OTHER PHOTOGRAPHS IS PREDICATED ON AN UNREASONABLE DETERMINATION OF FACT, CONTRARY TO, OR AN UNREASONABLE

APPLICATION OF LAW . U.S. CONST. AMEND. XIV
**CLAIM FOR RELIEF NO. XIII**
THE OHIO COURTS' DETERMINATIONS THAT OHIO'S DEATH
PENALTY SCHEME DOES NOT VIOLATE THE CONSTITUTION IS
PREDICATED ON AN UNREASONABLE DETERMINATION OF FACTS,
CONTRARY TO, OR AN UNREASONABLE APPLICATION OF L AW.
**CLAIM FOR RELIEF NO. XIV**
THE CUMULATIVE IMPACT OF THE ERRORS ADDRESSED IN THIS
PETITION RENDER MR . CUNNINGHAM 'S CONVICTION AND
SENTENCE UNRELIABLE AND UNCONSTITUTIONAL.

## IV. Initial Considerations

### A. AEDPA Applies To The Petition

As a preliminary matter, the Court notes that Cunningham filed his Petition on October 2, 2006, well after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Thus, the AEDPA governs this review. See *Williams v. Coyle*, 167 F.3d 1036, 1037 (6th Cir. 1999).

### B. Standard of Habeas Review Under AEDPA

The AEDPA "requires heightened respect for state court factual and legal determinations." *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998). Under the AEDPA, federal habeas courts must accord complete deference to state court findings of fact. *See Benge v. Johnson*, 474 F.3d 236, 241 (6th Cir. 2007). An applicant seeking a writ pursuant to § 2254 may rebut this presumption of correctness only with clear and convincing evidence. 28 U.S.C. § 2254(e).

Furthermore, a petition for a writ of habeas corpus on behalf of a person in custody by the judgment of a state court shall not be granted with respect to any claim adjudicated on the merits in state court proceedings unless the applicant shows that the adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was

based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. See 28 U.S.C. § 2254(d) (1) and (2) (as amended by AEDPA); *Williams v. Taylor*, 529 U.S. 362, 404-405 (2000).

A state court adjudication is "contrary to" Supreme Court precedent under § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at a different result. *Williams,* 529 U.S. at 404-05. The state court adjudication involves "an unreasonable application of" Supreme Court precedent under § 2254(d)(2), "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular ... case," or if the court unreasonably refuses to extend, or unreasonably extends, existing legal principles from the Court's precedents to a new context. *Id*. at 407; *see also Hereford v. Warren,* 536 F.3d 523, 540 (6th Cir. 2008).

Federal courts may entertain a state prisoner's petition for habeas relief only if the prisoner's confinement violates the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 2254(a) (1994). A violation of state law is not cognizable in a federal habeas proceeding unless the violation is of constitutional magnitude. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a Federal habeas court to reexamine state-court determinations on state-law questions"); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Thus, general improprieties occurring in state court proceedings are cognizable only if they resulted in fundamental unfairness and consequently violated the habeas petitioner's Fourteenth Amendment right to due process. Relief from violations of federal law will be granted only if the violation rises to the level of a "fundamental defect which inherently results in a complete miscarriage of justice." *Reed v. Farley*, 512 U.S. 339, 340 (1994)

-19-

(quoting *Hill v. United States,* 368 U.S. 424, 428 (1962)).

Federal courts apply a different harmless error standard of review in habeas proceedings than that which they apply in direct appellate review. Thus, for purposes of federal habeas review, a constitutional error that implicates trial procedures must be considered harmless unless it had a "substantial and injurious effect or influence in determining [the] jury's verdict." *Brecht v. Abramson,* 507 U.S. 619, 637 (1993). The United States Supreme Court has held that the *Brecht* standard applies in habeas cases even where the federal habeas court is the first to conduct harmless error review. *Fry v. Pliler,* 551 U.S. 112 (2007).

## V. Exhaustion and Procedural Default

### A. Exhaustion

A state prisoner must exhaust his state remedies before bringing his claim in a federal habeas corpus proceeding. 28 U.S.C. § 2254(b), (c); *Rose v. Lundy*, 455 U.S. 509 (1982). Exhaustion is fulfilled once a state supreme court provides a convicted defendant an opportunity to review his or her claims on the merits. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). If under state law there remains a remedy that a petitioner has not yet pursued, exhaustion has not occurred and the federal habeas court cannot entertain the merits of the claim. *Rust*, 17 F.3d at 160. However, a federal court can deny a petition that contains unexhausted claims. 28 U.S.C. § 2254(b)(2).

Claims that were never raised at any time during the state court proceedings are both unexhausted and procedurally defaulted because no Ohio court has had an opportunity to decide them. If a habeas petitioner sought to return to state court and attempted to present new claims to the Ohio Supreme Court, that court would find them procedurally barred.

A petitioner "cannot obtain federal habeas relief under 28 U.S.C. § 2254 unless he has completely exhausted his available state court remedies to the state's highest court." *Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001)(quoting *Coleman v. Mitchell*, 244 F.3d 533, 538 (6th Cir. 2001)). Rather than dismiss certain claims the court deems unexhausted, however, a habeas court need not wait for exhaustion if it determines that a return to state court would be futile. *Lott v. Coyle*, 261 F.3d 594, 608 (6th Cir. 2001).

### B. Procedural Default

For purposes of comity, a federal court may not consider "contentions of federal law that are not resolved on the merits in the state proceeding due to petitioner's failure to raise them as required by state procedure." *Wainwright* v. Sykes, 433 U.S. 72, (1977). If a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991). As the United States Supreme Court explained, "[t]he procedural default rule is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

In *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986), the Sixth Circuit Court of Appeals set the criteria for determining the defaulted status of a claim: "When a state argues that a habeas claim is precluded by the petitioner's failure to observe a state procedural rule, the federal court must go through a complicated [four-prong] analysis." *Id.* at 138. Specifically, the Sixth Circuit stated:

> First, the court must determine that there is a state procedural rule that is
> applicable to the petitioner's claim and that the petitioner failed to comply with
> the rule . . . . Second, the court must decide whether the state courts actually
> enforced the state procedural sanction . . . . Third, the court must decide
> whether the state procedural forfeiture is an "adequate and independent" state
> ground on which the state can rely to foreclose review of a federal constitutional
> claim. [Fourth, if] the court determines that a state procedural rule was not
> complied with and that rule was an adequate and independent state ground,
> then the petitioner must demonstrate . . . .that there was "cause" for him to not
> follow the procedural rule and that he was actually prejudiced by the alleged
> constitutional error.

*Id.* (citations omitted).[3]  The claim must be presented to the state courts under the same theory in

which it is later presented in federal court.  *Lott*, 261 F.3d at 607, 611, 617, 619; *Wong v. Money,* 142

F.3d 313, 322 (6th Cir. 1998).

The Respondent asserts that several claims raised in the Petition are barred from review by

this Court because they are procedurally defaulted. The Court will address the procedural aspect of

each claim when considering the individual claim.

Cunningham argues that Ohio's *Perry* rule of *res judicata* set forth in *State v. Perry*, 10 Ohio

St.2nd 175 (1967), is not an adequate state ground to bar habeas review. Under the *Perry* doctrine,

a final judgment of conviction bars a convicted defendant from raising and litigating in any

proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that

was raised or could have been raised by the defendant at the trial on the merits, or on appeal from that

underlying judgment. *Id*. at 180; *see also State v. Roberts*, 1 Ohio St.3d 36, 39 (1982)(holding policy

behind *Perry* bars post-conviction petitioners from raising issues that could have been raised on direct

---

[3]      In ascertaining whether a state court has addressed the merits of a petitioner's
constitutional claim, federal courts must rely on the presumption that there is no
independent and adequate state ground for the state court decision absent a clear
statement to the contrary.

appeal in a collateral proceeding to avoid reversal of conviction based on collateral, rather than constitutional, issues). Thus, unless a claim is based on evidence *dehors* the record, it must be raised during direct appeal, or be deemed waived.  Further, this state procedural bar has routinely been observed by federal courts reviewing habeas petitions and is roundly deemed an independent and adequate state ground foreclosing federal habeas review. See, *e.g.*, *Byrd v. Collins*, 209 F.3d 486, 521 (6th Cir. 2000). Consequently, this Court holds that any claim that the Ohio courts refused to address based on *Perry* is procedurally defaulted and barred from habeas review absent a showing of cause and prejudice.[4]

Ohio has a contemporaneous objection rule under which an appellant who fails to object waives later review of the issue unless plain error can be shown. *Williams v. Bagley*, 380 F.3d 932, 968 (6th Cir. 2004) (citing *State v. Smith*, 89 Ohio St.3d 323, 332 (2000)). The Sixth Circuit has held that Ohio's contemporaneous objection rule constitutes an adequate and independent state ground barring federal review absent a showing of cause for the waiver and resulting prejudice. *Awkal v.*

---

[4]    The Supreme Court of Ohio recognized an exception to the *Perry* rule in *State v. Hester*, 341 N.E.2d 304 (Ohio 1976). The *Hester* Court concluded that, where the record does not disclose that the issue of competent trial counsel has been adjudicated, *res judicata* is an improper basis upon which to dismiss an Ohio post-conviction petition. *Id.* at syllabus para. 2. The Ohio Supreme Court subsequently modified the *Hester* exception to the *Perry* rule in *State v. Cole,* 2 Ohio St.3d 112 (Ohio 1982), finding that:
> Where the defendant, represented by new counsel upon direct appeal fails to raise therein the issue of competent trial counsel, and said issue could fairly have been determined without resort to evidence outside the record, *res judicata* is a proper basis for dismissing defendant's petition for post-conviction relief.

*Id.* at syllabus. These modifications to the *Perry* rule have led federal habeas courts to conclude that Ohio's post-conviction statute, upon which *Perry* rests, satisfies due process. *Morales v. Coyle*, 98 F. Supp. 2d 849, 861 (N.D. Ohio 2000).

*Mitchell,* 613 F.3d 629, 648-49 (6th Cir.  2010); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005).

A state court's review of an issue for plain error is considered by the Sixth Circuit as the enforcement of a procedural default. *Awkal,* 613 F.3d at 649; *Fleming v. Metrish,* 556 F.3d 520, 539 (6th Cir. 2009), *cert. denied*, 130 S.Ct. 103 (2009); *Jells v. Mitchell*, 538 F.3d 478, 511 (6th Cir.2008). The federal court, in determining whether a state court has relied on a procedural rule to bar review of an issue, examines the latest reasoned opinion of the state courts and presumes that later courts enforced the bar instead of rejecting the claim on the merits. *Hinkle v. Randle*,  271 F.3d 239, 244 (6th Cir. 2001)(citing *Ylst*, *v. Nunnemaker*, 501 U.S. 797, 803 (1991)).

Generally, if the district court concludes that the state prisoner has procedurally defaulted his federal claims in state court, federal review is barred unless the prisoner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrates that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 749.

Demonstrating "cause" requires showing that some factor external to the defense impeded counsel's efforts to comply with the state procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Demonstrating "prejudice" requires showing a disadvantage "infecting" the trial with constitutional error. *United States v. Frady*, 456 U.S. 152, 168 (1982).

Absent cause and prejudice, federal courts may not review issues that are procedurally defaulted unless the petitioner shows that his conviction is the result of a fundamental miscarriage of justice. A fundamental miscarriage of justice is a conviction of one who is "actually innocent." *See Coleman*, 501 U.S. at 750; *Murray*, 477 U.S. at 496. The Supreme Court requires the petitioner to demonstrate not merely a reasonable doubt in light of new evidence, but rather that "it is more likely

than not that no reasonable juror would have convicted [the Petitioner] in light of the new evidence." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). The petitioner fails to meet his burden if "at least one juror, acting reasonably and properly instructed would have found" him guilty. *Id.* at 329.

Ineffective assistance of counsel can be used to excuse procedural default. *Murray*, 477 U.S. at 489; *Girts v. Yanai*, 501 F.3d 743, 758 ( 6th Cir. 2007), *cert denied*, 129 S.Ct. 92 (2008). The claim must first be presented to the state court. *Morris v. Eberlin*, 2008 WL 5083140 * 4 (N.D. Ohio Nov. 25, 2008).

## VI. Analysis of Petitioner's Claims

**A.    Jury Selection**

|  |  |
|---|---|
| **Ground One** | The state court determinations that errors in jury selection did not deprive Mr. Cunningham of a fair trial and sentencing proceeding rest on an unreasonable determination of facts, are contrary to, or an unreasonable application of law. |
|  | a. the presence of a biased juror deprived him of a fair trial; |
|  | b. dismissing senior citizens from the jury venire denies a capital defendant a jury pool drawn from a representative and fair cross-section of the community as well as violates the Equal Protection Clause; |
|  | c. the state court determination that trial counsel was effective in conducting *voir dire* rests on an unreasonable determination of the facts, is |

contrary to or an unreasonable application of law; and

d. the state appellate process deprived Cunningham of a fair and full opportunity to litigate jury selection issues.

Cunningham argues that his convictions and sentences are void under the Sixth and Fourteenth Amendments to the United States Constitution because of the trial court's error in jury selection.

The Sixth and Fourteenth Amendments provide a criminal defendant the right to an impartial jury. *Wolfe v. Brigano*, 232 F.3d 499, 501 (6th Cir. 2000) (citing *Morgan v. Illinois*, 504 U.S. 719 (1992)). The presence of a single biased juror deprives the defendant of a fair trial. *Morgan,* 504 U.S at 729; *Williams*, 380 F.3d at 944. In *Ross v. Oklahoma*, 487 U.S. 81, 85 (1988), the court held that in order to challenge the trial court's failure to remove a juror for cause, that juror must actually have sat on the jury. *Wolfe,* 232 F.3d at 501. The failure to remove a biased juror requires reversal of the conviction. *United States v. Martinez-Salazar*, 528 U.S. 304, 316 (2000); *Hughes v. United States*, 258 F.3d 453, 463 (6th Cir. 2001). Whether or not a prospective juror is impartial is a factual determination entitled to a presumption of correctness pursuant to 28 U.S.C. § 2254(e)(1). *Williams*, 380 F.3d at 953; *Bowling v. Parker*, 344 F.3d 487, 519 (6th Cir. 2003). Because of the trial judge's proximity to the venire and the determination of credibility and demeanor that is involved in *voir dire*, the judge's decision to excuse or not is deferential on review. *Id*.

**(a) the presence of a biased juror deprived him of a fair trial**

**(i)**

Juror # 21, Nichole Mikesell, the foreperson of the jury, worked at Allen County Children's Services as an investigator. Cunningham contends that as a result of her employment, she was aware

of extra-judicial information regarding Cunningham, and had formed an opinion about his worth as a human being and whether he should receive the death penalty. The Respondent agrees that this sub-claim is preserved for federal habeas review. Evidence was presented in post-conviction proceedings attempting to show that this juror relied on evidence outside of the trial to form the opinion that Jeronique was an evil person. She said that some social workers worked with Jeronique in the past and were afraid of him. She also said that "if you observe one of the veins starting to bulge in his head, watch out and stay away because he might try to kill you." She also stated that Jeronique has "no redeeming qualities." Apx. Vol. 6, pg. 311.  On June 9, 2008, the state court granted Petitioner's Motion for Discovery on this issue. (ECF 86). Depositions of Mikesell, Stacie Freeman and Roberta Wobler were conducted.

The Third District Court of Appeals ruled on this issue in post-conviction proceedings as follows:

> In the seventh ground for relief, Cunningham asserted that the presence of Juror Number 21, Nichole Mikesell, on the jury was prejudicial to him and violated his rights to a fair and impartial jury. Cunningham provided a summary of an interview with Mikesell conducted by a privately hired investigator after Cunningham's trial had ended. Cunningham points to several statements made by Mikesell to the investigator in support of his assertion of prejudice. Specifically, the investigator provided that Mikesell said Cunningham "is an evil person." Further, Mikesell stated "some social workers worked with Jeronique in the past and were afraid of him." Cunningham also points to Mikesell's comments that "if you observe one of the veins starting to bulge in his head, watch out and stay away because he might try to kill you" and that Cunningham "had no redeeming qualities" to show Mikesell was not an impartial juror.
> The only comment made by Mikesell that would have any bearing on Cunningham's assertion is that she was provided information by some social workers regarding Cunningham. However, the investigator's interview summary of Mikesell does not indicate whether Mikesell obtained this information from the social workers prior to, during, or subsequent to Cunningham's trial. The record also does not provide when the investigator conducted these interviews with the jurors. However, the record does provide that Mikesell was thoroughly examined during the *voir dire* process and that

-27-

she informed the court regarding the information she had about the case. Mikesell never indicated that she could not be a fair and impartial juror.

The other comments Mikesell made to the investigator that Cunningham relies upon to show Mikesell's prejudice are statements regarding Mikesell's impression of Cunningham's character, which was likely shaped during the trial. Further, the other information provided in the investigator's interview summary of Mikesell shows that Mikesell followed the law and carefully considered the evidence in the case and the mitigating factors that were presented by defense counsel. Therefore, the trial court did not err in dismissing, without an evidentiary hearing, Cunningham's claim that juror Mikesell had prejudicial information regarding Cunningham and that she had already formed an opinion about the outcome of the case from the beginning.

*State v. Cunningham*, 2004 WL 2496525 *15 (Ohio App., 3rd Dist. Nov. 8, 2004).

In *Wainwright v. Witt*, 469 U.S. 412, 428 (1985), the court found that whether or not a prospective juror is biased should be determined by the trial court judge after conducting *voir dire*. The judge makes this determination based on an opinion as to the prospective juror's demeanor and credibility. *Id*. Such determination is entitled to deference. *Id*.

Federal Rule of Evidence 606(b), quite similar to Ohio Rule of Evidence 606(B) provides:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent or dissent from the verdict or indictment or concerning the juror's mental process in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

A juror cannot testify about the motives and influences affecting the verdict. *United States v. Gonzales*, 227 F.3d 520, 524 (6th Cir. 2000). Rule 606(b) allows a juror to testify only as to whether extraneous prejudicial information was improperly brought to the jury's attention and whether an outside influence was brought to bear on any juror. *Id*. An extraneous influence "is one derived from

-28-

specific knowledge about or a relationship with either the parties or their witnesses." *Garcia v. Andrews*, 488 F.3d 370, 376 (6th Cir. 2007). The Sixth Circuit noted that examples of extraneous influence include prior business dealings with the defendant, applying to work for the local district attorney, conducting an out of court experiment and discussing the trial with an employee. *Id*. When a potential meritorious claim of extraneous influence is raised, the court must conduct a hearing pursuant to *Remmer v. United States*, 347 U.S. 227 (1954), to give the defendant an opportunity to show bias. *United States v. Davis,* 177 F.3d 552, 557 (6th Cir. 1999). The court should look to the nature of the extraneous material and its likely effect on the hypothetical average jury, not the source of the information or the locus of its communication, which determines whether the defendant has been prejudiced and thus whether his constitutional rights were violated. *United States ex rel. Owen v. McMann*, 435 F.2d 813, 820 (2nd Cir. 1970). Jury testimony cannot be used to impeach a verdict. *Tanner v. United States*, 483 U.S. 107, 119 (1987). Otherwise, every case would result in an investigation of the jury in an effort to acquire evidence showing misconduct sufficient to overturn the verdict. *Id.*

Even if extraneous influence on the jury occurred that constituted constitutional error, habeas corpus relief is not available if the error is harmless. *Doan v. Brigano*, 237 F.3d 722,736 (6th Cir. 2001), *overruled on other grounds by Wiggins v. Smith*, 539 U.S. 510 (2003). Under *Brecht,* 507 U.S. at 638, the standard of review for harmless error is whether the erroneously admitted evidence had a substantial and injurious effect or influence in determining the jury's verdict. *See Fry*, 551 U.S. at 120 (*Brecht* standard is used to assess the prejudicial impact of federal constitutional error in a state court criminal trial). Harmless error is determined from the perspective of the rational juror, not from that of individual jurors in a particular case. *United States v. Blackwell*, 459 F.3d 739, 769 (6th Cir.

-29-

2006) (citing *Doan*, 237 F.3d at 736).

The evidence concerning Juror # 21's knowledge of Cunningham was submitted by an investigator. Apx. Vol. 6, pg. 311. The state court decision is based on his version of what was told to him by the juror. Thus, this evidence constitutes double hearsay.  Further, as the state court noted, it is not clear when Juror #21 obtained this information from the Allen County Children's Services social workers.  She could have learned of their opinions of Cunningham after his trial. Also, this juror knew the prosecutor as well as defense counsel Grzybowski. Apx. Vol. 2, pg.53. During *voir dire,* she stated that she worked for Allen County Children's Services and that Grzybowski had cross-examined her on several occasions. Apx. Vol. 2, pg. 54. In fact, Grzybowski stated in *voir dire* that he knew she worked for Children's Services. Apx. Vol. 2, pgs. 207–09.  She was questioned about her job and whether she could be fair and impartial and if she had any additional information to bring to the court's attention. She answered that she had no other information concerning the case and that she could be fair and impartial. *Id*. After the trial, she told the investigator that "she did not have any pertinent information regarding the instant offense..." Apx. Vol. 6, pg. 311. It appears that defense counsel knew Juror #21 and made a strategic decision to keep her on the panel even though he still had one peremptory challenge remaining when the jury was sworn. Tr. Vol. 5, pg. 877.

Further, the juror's statement to the investigator indicated that, although she believed the State had some weaknesses in its case, she followed the evidence closely and had no doubt about Cunningham's guilt. Apx. Vol. 6, pg. 310-11.  She stated, "All jurors believed that the witnesses were clear in their testimony regarding Jeronique's gun being fired."  Apx. Vol. 6, pg. 311. Even if this juror had formed an opinion based on his worth as a human being, the error was harmless because, based on the evidence, Cunningham would have been convicted.

-30-

Discovery was allowed wherein Mikesell was deposed.  She stated that she did not exactly tell the investigator that Jeronique was an evil person, that some social workers worked with Jeronique in the past and were afraid of him, that if you observe one of the veins starting to bulge in his head, watch out and stay away because he might try to kill you, and that Jeronique had no redeeming qualities. Mikesell Dep. pgs. 12-13. She further stated that "there was absolutely no social workers that I worked with at the time of my job that ever spoke to me about this person. After the trial was completely over and after sentencing was completely over, I looked through the files. I don't recall the vein thing. I don't recall if that was said during the trial. I don't recall if that was in the file, but I absolutely read it after the trial was over." *Id*. She denied relaying any of this information to other jurors. Dep. pg. 14. Most important, she testified that she knew nothing about "this case or these people prior to being a juror." Dep. pg. 21. The Court finds that the decision of the Ohio court of appeals was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court.

**(ii)**

During her deposition, Mikesell testified that prior to trial she did not investigate Cunningham but may have had some contact with the family when she rode in a car with Cleveland Jackson, Cunningham's half brother, three years prior to the trial when she was an intern. Mikesell Dep. pg. 7. Depositions of the two other jurors resulted in discovery that Mikesell may have told other jurors that she knew the victims' families. This issue was not presented to the state courts and is, therefore, unexhausted and procedurally defaulted. If the Court were to consider the testimony, it would find this claim to be without merit.

After discovery was completed, the Court allowed Petitioner to amend claim 1 for relief to add

-31-

part (ii). Juror Freeman testified during her deposition that, "I remember [Mikesell] stating that she dealt with the victims and their families, they knew who she was, and that if she would find them not guilty that she would have to deal with them and that's something she didn't want to have to deal with because they knew who she was." Freeman Dep. pg. 6. On cross-examination, she admitted that she did not recall the exact words. Freeman Dep. pgs. 22-23. At her deposition, juror Wobler testified that "at the very end of deliberation she [Mikesell] stated she may in the future be working with the families under the Welfare Job and Family Services where she worked." Wobler Dep. pg. 5. There was no discussion among the jurors concerning this statement. Wobler Dep. pg. 6. Wobler testified that the comment had no effect on her deliberations. *Id.* No one forced Wobler to recommend the death penalty. Wobler Dep. pg. 13. Freeman told Mikesell that the jury had to render a verdict based on the evidence. Freeman Dep. pg. 6. Freeman was the last one holding out and she felt pressured to vote guilty. Freeman Dep. pg. 11. "I mean I felt the sense in the room, I felt the pressure. She tried to steer everyone towards that. And that comment should never have been made..." *Id.* Later in her deposition she said that no one forced her to convict Cunningham, but she was the only one not voting for guilty and felt pressured. Freeman Dep. pgs. 23-24. She wanted to continue deliberating instead of having one person control the situation. Freeman Dep. pg. 26. The Court concludes that, according to the two jurors' testimony, they were not forced to convict Cunningham. Even though Freeman stated that she felt pressured, it was because she was the only one holding out, and she was not happy that Mikesell, as jury foreperson, was controlling the situation. Usually, a foreperson controls the jury. This sub-claim is without merit.

### (b) dismissal of senior citizens

It is alleged that during the jury selection process, the trial court excused nineteen members

of the venire in whole or in part because they were senior citizens, thereby violating the Equal Protection Clause and depriving Cunningham of a fair and impartial jury. Cunningham contends that this claim has not been defaulted as it was presented to the Ohio court in his application to reopen appeal pursuant to Ohio Supreme Court Practice Rule XI(6), also known as a *Murnahan* application. *See State v. Murnahan*, 63 Ohio St.3d 60 (1992). A *Murnaha*n application preserves only claims of ineffective assistance of appellate counsel, a claim not involved in this ground. The claim must be presented to the state courts under the same theory in which it is later presented in federal court. *Wong,,* 142 F.3d at 322. Thus, this claim has not been exhausted and is procedurally defaulted. If considered, the Court would find it to be without merit as follows.

The Sixth Circuit has held that age is not a prohibited reason for excluding a juror with a peremptory challenge. *United States v. Maxwell,* 160 F.3d 1071, 1075 (6th Cir. 1998). *See United States v. Hibbler,* 193 Fed. Appx. 445, 451 (6th Cir. 2006). It is not considered to be a suspect classification under the Equal Protection Clause. *Harris v. Burge*, 2004 WL 884437 * 2 (E.D. N.Y. Mar. 25, 2004), (citing *Gregory v. Ashcroft*, 501 U.S. 452, 470 (1991)). Peremptory challenges may be exercised for any reason as long as the reason is related to the prosecutor's view of the case. *Evans v. Smith,* 220 F.3d 306, 312 (4th Cir. 2000). Further, the Respondent has pointed out that the jurors were excused for health reasons, not because of age.

### (c) ineffective assistance of counsel for failing to conduct adequate *voir dire*

Cunningham asserts that counsel were ineffective for failing to object to the exclusion of senior citizens from the jury. Since the Court has determined that age is not a suspect classification under the Equal Protection Clause, this issue is without merit.

Cunningham also contends that his counsel should have conducted *voir dire* on the question

-33-

of pretrial publicity. This claim was presented to the state court and is preserved for federal habeas review. The shootings on January 3, 2002, at the Eureka Street apartment, allegedly received a pervasive amount of media exposure. According to Cunningham, of thirty-six prospective jurors, thirty-one were exposed to pre-trial publicity Also, a billboard with Jayla Grant's photograph and name, and Leneshia Williams' name, as well as names of four children killed in another incident was erected in the City of Lima with the words "stop violence." Despite having the knowledge that at least one juror had seen the billboard, counsel allegedly failed to question the other prospective jurors to determine if any of them had seen it.

In order to establish ineffective assistance of counsel for failing to conduct inadequate *voir dire,* a defendant must show actual or presumed prejudice on the part of the jury. *Dell v. Straub*, 194 F.Supp.2d 629, 649 (E.D. Mich., 2002). Prejudice is shown through a review of *voir dire* testimony and the extent and nature of the publicity that a fair trial was impossible. *Maxwell v. White*, 431 F.3d 517, 532 (6th Cir. 2005). "[I]n extraordinary cases, where the trial atmosphere has been utterly corrupted by press coverage, a court must presume that pre-trial publicity has engendered prejudice in the members of the venire." *Williams,* 380 F.3d at 945. But "mere prior knowledge of the existence of the case, or familiarity with the issues involved, or even some preexisting opinion as to the merits, does not in and of itself raise a presumption of jury taint." *Maxwell*, 431 F.3d at 531, (quoting *Delisle v. Rivers*, 161 F.3d 370, 382 (6th Cir. 1998)). A fair juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court. *Id.* at 532.

The Ohio Supreme Court determined this claim as follows:

Cunningham claims that counsel failed to adequately question prospective jurors regarding their exposure to a billboard erected in Lima after the shootings. The billboard was part of a community action campaign designed to fight violence and was

-34-

erected in response to the shootings in this case and an unrelated firebombing in Lima. The billboard displayed a picture of Jayla Grant, Leneshia Williams's name, and the names of four children killed in a firebombing, and included the words "Stop the Violence."

Cunningham's trial counsel asked two potential jurors about the billboard, and one juror had seen it. Juror No. 13, who sat on Cunningham's jury, saw the billboard but said that she had not formed any opinion about Cunningham's guilt or innocence because of the billboard. Cunningham argues that after discovering that one juror had seen the billboard, his trial counsel should have questioned the other potential jurors to determine whether they had seen the billboard and, if so, whether they were prejudicially affected.

Trial counsel, who saw and heard the jurors, were in the best position to determine the extent to which prospective jurors should be questioned. *State v. Murphy* (2001), 91 Ohio St.3d 516, 539; *State v. Braden*, 98 Ohio St.3d 354, 2003-Ohio-1325. As discussed in proposition of law V, both counsel and the trial court thoroughly questioned potential jurors regarding their exposure to pretrial publicity. Those jurors who had formed fixed opinions about the case were excused. Trial counsel's failure to ask other jurors about the billboard did not reflect deficient performance.

*State v. Cunningham*, 105 Ohio St.3d 197, 215 (2004).

In discussing a motion for change of venue, the Ohio Supreme Court found that counsel thoroughly questioned the jurors about their exposure to pretrial publicity.

Courts rarely presume that a jury is prejudiced by pretrial publicity. *See Lundgren,* 73 Ohio St.3d at 479, 653 N.E.2d 304. That prospective jurors have been exposed to pretrial publicity does not necessarily demonstrate prejudice requiring a change of venue. *See State v. White* (1998), 82 Ohio St.3d 16, 21, 693 N.E.2d 772; *State v. Landrum* (1990), 53 Ohio St.3d 107, 116-117, 559 N.E.2d 710. *See, also, Nebraska Press Assn. v. Stuart* (1976), 427 U.S. 539, 554, 96 S.Ct. 2791, 49 L.Ed.2d 683 ("pretrial publicity-even pervasive, adverse publicity-does not inevitably lead to an unfair trial").

Here, the trial court conducted an extensive *voir dire* that covered four days and nearly 900 pages of transcript. After a thorough general *voir dire* with counsel for both sides participating, the trial court conducted a sequestered *voir dire* during which prospective jurors were individually questioned regarding the death penalty and exposure to pretrial publicity. The trial court and counsel asked prospective jurors whether they had been exposed to pretrial media coverage, the extent of their exposure, and whether they had obtained any knowledge about the case from other sources. Most prospective jurors acknowledged hearing something about the case through local media coverage or from other sources within the community. Nevertheless, most prospective jurors accepted

> the presumption of innocence, stated that they had not formed an opinion about Cunningham's guilt, and asserted that they could put aside any exposure to pretrial publicity and decide the case solely on the evidence at trial. The trial court readily excused members of the venire who had formed fixed opinions or were otherwise unsuitable.

*State v. Cunningham*, 105 Ohio St.3d at 202-03.

The record shows that the trial court questioned each juror about pretrial publicity. Tr. Vols. 3,4,5, pgs. 326-882. Most admitted that they had prior knowledge of the murders. Five jurors were excused by the trial court because they admitted that they were biased because of the publicity. Tr. Vol. 2 pgs. 98-102, 124-25, 136-37, 170-72.  Vol. 4, pgs. 599-609. Other jurors' knowledge of pretrial publicity was limited and their knowledge of the case was limited and tentative in nature. Tr. Vol. 3,4,5, pgs. 326-882. Each of them recognized the presumption of innocence, promised to set aside anything they previously learned about the case, and promised to decide the case based on the evidence presented at trial. *Id.*  Also, the trial court repeatedly instructed the jurors not to read or watch any news coverage of the case during the trial. Tr. Vol. 2, pgs. 314, 324; Tr. Vol. 5 pgs. 886, 1061; Tr. Vol. 6, pgs. 1178, 1244; Tr. Vol. 7, pgs. 1330, 1390; Tr. Vol. 8, pg. 1509; Tr. Vol. 9, pg. 17.

Cunningham contends that his counsel were ineffective for failing to perform an investigation into Juror Mikesell's background. Her admission that she worked for the Allen County Children's Services which had a connection to Cunningham should have put counsel on notice that she might have had information about Cunningham. The Respondent agrees that this claim was presented to the state court and is preserved for federal habeas review.

The Ohio Third District Court of Appeals held:

> Cunningham's eighth ground for relief is related to the seventh ground. In the eighth ground, Cunningham asserted that defense counsel was ineffective during *voir dire*. Cunningham argues that defense counsel failed to conduct a reasonable inquiry during

-36-

*voir dire* to elicit prejudicial information from juror Nichole Mikesell.

It is a well established principle of law that "[t]he conduct of *voir dire* by defense counsel does not have to take a particular form, nor do specific questions have to be asked." *State v. Cornwell,* 86 Ohio St.3d 560, 568, 1999-Ohio-125, 715 N.E.2d 1144, citing *State v. Evans* (1992), 63 Ohio St.3d 231, 247, 586 N.E.2d 1042. A review of defense counsel's examination of juror Mikesell and her testimony in response to defense counsel's questions indicates no deficient performance or errors on the part of counsel. While Cunningham can now point to post-trial statements of Mikesell that show she has formed a negative impression of Cunningham, there was no indication given by Nichole at the time of the jury *voir dire* to indicate she had such an impression. Cunningham may now contend that defense counsel should have asked more probing questions of juror Mikesell, but Ohio courts "have recognized that counsel is in the best position to determine whether any potential juror should be questioned and to what extent." *State v. Murphy,* 91 Ohio St.3d 516, 539, 2001-Ohio-112, 747 N.E.2d 765, citing *State v. Bradley* (1989), 42 Ohio St.3d 136, 143-144, 538 N.E.2d 373.

Cunningham has not supported this ground with evidence *dehors* the record that contains sufficient operative facts to demonstrate he was prejudiced as a result of ineffective assistance of counsel. We, therefore, hold that the trial court did not err in dismissing Cunningham's eighth ground for relief without an evidentiary hearing.

*State v. Cunningham*, 2004 WL 2496525 * 15-16. (Ohio App., 3rd Dist. Nov. 8, 2004).

Defense counsel knew that Mikesell worked at Allen County Children's Services. There was no indication during *voir dire* that this juror had any knowledge of Cunningham. She was asked if she had any additional information to bring to the court's attention. She answered that she had no other information concerning the case and that she could be fair and impartial. The Court finds that the decision of the Ohio courts was not contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

### (d) the state appellate process deprived Cunningham of a fair and full opportunity to litigate jury selection issues

Cunningham contends that the appellate process was inadequate because appellate counsel received access to jury questionnaires only five days before the brief to the Ohio Supreme Court was

-37-

due, leaving insufficient time to review them and research the law regarding possible issues. Thus, Cunningham was allegedly deprived of his right to due process of law and equal protection, as well as his right to effective assistance of counsel. Cunningham has not addressed the procedural default aspect of this claim. There is no mention of this issue in the state court opinion. Therefore, the Court finds that it is unexhausted and is procedurally defaulted. If it were to be considered, the Court would find this claim to be without merit.

The Respondent points out that the jury questionnaires were part of the record. Counsel must have known of the existence of the questionnaires and could have gone to the courthouse or the Ohio Supreme Court and made copies. Furthermore, counsel has not shown how the result of the appeal would have been different had they obtained the jury questionnaires without the alleged delay.

| **Ground Two** | The Ohio Supreme Court's determination that the denial of the opportunity to life qualify the jury did not deprive Mr. Cunningham of a fair and proper *voir dire* was an unreasonable application or contrary to *Morgan v. Illinois* and/or is predicated on an unreasonable determination of the facts. |
|---|---|

### Sub-Claim (a)

In this claim, Cunningham asserts that the trial court precluded defense counsel from inquiring into prospective jurors' willingness and ability to consider mitigating factors. Respondent agrees that this claim was presented to the Ohio courts and is preserved for federal habeas review. The restrictions during *voir dire* allegedly deprived Cunningham of his rights to an impartial jury, a reliable death sentence, due process, and equal protection. It is clearly established constitutional law that a capital

-38-

defendant must be able to explore questions both of absolute support of the death penalty and ability to consider mitigation evidence. *Morgan*, 504 U.S. at 729. However, the Ohio Supreme Court has held that hypothetical questions regarding specific mitigating factors should not be permitted by the court during *voir dire*. The determination to be made is whether a juror will properly weigh and consider the mitigating factors, or whether they will automatically impose the death sentence without consideration of the mitigating factors. *State v. Lundgren,* 73 Ohio St.3d 474 481, (1995).  *See Jones v. Bradshaw*, 489 F.Supp.2d 786, 808 (N.D.Ohio,2007).

The Ohio Supreme Court determined this issue as follows:

In proposition of law IV, Cunningham asserts that the trial court unduly restricted defense counsel's *voir dire* of prospective jurors. Cunningham contends that the trial court precluded defense counsel from inquiring into prospective jurors' willingness and ability to consider mitigating factors and, as a result, it is likely that an automatic-death-penalty juror served on the jury.

"The manner in which *voir dire* is to be conducted lies within the sound discretion of the trial judge." *State v. Lorraine* (1993), 66 Ohio St.3d 414, 418, 613 N.E.2d 212. A trial court has "'great latitude in deciding what questions should be asked on *voir dire.*'" *State v. Wilson* (1996), 74 Ohio St.3d 381, 386, 659 N.E.2d 292, quoting *Mu'Min v. Virginia* (1991), 500 U.S. 415, 424, 111 S.Ct. 1899, 114 L.Ed.2d 493. Crim.R. 24(A) requires that counsel be given an opportunity to question prospective jurors or to supplement the court's *voir dire* examination. Accord R.C. 2945.27. Restrictions on *voir dire* have generally been upheld, and absent a clear abuse of discretion, prejudicial error cannot be assigned to the examination of the venire. *State v. Durr* (1991), 58 Ohio St.3d 86, 89, 568 N.E.2d 674; *State v. Beuke* (1988), 38 Ohio St.3d 29, 39, 526 N.E.2d 274.

Defense counsel waived any potential error by failing to challenge any seated juror's views on capital punishment. See *State v. Smith* (1997), 80 Ohio St.3d 89, 105, 684 N.E.2d 668, citing *State v. Williams* (1977), 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364, paragraph one of the syllabus. Cunningham also cannot show prejudice, because he approved the jury selected before exhausting his peremptory challenges. *State v. Broom* (1988), 40 Ohio St.3d 277, 287-288, 533 N.E.2d 682; *State v. Watson* (1991), 61 Ohio St.3d 1, 16, 572 N.E.2d 97. *See, also, e.g., State v. Getsy* (1998), 84 Ohio St.3d 180, 191, 702 N.E.2d 866.

The trial court did not unduly limit counsel's opportunity to question prospective jurors regarding their views on capital punishment. A review of the transcript reveals that the trial court placed few restrictions on counsel during *voir dire*. The trial court allowed defense counsel to ask prospective jurors whether they would automatically vote for

-39-

the death penalty, whether they were willing to fairly consider all mitigating factors raised by the defense, as well as all available sentencing options, and whether they would evaluate all evidence before making a sentencing determination.

The trial court precluded defense counsel from questioning prospective jurors about their views on specific mitigating factors. We have rejected past attempts to find error in such restrictions. *See State v. Jones* (2001), 91 Ohio St.3d 335, 338, 744 N.E.2d 1163 (trial court is under no obligation to discuss, or permit the attorneys to discuss, specific mitigating factors); *State v. Wilson,* 74 Ohio St.3d at 385-387, 659 N.E.2d 292 (no abuse of discretion occurred when the trial court declined to allow defense counsel to query prospective jurors about specific statutory mitigating factors); *State v. Lundgren* (1995), 73 Ohio St.3d 474, 481, 653 N.E.2d 304 (jurors cannot be asked to weigh mitigating factors until they have heard all the evidence and been fully instructed on the applicable law). Although defense counsel were precluded from asking questions regarding specific mitigating factors, counsel were not prevented from gauging prospective jurors' views on the death penalty or from exposing faults that would render a juror ineligible. See *Wilson,* 74 Ohio St.3d at 386, 659 N.E.2d 292.

Cunningham identifies prospective jurors Nos. 10, 11, 14, 22, 38, and 76 as exhibiting an inability to consider mitigating factors and life-sentencing options and claims that the trial court precluded defense counsel's attempts to question them on this issue. Only prospective jurors Nos. 11, 14, and 38 ultimately sat on the jury, and Cunningham has failed to demonstrate that these jurors were not fair and impartial. *See, e.g., Broom,* 40 Ohio St.3d at 287-288, 533 N.E.2d 682 (any claim that a jury was not impartial is focused on those jurors who ultimately sat).

During individual *voir dire*, prospective jurors Nos. 11, 14, and 38 stated that they would follow the court's instructions and would not automatically vote for the death penalty. Each juror agreed to fairly consider mitigating factors and all sentencing options before making any sentencing determination.

Moreover, contrary to Cunningham's assertions, the trial court allowed defense counsel a meaningful opportunity to question these jurors regarding their views on capital punishment. For example, defense counsel explained the four sentencing options to prospective juror No. 11 and asked whether she would automatically vote for the death sentence. When she responded "no," defense counsel asked her to explain her views. Counsel then informed prospective juror No. 11 that the defendant had the right to present mitigating evidence, defined mitigating factors as "reasons why not to impose death," and asked whether she would consider those mitigating factors "when [she considers] the four (4) [sentencing] options available to [her]?" The trial court permitted defense counsel to pose similar questions to prospective jurors Nos. 14 and 38.

The record does not support Cunningham's claim that the trial court unreasonably restricted defense counsel's examination of prospective jurors. *See, e.g.*, *State v. Bedford* (1988), 39 Ohio St.3d 122, 129, 529 N.E.2d 913. Cunningham has not shown that jurors were unwilling to fairly consider mitigating evidence or life-sentencing options. We reject proposition of law IV.

*State v. Cunningham*, 105 Ohio St.3d at 200-202.

In *Dennis v. Mitchell*, 354 F.3d 511, (6th Cir. 2003), the Sixth Circuit determined that the Constitution requires only that *voir dire* be conducted in a manner that is fundamentally fair. *Id*. at 524. Decisions in empaneling a jury are left to the sound discretion of the trial judge. *United States v. Guzman,* 450 F.3d 627, 629 (6th Cir. 2006). "The Constitution ... does not dictate a catechism for *voir dire*, but only that the defendant be afforded an impartial jury" *Dennis,* 354 F.3d at 523 (quoting *Morgan,* 504 U.S. at 729). *Voir dire* must adequately identify unqualified jurors. *Id.* In *Dennis,* defense counsel were limited in asking particularized questions concerning mitigation, but the court held that since the trial court permitted considerable latitude in the questioning of jurors, no error occurred. *Id.* at 524.

Review of the record shows that the trial judge asked the jurors a number of questions pertaining to the imposition of the death penalty and refusal to impose it. An example of the court's questions to jurors asked to juror number 13 is a as follows:

The Court:    The court would further ask in getting into the capital punishment aspect or questions it may be necessary for you to make a determination in regards to the imposition of the death penalty or some other penalty in this case if it gets to that stage. Again, its always to be presumed until proven otherwise the defendant is innocent. But if it got to that stage, the second phase you could consider the death penalty, life without parole, life without parole for thirty (30) years, life without parole until after twenty-five (25) years: do you understand that?

-41-

Prospective Juror:        Yes.

The Court:        There would be various options. And you should remember that any penalty you consider should be done as if it is absolute and will be carried out in this case, do you understand?

Prospective Juror:        Yes.

The Court:        The court further would instruct you that your conscientious, religious, or other objections to the death penalty are not grounds for you to be excused as a juror; do you understand?

Prospective Juror:        Yes.

The Court:        The court would then ask, are you religiously, morally, or otherwise opposed to the imposition of the death penalty?

Prospective Juror:        No.

The Court:        Okay. With that in mind would you vote automatically for the death penalty or would you also consider, if it reached that stage, the other alternatives, which the court has instructed you?

Prospective Juror:        I would do as the court instructed.

The Court:        Okay. Do you understand that in this particular instance that the burden of proof is placed upon the State of Ohio at the first phase of this case to prove beyond a reasonable doubt the elements of aggravated murder. And the State must additionally prove beyond a reasonable doubt the specifications, which have been charged, okay?

-42-

| | |
|---|---|
| Prospective Juror: | Yes. |
| The Court: | And only if you find in both cases that the State has proven its case beyond a reasonable doubt would you then go to the second phase, which is referred to the sentencing phase. |
| Prospective Juror: | Yes. |
| The Court: | At that phase the State would present evidence concerning the statutory or the law, aggravating circumstances and the defense - the defendant would then be permitted to put on evidence of mitigating factors, which are set by law; do you understand? |
| Prospective Juror: | Yes. |
| The Court: | And any - and additional mitigating factor, may be introduced by the defendant. The court would then instruct you are to weigh those factors and only if you find beyond a reasonable doubt that the specific aggravating circumstance outweighs any mitigating factors would you be in a position to recommend to this court the death penalty? Do you understand that concept? |
| Prospective Juror: | Yes. |
| The Court: | With this in mind would you be able to not predetermine this case until you have heard all of the mitigating factors and to follow the court's instructions of law concerning the weighing of those factors, could you do that? |

-43-

| | |
|---|---|
| Prospective Juror: | Yes. |
| The court: | And would you follow the court's instructions and weigh the mitigating factors and follow the court's instructions as to the burden of proof on the State and take into consideration all of the mitigating factors? |
| Prospective Juror: | Yes. |

Tr. Vol. 3, pgs. 431-34.

The court's *voir dire* of the other prospective jurors occurred in this manner. The jurors were informed by the court about mitigating factors and asked if they could weigh them, if any, against aggravating circumstances. Defense counsel were not entitled to address every specific statutory mitigating factor they believed might be established during the trial.[5]

### Sub-Claim (b)

Cunningham asserts that the trial court identified with specificity the aggravating circumstances in this case to Jurors 11, 12, 37 , 38, 48 and 49. This issue was not presented to the Ohio courts and is procedurally defaulted. Petitioner does not indicate which aggravating circumstances are

---

[5]

Cunningham asserts that this error occurred in Cleveland Jackson's trial. On appeal the Ohio Supreme Court recognized the *Morgan* violation and reversed the related death sentence. *State v. Jackson*, 107 Ohio St.3d 53, 64-65 (2005). The court held that "in a death-penalty case involving the murder of a young child the defendant is entitled, upon request, to have the prospective jurors informed of that fact and to ask questions that seek to reveal bias." The court should have allowed defense counsel to advise the prospective jurors that one of the murdered victims was a three year old child. The issue in *Jackson* concerned possible jury bias, not whether the jurors should have been advised of any possible mitigating factors to determine whether they could consider his mitigating factors.

-44-

involved and how they were identified.

## Sub-Claim (c)

Cunningham also contends that the court violated due process and equal protection in its utilization of R.C. 2945.27 which requires the trial court to allow reasonable examination of jurors by all counsel. This issue was not presented to the Ohio courts and are procedurally defaulted. "Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004), (citing *Estelle v. McGuire,* 502 U.S. 62, 69-70 (1991)).  Thus, Cunningham's assertion that R.C. 2945.27 was improperly utilized is not a cognizable claim.

## Sub-Claim (d)

Cunningham asserts that the state court's utilization of R.C. 2945.27 violated equal protection by giving the prosecution an unfair advantage. This issue was not presented to the Ohio courts and is procedurally defaulted. The statute affords both the prosecution and the defense the reasonable opportunity to examine prospective jurors. The length and scope of the examination is within the discretion of the court.

## Sub-Claim (e)

Cunningham extended his due process argument to R.C. 2945.25 and R.C. 2945.21, contending that the court's restrictions on *voir dire* interfered with his right to challenge prospective jurors and use peremptory challenges. This issue was not presented to the Ohio courts and is procedurally

defaulted.  Again, the trial court has discretion in conducting *voir dire*. *Mu'Min v. Virginia*, 500 U.S. 415, 423 (1991). A juror may be excluded because of bias if counsel can demonstrate through questioning that the prospective juror lacks impartiality. *Wainright,* 469 U.S. at 423. The judge must then determine whether the challenge was proper. *Id*.  A juror may be excluded for cause because of his or his views on the death penalty where the juror's views would prevent or substantially impair the performance of his or her duties as a juror in accordance with the court's instructions and his oath. *Id.* at 424. All of the jurors stated that they could be impartial and consider the mitigating factors. Cunningham has not shown that any of the jurors were biased.

### Sub-Claim (f)

Also, Cunningham claims that R.C. 2945.27 was applied in an unequal manner in violation of the Equal Protection Clause. This issue was not presented to the Ohio courts and is procedurally defaulted. In any event, this claim is without merit. The court identified to several specific jurors the specific aggravating circumstances in Cunningham's case, but precluded even a general discussion of mitigating factors. The specific aggravating circumstances were already known, having been set forth in the indictment. Any specific mitigating factors would have to be established by the defendant at trial. Defense counsel was not entitled to discuss specific mitigating factors on *voir dire*. They had the opportunity to discuss each mitigating factor during the penalty phase closing arguments and remind the jurors that they promised to consider each of them.

Since there is no United States Supreme Court precedent that allows defense counsel to discuss specific mitigating circumstance during *voir dire*, the state court's decision as to Sub-Claim 2(a) was not contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. The remaining sub-claims are without merit.

-46-

**B.**     **Trial Court Errors**

**Ground Three**          The Ohio Supreme Court and the Ohio appellate court in affirming  the
trial court acted contrary to or unreasonably applied clearly established
United States Supreme Court authority, violating Petitioner's rights
under the Confrontation Clause of the Sixth Amendment and the Due
Process Clause of the Fourteenth Amendment.

In his third ground for relief, Cunningham alleges that pursuant to Ohio Crim. R. 16(B)(1)(g),

the trial court violated the Confrontation Clause by not allowing him to confront witnesses with their

prior statements. This issue concerns prior statements of Dwight Goodloe Jr. and James L. Grant. The

statements were preserved in accordance with Crim. R. 16(B)(1)(g). The Ohio Supreme Court ruled

that defense counsel failed to actually object concerning Goodloe's statement, and the issue was

reviewed under plain error. *See* Ohio Supreme Court ruling below. (Sub-Claim (a)). Therefore, this

issue is procedurally defaulted. The issue pertaining to Grant's statement was not raised in the state

court under the same theory as presented in this claim. (Sub-Claim (b)).Thus, it is unexhausted and

procedurally defaulted. Cunningham also asserts that his counsel were ineffective for not objecting

to the trial court's erroneous implementation of Ohio Crim. R 16(B)(1)(g). (Sub-Claim (c)). The

Respondent agrees that this claim was preserved for federal habeas review. Raising such claim excuses

procedural default. *Murray*, 477 U.S. at 489. But, as discussed elsewhere in this Opinion, ineffective

assistance of counsel must be proven. The Court has found that he has not done so. Therefore, the

Court finds that his claim that the trial court violated the Confrontation Clause by not allowing him

to confront witnesses with their prior statements was procedurally defaulted.

If it were to be considered, the Court would find it to be without merit. Cunningham's defense

was that he did not shoot any of the victims and he did not go to the apartment to kill, but rather to buy

crack cocaine. It is alleged that the physical evidence showed that all of the bullets recovered at the

scene came from the co-defendant's gun, and testimony of witnesses at the guilt phase was inconsistent with the physical evidence. Therefore, it is argued that counsel needed to see prior statements of witnesses to confront or minimize their testimony. Failure to allow such review is a violation of the Confrontation Clause. The Court disagrees as follows.

### Sub-Claims (a), (b), (c)

Cunningham asserts that the trial court erred by not allowing counsel to review prior statements of witnesses. Ohio Criminal Rule 16(B)(1)(g) provides:

> (B) Disclosure of evidence by the prosecuting attorney
> (1) Information subject to disclosure.
> (g) In camera inspection of witness' statement. Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement.
> If the court determines that inconsistencies exist, the statement shall be given to the defense attorney for use in cross-examination of the witness as to the inconsistencies. If the court determines that inconsistencies do not exist the statement shall not be given to the defense attorney and he shall not be permitted to cross-examine or comment thereon.
> Whenever the defense attorney is not given the entire statement, it shall be preserved in the records of the court to be made available to the appellate court in the event of an appeal.
> (2) Information not subject to disclosure. Except as provided in subsections (B)(1)(a), (b), (d), (f), and (g), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal documents made by the prosecuting attorney or his agents in connection with the investigation or prosecution of the case, or of statements made by witnesses or prospective witnesses to state agents.

A federal court's power to grant a writ of habeas corpus only extends to errors in the application of federal law. *See Estelle,* 502 U.S. at 67-68. The Court "must defer to a state court's interpretation of

its own rules of evidence and procedure" when assessing a habeas petition. *Miskel v. Karnes,* 397 F.3d 446, 453 (6th Cir.2005).  Any failure by a state court to properly apply its own procedural rule, even if established, is not cognizable on federal habeas review unless it results in a fundamentally unfair trial. *Estelle,* 502 U.S. at 69-70; *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir.2003). Habeas relief is unavailable for mere errors of state law and a federal court will not review a state court's decision on a matter of purely state law. *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990); *see also Long v. Smith,* 663 F.2d 18 (6th Cir.1981). Therefore, Cunningham is not entitled to habeas relief on this claim. *Payne v. Smith,* 207 F.Supp.2d 627, 637 (E.D. Mich., 2002) (a state court's alleged failure to properly apply its own procedural rule, even if established, is not cognizable on federal habeas review).

The Ohio Supreme Court ruled on this issue as follows:

> In proposition of law I, Cunningham claims that the trial court did not permit defense counsel to review the pretrial statements of prosecution witnesses for inconsistencies as required by Crim.R. 16(B)(1)(g). Cunningham contends that by not allowing the defense to participate in the inspection of the witnesses' statements, the trial court committed reversible error *per se* and violated his right of confrontation and due process.
>
> ****
>
> During the state's case, Cunningham's trial counsel made Crim.R. 16(B)(1)(g) motions with regard to six prosecution witnesses. The trial court determined that inconsistencies existed between the pretrial statements and trial testimony of Tara Cunningham, Shane Liles, and James Grant, and provided their statements to defense counsel for cross-examination. The trial court found no inconsistencies between the pretrial statements and testimony of Dwight Goodloe, Coron Liles, and Tomeaka Grant, and did not provide their statements to the defense. The trial court preserved all statements for appellate review.
>
> The initial question we must resolve is whether any of the witness statements are "statements" subject to disclosure pursuant to Crim.R. 16(B)(1)(g). The statements at issue are contained in incident reports compiled by the Lima Police Department during its investigation of the shootings. In *State v. Jenkins* (1984), 15 Ohio St.3d 164, 15 OBR 311, 473 N.E.2d 264, we considered whether police reports constitute statements discoverable under Crim.R. 16(B)(1)(g). We ruled that those portions of police reports recording the officer's personal observations and recollections of the events are subject to scrutiny under Crim.R. 16(B)(1)(g), stating: "Clearly, a signed written statement of

-49-

a state witness would serve the purpose of Crim.R. 16(B)(1)(g) and fall within the plain meaning of the word 'statement,' just as would a recording of the witness' words or a transcription thereof. We see no reason why the mere fact that the document was a report of a police officer would automatically bar its disclosure." Id. at 225, 15 OBR 311, 473 N.E.2d 264.

In *Jenkins,* we specifically excluded from discovery other portions of a police officer's report, including statements from other witnesses contained therein. "This is not to say that all portions of a police report are discoverable under Crim.R. 16(B)(1)(g). Reading this section in *pari materia* with Crim.R. 16(B)(2), it becomes apparent that those portions of a testifying police officer's signed report concerning his observations and recollection of the events are 'statements' within the meaning of Crim.R. 16(B)(1)(g). Those portions which recite matters beyond the witness' personal observations, *such as notes regarding another witness' statement* or the officer's investigative decisions, interpretations and interpolations, are privileged and excluded from discovery under Crim.R. 16(B)(2). Cf. *State v. Houston* (Iowa 1973), 209 N.W.2d 42, 46." (Emphasis added.) *Jenkins,* 15 Ohio St.3d at 225, 15 OBR 311, 473 N.E.2d 264.

Here, the trial court failed to make an independent, threshold determination whether a "producible out-of-court witness statement" exists within the meaning of Crim.R. 16(B)(1)(g). *State v. Daniels* (1982), 1 Ohio St.3d 69, 1 OBR 109, 437 N.E.2d 1186, syllabus; *State v. Jenkins,* 15 Ohio St.3d at 225-226, 15 OBR 311, 473 N.E.2d 264. Unlike the situation in *Jenkins,* the testifying witnesses in this matter were not the officers who wrote the police reports. Instead, the testifying witnesses were victims of the shootings, and their pretrial "statements" are actually the police officers' written summaries of what the victims had allegedly told the officers. Nothing in the record indicates that these witnesses had reviewed, signed, adopted, or otherwise approved the material in the police reports as their own statements. There is no proof that the police officers' summaries are an accurate reproduction of the witnesses' own words. Therefore, we find that these pretrial statements are not statements subject to an in camera inspection under Crim.R. 16(B)(1)(g).

Even if we assume, as the trial court did, that the witnesses made statements for purposes of Crim.R. 16, reversible error did not occur. In *State v. Daniels,* 1 Ohio St.3d 69, 1 OBR 109, 437 N.E.2d 1186, we interpreted the "present and participating" provision in Crim.R. 16(B)(1)(g) as requiring, upon the granting of a defendant's timely motion for an in camera inspection, that attorneys for all parties be given the opportunity to "(1) inspect the statement personally; and (2) call to the court's attention any perceived inconsistencies between the testimony of the witness and the prior statement. (Crim.R. 16[B][1][g], construed and applied.)" *Id.* at syllabus.

Cunningham interprets *Daniels* as requiring reversal of a defendant's conviction any time the trial court prevents counsel from participating in the in camera inspection, regardless of whether prejudice has occurred. On its face, we concede that *Daniels* arguably could be read as establishing a *per se* rule of prejudicial error. In *Daniels,* we stated that the trial court's failure to afford defense counsel the opportunity to inspect the witness's statement personally and call to the court's attention any perceived inconsistencies constituted reversible error per se. *Id.* at 71, 1 OBR 109, 437 N.E.2d

-50-

1186. Nevertheless, a closer reading of our decision in *Daniels* indicates that more than counsel's exclusion from the in camera inspection is required to give rise to reversible error.

The scope of our finding of prejudicial error *per se* in *Daniels* is clearly limited by the language "under the facts at bar." *Id*. In *Daniels,* we reviewed the pretrial statement and in-court testimony at issue and found that inconsistencies existed between the two. *Id.*, fn. 3. Had we intended to set forth a *per se* prejudicial-error rule, our review and finding would not have been necessary. The conclusion that we did not establish a *per se* prejudicial-error rule in *Daniels* comports with the last section of Crim.R. 16(B)(1)(g), which requires the trial court to preserve the statement for appellate review if any part of the witness statement is not given to defense counsel.

Cunningham has waived all but plain error in regard to this issue. Crim.R. 52(B); *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph two of the syllabus. There was no plain error. Defense counsel and the prosecutor were present while the trial court reviewed the statements. Although the transcript is not entirely clear, it appears that defense counsel did not personally inspect the statements as permitted by Crim.R. 16(B)(1)(g). Nevertheless, once the trial court concluded that there were no inconsistencies between the statements and trial testimony of Goodloe, Coron Liles, and Tomeaka Grant, defense counsel did not ask to review the statements or object to the procedure employed by the court in examining the statements. Defense counsel merely accepted the trial court's decision that there were no inconsistencies and asked that the statements be preserved for appellate review. Under somewhat similar circumstances in *Jenkins,* we said that "a defendant cannot be heard to complain on appeal about a matter which the trial judge could have remedied if the defense had complained then." *Jenkins,* 15 Ohio St.3d at 226, 15 OBR 311, 473 N.E.2d 264.

Cunningham has failed to identify any inconsistencies that would warrant reversal. *Cf. State v. White* (1968), 15 Ohio St.2d 146, 44 O.O.2d 132, 239 N.E.2d 65. On appeal, Cunningham does not argue that any inconsistencies exist between the pretrial statements and testimony of Coron Liles and Tomeaka Grant. Cunningham does argue that Goodloe's police statement and trial testimony are inconsistent because his statement lacked many of the details to which he later testified. The fact that details may be lacking in a pretrial statement does not mean that inconsistencies exist for purposes of Crim.R. 16(B)(1)(g). This observation would be particularly true where, as here, the accuracy of Goodloe's statement to police cannot be established.

Finally, Cunningham cannot establish prejudice, because Goodloe's testimony was merely cumulative of other evidence establishing Cunningham's guilt. Had defense counsel been able to use Goodloe's pretrial statement on cross-examination to rebut his

-51-

direct testimony, the outcome of the trial would not have been altered in light of the testimony from the other surviving witnesses. We reject proposition of law I.

*State v. Cunningham*, 105 Ohio St.3d at 203-207.

Cunningham's counsel allegedly was not able to review the prior statements of Dwight Goodloe, Jr, Coron Liles, and Tomeaka Grant, or the January 9, 2002 statement of James Grant. They failed to object regarding the statements of Goodloe, Liles and Tomeaka Grant. Therefore, Sub-Claim (a) is procedurally defaulted. Sub-Claim (b) regarding James Grant's statement was never presented to the state court and is unexhausted. If the Court were to consider these two issues, it would find them to be without merit. Cunningham contends that counsels' review of these four direct witnesses was particularly important given the fact that his counsel relied on discrediting the State's case through the cross-examination of witnesses on inconsistencies. Review of the statements was allegedly crucial because the State's case was made up exclusively of eyewitness testimony.

Dwight Goodloe and James Grant did not give a written statement to the police. The police officer that interviewed them later wrote a synopsis of what he had been told. Apx. Vol. 6, pg. 139; Apx. Vol. 6, pgs. 140-46. Under Rule 16(B)(1)(g), these pretrial statements that were never adopted by the witnesses were not subject to an in camera inspection. Also, contrary to counsels' assertions, James Grant's prior January 9, 2002 statement was given to defense counsel during trial. Tr. Vol. 7, pg. 1296; Apx. Vol. 9, pg. 211. So unless these statements were exculpatory under *Brady v. Maryland*, 373 U.S. 83 (1963), there was no obligation to turn them over to defense counsel.

According to Cunningham, Goodloe's initial statement lacked many of the details included in his testimony. "There is no reference to Petitioner shooting Coron Liles in the mouth; there is no reference to seeing Petitioner's finger on the trigger of a gun nor to 'smoke' coming from Petitioner's

-52-

gun; there is no reference to Goodloe observing the expression on petitioner's face; there is no reference to Petitioner's head 'snapping back' during the shooting. Further in Goodloe's statement to police, he commented that as the shooting started, he dove under the table to avoid being struck, an action that would have significantly militated against his ability to observe events in the manner he testified. (PC Ex. Q January 3, 2002). Had defense counsel been provided with Goodloe's statement of January 3, 2002, they could have allegedly subjected Goodloe to withering cross-examination as to the adjustments of his portrayal of events from his original statement to his trial testimony." Pet. pgs. 48-49.

Respondent points out that Goodloe, in his statement, told police that two black males shot them while they were located in the kitchen. "He stated that suspect # 2, the taller of the subjects, with the revolver shot 5 or 6 times in the kitchen." Apx. Vol. 9, pg. 188.  "For a couple of seconds, it seemed to be quiet and then both of these 2 B/M subjects started shooting." Apx. Vol. 9, pg. 183. Failure to elaborate does not amount to inconsistencies, especially since he did not know at the time that Cunningham was going to claim that his gun was inoperable. At trial he was asked to elaborate. The Court agrees that Goodloe's prior statement contained no inconsistencies.

Coron Liles and Tameaka Grant also gave statements to police. Apx. Vol. 9, pgs. 201, 205, 207.  None of these statements were written or adopted by the witnesses. Thus, they were not subject to an in camera inspection. Coron Liles identified Cunningham as the person who shot him. Apx. Vol. 9, pg. 205. Tameaka Grant told police that Cunningham shot Loyshane Liles. Apx. Vol. 9, pg. 207. However, she testified that she did not know who shot Shane. Tr. Vol. 6. pgs. 1222, 1239. Even if there were inconsistencies, Tameaka's testimony was favorable for the defense. Cunningham was not harmed by any failure to produce a prior unwritten statement. Since none of the statements in question

-53-

were subject to in camera inspection, and any inconsistency by Tameaka was in favor of Cunningham, any error by the trial court caused by any failure to comply with state law does not amount to a constitutional violation. In addition, counsel cannot be ineffective for failing to object to the manner the trial court was handling the witnesses's prior statements under Crim. R. 16(B)(1)(g). This claim is without merit. As to the ineffective assistance of counsel claim, properly raised in the state court, the state court's decision was not contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

| **Ground Nine** | The failure of the Ohio courts to correct the total breakdown of the capital sentencing process was predicated on an unreasonable determination of facts, or was an unreasonable application of, contrary to, clearly established law. *Lockett*; *Eddings*. |

### Sub-Claim (a)

Cunningham argues that the trial court failed to conform its sentencing opinion to the requirements of R.C. 2929.03(F). Specifically, he contends that the court failed to review all of the mitigating circumstances Cunningham presented; the weighing of the aggravating circumstances against the mitigating factors was inadequate; the court accorded no weight to mitigating factors repeatedly recognized by courts; and the court did not consider the penalty for each aggravated murder.

Ohio Revised Code Section 2929.03(F) provides:

> The court or the panel of three judges, when it imposes a sentence of death, shall state in a separate opinion its specific findings as to the existence of any of the mitigating factors set forth in division (B) of

-54-

> section 2929.04 of the Revised Code, the existence of any other mitigating factors, the aggravating circumstances the offender was found guilty of committing, and the reasons why the aggravating circumstances the offender was found guilty of committing were sufficient to outweigh the mitigating factors.

The trial court allegedly failed to consider that Cunningham came from a broken home, he was abused, he was placed in foster homes, his mother was a drug abuser and killed her husband in front of her children, and he was an alcoholic at age sixteen. Cunningham was convicted of two aggravated murders. Ohio law requires that the trial court weigh the aggravated circumstance related to each count. Since the death penalty may be appropriate for one count and not another, the appropriateness for the death penalty for each must be determined separately.

The Ohio Supreme Court considered this claim and in finding against Cunningham stated:

> Cunningham next argues that the trial court failed to consider relevant mitigating evidence because the sentencing opinion did not refer to some of his most compelling mitigating evidence. He also contends that the trial court erred in assigning little or no weight to those factors it did consider.
> Although "a sentencing court must consider all evidence of mitigation, it need not discuss each factor individually." *State v. Phillips* (1995), 74 Ohio St.3d 72, 102, 656 N.E.2d 643. "The fact that mitigation evidence is admissible 'does not automatically mean that it must be given any weight.' *State v. Steffen* (1987), 31 Ohio St.3d 111, 31 OBR 273, 509 N.E.2d 383, paragraph two of the syllabus." *State v. Mitts* (1998), 81 Ohio St.3d 223, 235, 690 N.E.2d 522. In imposing sentence, the assessment of and weight given to mitigating evidence are matters within the trial court's discretion. *State v. Lott* (1990), 51 Ohio St.3d 160, 171, 555 N.E.2d 293. Even when a trial court assigns no value in mitigation, the weight to assign a given factor is a matter for the discretion of the individual decision maker. See *State v. Fox* (1994), 69 Ohio St.3d 183, 193, 631 N.E.2d 124. The trial court did not commit error.
> The trial court did err, however, in failing to specify that it separately considered the death sentence for each aggravated murder. *See State v. Cooey* (1989), 46 Ohio St.3d 20, 544 N.E.2d 895, paragraph three of the syllabus. Our independent review of the death sentence cures any error in this regard. *See Fox,* 69 Ohio St.3d at 191-192, 631 N.E.2d 124; *212 *State v. Jackson* (2001), 92 Ohio St.3d 436, 450, 751 N.E.2d 946. Cf. *State v. Green* (2000), 90 Ohio St.3d 352, 360-364, 738 N.E.2d 1208. We reject proposition of law X.

-55-

*State v. Cunningham*, 105 Ohio St.3d at 211-212,

A trial judge has the duty to reweigh the aggravating circumstances and mitigating factors before determining whether to impose a death sentence or a life sentence, R.C. 2929.03(D)(3), and to state this finding in a separate opinion. R.C. 2929.03(F). Usually, the Ohio Supreme Court independently reviews the death sentence. The issue whether the reweighing of the trial court's sentencing decision cured any lower court defects was before the Sixth Circuit in *Baston v. Bagley*, 420 F.3d 632 (6th Cir. 2005). The court determined that reweighing by the Ohio Supreme Court cured alleged sentencing errors. The premise applies to improper consideration of aggravating circumstances as well as failure to consider a mitigating factor. "Weighing aggravating and mitigating factors against each other requires considering both sets of factors. Thus, there is no reason that an appellate court could properly reweigh after removing an aggravating factor from consideration, but could not do so after adding an additional mitigating factor." *Id.* at 638, (citing *Clemons, v. Mississippi*, 494 U.S. 738, 750 (1990).

### Sub-Claim (b)

Next, Cunningham asserts that he should have been given the opportunity to argue residual doubt during the penalty phase of his trial. This claim was discussed in Cunningham's eleventh ground in the Ohio Supreme Court and found to be without merit. Therefore, it is preserved for federal habeas review. Residual doubt is defined as "a lingering uncertainty about facts, a state of mind that exists somewhere between 'beyond a reasonable doubt' and 'absolute certainty.' " *Franklin,* 487 U.S. at 188. In Ohio, residual doubt cannot be considered a mitigating factor because it is irrelevant to the issue of whether the defendant should be given the death penalty.  *McGuire*, 80 Ohio St.3d at 402. *Mahdi v. Bagley*, 522 F.3d 631, 638 (6th Cir. 2008), *cert. denied*, 129 S.Ct. 1986 (2009). *See* 268 F.3d at 447

-56-

(residual doubt is not a mitigating factor under Ohio law). The United States Supreme Court held that it had not interpreted the Eighth Amendment as providing a capital defendant the right to introduce at sentencing evidence designed to cast "residual doubt" as to his guilt of the basic crime of conviction. *Guzek,* 546 U.S. at 525. A state has the authority to set reasonable limits upon the evidence a defendant can submit, and to control the manner in which it is submitted. The Supreme Court has held that, "States are free to structure and shape consideration of mitigating evidence 'in an effort to achieve a more rational and equitable administration of the death penalty.' " *Boyde,* 494 U.S. at 377 (quoting *Franklin*, 487 U.S. at 181; *see e.g., Johnson, v. Texas*, 509 U.S. 350, 362 (1993); *California v. Brown,* 479 U.S. 538, 543 (1987). Residual doubt is purely an issue of state law and may not be considered on habeas review. *Montgomery v. Bagley,* 482 F.Supp.2d 919, 985 (N.D. Ohio, 2007).

### Sub-Claim (c)

Cunningham argues that a jury should have determined his role in the offense, his mental state, and his relative culpability. Thus, his death sentence was contrary to the holdings in *Ring v. Arizona,* 536 U.S. 584 (2002) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Cunningham contends that this claim has not been defaulted as it was presented to the Ohio court in his application to reopen appeal pursuant to Rule 26(B), also known as a Murnahan application. *See State v. Murnahan*, 63 Ohio St.3d 60 (1992) A *Murnaha*n application preserves only claims of ineffective assistance of appellate counsel, a claim not involved in this ground. Thus, this claim has not been exhausted and is procedurally defaulted. If considered, the Court would find it to be without merit as follows.

The United States Supreme Court decided in *Apprendi* that the Sixth Amendment does not permit a defendant to be "expose[d] to a penalty exceeding the maximum he would receive if punished according to the facts reflected in the jury verdict alone." *Id.,* at 483.  *Ring*, 536 U.S. at 588-589. A

capital defendant, no less than a noncapital defendant, is entitled to a jury determination of any fact on which the legislature conditions an increase in the maximum punishment. *Ring*, 536 U.S. at 589. Cunningham's death sentence was allegedly imposed without a jury determination of any fact on which the legislature conditioned an increase in the maximum punishment from imprisonment to death. The jury's verdict at the guilt phase of the trial allegedly reflected no more than a finding of guilt of murder, but not under what theory.  No jurors made further findings of fact at the penalty stage so as to satisfy *Ring, Apprendi* and the Sixth, Eighth, and Fourteenth Amendments. Pet. pgs. 146-47.

Ohio's sentencing scheme requires that the jury determine whether the aggravating circumstances outweigh any mitigating factors. Ohio Revised Code Section 2929.03(D)(2) provides in part:

> Upon consideration of the relevant evidence raised at trial, the testimony, other evidence, statement of the offender, arguments of counsel, and, if applicable, the reports submitted pursuant to division (D)(1) of this section, the trial jury, if the offender was tried by a jury, shall determine whether the aggravating circumstances the offender was found guilty of committing are sufficient to outweigh the mitigating factors present in the case.

The jury returned a unanimous verdict finding that the State sufficiently proved the aggravating circumstance which they had previously found him to be guilty of outweighed the mitigating factors for both aggravated murders. The trial judge then considered the jury's recommendation as required by Ohio law. The judge did not increase the maximum sentence.

In summary, Sub-Claim (c) is without merit. The state court's decision as to Sub-Claims (a) and (b) are not contrary to, or involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

**Ground Eleven**                                          The State court determination that pretrial publicity was

-58-

not so pervasive that prejudice to the accused are [sic] predicated on an unreasonable determination of fact, or are [sic] contrary to, or an unreasonable application of law.[6]

### Sub-Claim (a)

Cunningham contends that the media saturated the citizens of Allen County with publicity. Cunningham and his co-defendant arrived at their pretrial hearings wearing bulletproof vests. Extra security officers were present. Police believed that a shot fired at Cunningham's sister's home was connected to his case. A billboard was erected, prompted by an earlier firebombing and this case, containing a picture of Jayla Grant. As a result of the extensive publicity, defense counsel moved for a change of venue. Counsel also informed the court that they had accumulated newspaper clippings. As mentioned above, the court allowed individual *voir dire* of the pretrial publicity issue. The Respondent agrees that this claim has been preserved for federal habeas review.

In cases involving pretrial publicity, "[t]he relevant question is not whether the community remembered the case, but whether the jurors . . . had such fixed opinions that they could not judge impartially the guilt of the defendant." *Patton v. Yount,* 467 U.S. 1025, 1035 (1984). It is sufficient "if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Irvin v. Dow*d, 366 U.S. 717, 722 (1961). *See United States v. Jamieson,* 427 F.3d 394, 412 (6th Cir. 2005)  In *Mu'Min*, 500 U.S. at 422, the Court determined that while a trial court may question potential jurors about their exposure to pretrial publicity, the court need not inquire about what media coverage each had viewed. *Id.* at 431. In upholding the trial court's questioning of

---

[6]     This issue was previously discussed in Ground One pertaining to Cunningham's claim that *voir dire* concerning pretrial publicity was inadequate.

the venire, the Court reiterated that "[a] trial court's findings of juror impartiality may be overturned only for 'manifest error.'" *Id*. at 428. In this case, each of the potential jurors ultimately seated on Cunningham's jury was questioned, and those who recalled reports of the crime and the circumstances of the crime and eventually became members of the jury indicated his/her ability to place that knowledge aside and judge Cunningham's case solely on the evidence and law. Tr. Vols. 3,4,5, pgs. 326-882. The court, in considering the first ground, determined that five jurors were excused by the trial court because they admitted that they were biased due to the publicity. Tr. Vol. 2, pgs. 98-102, 124-25, 136-37, 170-72; Tr. Vol. 4, pgs 599-609. Other jurors' knowledge of pretrial publicity was limited, and their knowledge of the case was limited and tentative in nature. Tr. Vol. 3,4,5, pgs. 326-882. Each of them recognized the presumption of innocence, promised to set aside anything they previously learned about the case, and promised to decide the case based on the evidence presented at trial. *Id.* Also, the trial court repeatedly instructed the jurors not to read or watch any news coverage of the case during the trial. Tr. Vol. 2, pgs. 314, 324; Tr. Vol. 5, pgs. 886, 1061; Tr. Vol. 6, pgs. 1178, 1244; Tr. Vol. 7, pgs. 1330, 1390; Tr. Vol. 8, pg. 1509; Tr. Vol. 9, pg. 17. Only one juror reported seeing the billboard, but said that she had not formed any opinion about Cunningham's guilt or innocence because of the billboard. The court's finding that a prospective juror has the ability to be impartial is all the Constitution requires. *Irvin*, 366 U.S. at 722.

### Sub-Claim (b)

Included in this ground is a claim for ineffective assistance of counsel for failing to submit newspaper clippings to the court with the motion for change of venue. The Ohio Supreme Court decided this issue as follows:

Cunningham claims that counsel were ineffective by failing to adequately support the

motion for change of venue. In the motion, counsel represented that they would produce evidence in support of their request to change venue should the trial court decide to hold an evidentiary hearing. Cunningham concedes that the trial court never held an evidentiary hearing but nevertheless contends that counsel were ineffective for failing to proffer newspaper clippings to support the motion.

Cunningham has not shown that trial counsel's failure in this regard deprived him of a fair trial. The trial court was well aware of the extent of media coverage and pretrial publicity because most prospective jurors acknowledged during *voir dire* that they had heard something about the case. The trial court and counsel thoroughly questioned prospective jurors regarding their exposure to pretrial publicity, and the trial court readily excused potential jurors who could not be fair and impartial. It is not clear how defense counsel's failure to submit newspaper clippings about the case would have affected the trial court's decision to deny a change of venue. Therefore, no basis exists to find deficient performance or prejudice. *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus, following *Strickland,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.

*State v. Cunningham*, 105 Ohio St.3d at 215-216.

The Court finds that the Ohio court's decision was not contrary to, or, an unreasonable application of clearly established federal law as determined by the Unites States Supreme Court. The trial court knew about the pretrial publicity caused by the news media. There is no indication that had newspaper articles been submitted to the court, the court's decision to deny the motion for change of venue would have been different.

**Ground Twelve**    The Ohio Supreme Court's determination that the admission of irrelevant, repetitive, and inflammatory photographs into evidence did not violate Mr. Cunningham's right to due process when, the probative value of the photographs is outweighed by the danger of prejudice to the defendant and the photographs are cumulative of other evidence and repetitive of other photographs is predicated on an unreasonable determination of fact, contrary to, or, an unreasonable application of law. U.S. Const. Amend. XIV.

**Sub-Claims (a), (b)**

-61-

The trial court allowed into evidence crime scene or autopsy photographs. (Exh. 34-45, 47-50, 53, 56-58, 60). Cunningham contends that these photographs were irrelevant, unnecessary, cumulative, repetitive, and created a danger of prejudice. The admission of the photographs at both stages of the trial allegedly violated his due process rights. (Sub-Claims (a), (b)). Showing the photographs at the sentencing stage of the trial emphasized the brutality of the crime, rather than supporting the aggravating circumstances. The state court stated that defense counsel failed to object to many of the exhibits and waived all but plain error. Therefore, it is procedurally defaulted. If it were to be considered, the Court would find it to be without merit  Also, Cunningham asserts that his counsel were ineffective for failing to object to many of the photographs. (Sub-claim (c)). The Respondent agrees that this issue is preserved for federal habeas review. Raising such claim excuses procedural default. *Murray v. Carrier*, 477 U.S. 478, 489 (1986). But, as discussed elsewhere in this Opinion, ineffective assistance of counsel must be proven. The Court finds that he has not done so.

Admission of evidence is a matter of state law and alleged error, such as improper admittance of evidence usually does not support a writ of habeas corpus. *Estelle*, 502 U. S. at 67; *Pearl v. Cason*, 219 F.Supp.2d 820, *830 (E.D. Mich.,2002). An exception occurs when the proceedings harmfully affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial. *Roe v. Baker,* 316 F.3d 557, 567 (6th Cir.2002). Admission of photographs alleged to be prejudicial is within the sound discretion of the court. An appeal as to admission almost always fails. *Davie v. Mitchell,* 291 F.Supp.2d 573, 601 (N.D. Ohio, 2003), *aff'd*, 547 F.3d 297 (6th Cir. 2008), *cert denied*, 130 S.Ct. 502 (2009) (citing *Cooey v. Coyle,* 289 F.3d 882, 894 (6th Cir.2002)). If the evidence is probative, it will be hard to find a constitutional violation to exclude it; and if it is not probative, the defendant would most likely not be hurt by its admission. *Gonzalez v. DeTella*, 127 F.3d 619, 621 (7th

Cir. 1997). *See Biros*, 422 F.3d at 391 (no due process violation due to admission of photographs depicting murder victim's severed head, her severed head held near her torso and severed breast, and her torso with her severed head and severed breast replaced on torso).

The Ohio Supreme Court ruled on this claim as follows:

In proposition of law VI, Cunningham contends that the trial court erred by admitting irrelevant, repetitive, and inflammatory photographs of the victims. In capital cases, relevant, nonrepetitive photographs are admissible, even if gruesome, as long as the probative value of each photograph outweighs the danger of material prejudice to the accused. *State v. Maurer*, 15 Ohio St.3d 239, 15 OBR 379, 473 N.E.2d 768, paragraph seven of the syllabus; *State v. Morales* (1987), 32 Ohio St.3d 252, 257-258, 513 N.E.2d 267. Decisions on the admissibility of photographs are left to the sound discretion of the trial court. *State v. Slagle* (1992), 65 Ohio St.3d 597, 601, 605 N.E.2d 916.

Many of the photographs that Cunningham complains of on appeal were not objected to at trial. Cunningham's claim that objections were raised at trial to exhibits 38, 44, 50, 53, 56, 57, 58, and 60 is not supported by the record. Thus, Cunningham has waived all but plain error as to exhibits 38, 39, 44, 45, 47, 48, 49, 50, 53, 56, 57, 58, and 60. *State v. Twyford* (2002), 94 Ohio St.3d 340, 358, 763 N.E.2d 122. These photos illustrated the testimony of police officers and eyewitnesses who described the crime scene and were probative of intent and the nature and circumstances of the crime. See, e.g., *State v. Hughbanks*, 99 Ohio St.3d 365, 2003-Ohio-4121, 792 N.E.2d 1081, at ¶ 72; *State v. Reynolds* (1998), 80 Ohio St.3d 670, 676-677, 687 N.E.2d 1358. We conclude that outcome-determinative plain error did not result from the admission of any of these photographs.

As to those exhibits objected to at trial, Cunningham has not shown that the trial court erred in admitting these photographs. Cunningham raises issues regarding four autopsy photos (exhibits 34, 35, 36, and 37), two photos depicting injuries sustained by surviving witnesses (exhibits 40 and 41), and two crime-scene photos depicting Leneshia's body (exhibits 42 and 43).

Exhibits 34, 35, 36, and 37 are autopsy photographs of Leneshia and depict gunshot wounds to her head. Exhibit 34 depicts a gunshot wound to the back of her head. Exhibit 35 is a picture of the same wound taken from a wider angle. Exhibits 34 and 35 are repetitive, and we find that only one of these photos should have been admitted. Similarly, exhibit 36 is merely a close-up version of exhibit 37, and only one of these photos should have been admitted. Nevertheless, these photos illustrated the coroner's testimony and were highly relevant to intent and cause of death. Despite the repetitive nature of exhibits 35 and 37, we conclude that Cunningham was not materially prejudiced by their admission. *See, e.g.*, *State v. Campbell* (1994), 69 Ohio St.3d 38, 50, 630 N.E.2d 339; *State v. Ahmed,* 103 Ohio St.3d 27, 2004-Ohio-4190, 813 N.E.2d 637, at ¶ 96-97.

Exhibits 40 and 41 are photos of Tomeaka Grant taken while she was in the hospital recovering from her injuries. Exhibit 40 depicts a gunshot wound to her face. Exhibit 41 is a photo of her face from a different angle and illustrates an injury to her left eye. Neither photo is so gruesome as to pose a risk of material prejudice. Both are relevant to show the injuries this victim sustained and are probative of Cunningham's intent. Exhibit 42 is a crime-scene photo of Leneshia lying in a pool of blood. This photo depicts how the body was positioned in the home and, although gruesome, it is probative of intent and the manner and circumstances of her death. The probative value outweighed any danger of unfair prejudice. *See, e.g.*, *State v. Biros* (1997), 78 Ohio St.3d 426, 444-445, 678 N.E.2d 891. Cunningham complains about exhibit 43 but offers no argument on appeal explaining why he believes this exhibit was admitted in error. Exhibit 43 shows Leneshia's hand in a pool of blood. This photo is gruesome, but it helped explain the testimony of police officers who discovered and processed the crime scene. It is not duplicative or cumulative, and no abuse of discretion occurred, since the value of this photo outweighed any prejudicial impact.

Cunningham also complains that the trial court erred in readmitting certain photos during the penalty phase. At that stage, the defense objected to exhibits 38, 39, and 40. A trial court may properly allow repetition of much or all that occurred in the guilt phase pursuant to R.C. 2929.03(D)(1). *State v. DePew* (1988), 38 Ohio St.3d 275, 282-283, 528 N.E.2d 542; *State v. Woodard* (1993), 68 Ohio St.3d 70, 78, 623 N.E.2d 75. Thus, there was no error. We reject proposition of law VI.

*State v. Cunningham*, 105 Ohio St.3d at 208-210.

The Ohio Supreme Court ruled that even if the photographs were gruesome, they were probative, illustrating the testimony of officers and eyewitnesses who described the crime scene, and the intent and the nature and circumstances of the crime. There is nothing in the record to indicate that doubt as to guilt could exist had the jurors not seen the photographs. The Court agrees with the decision of the Ohio Supreme Court and finds that the state court's decision as to this claim was not contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

### Sub-Claim (c)

Since the photographs were properly admitted, Cunningham's claim for ineffective assistance

of counsel for failing to object to the admittance of photographs is without merit.

### C.     Prosecutorial Misconduct

**Ground Four**          The decision of the Ohio appellate court affirming the trial court's decision that the trial prosecutors did not commit prosecutorial misconduct by suppressing two exculpatory statements by occurrence witnesses violated the due process clause of the Fourteenth Amendment and was contrary to or an unreasonable application of clearly established Supreme Court authority.

In Ground Four of the Petition, Cunningham alleges that the prosecution violated his constitutional rights under *Brady*. Specifically, he claims that prior inconsistent statements from Dwight Goodloe, Jr. and James Grant should have been given to defense counsel before trial. Cunningham raised this claim in post-conviction relief. Review of the state court opinion clearly and expressly states that this claim is barred by the doctrine of *res judicata*.  *See State v. Cunningham,* 2004 WL 2496525 *11-12 (Ohio App. 3 Dist., Nov. 8, 2004). Therefore, it is procedurally defaulted. If the Court were to consider this claim, it would find it to be without merit.

The Third District Court of Appeals stated:

In the second and sixth grounds for relief, Cunningham alleged that the prosecution violated the *Brady* rule by failing to provide defense counsel with the police summaries of interviews with witnesses Dwight Goodloe and James Grant that were conducted shortly after the shootings. Cunningham argues that these statements contained information of the events that transpired on January 3, 2002 that would have allowed defense counsel to attack or impeach the testimony presented by the witnesses at trial. There is an obligation imposed upon the prosecution to disclose to an accused evidence that is material to the accused's guilt or innocence. *Brady v. Maryland*, (1963), 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed.2d 215. Evidence is "material" only if there is a "reasonable probability" that the result of the proceeding would have been different had the evidence been disclosed to the defense. *U. S. v. Bagley*, (1985),473 U.S. 667, 682, 105 S. Ct. 3375, 87 L. Ed.2d 481. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id.*, quoting *Strickland,* 466 U.S. at 694.
The court in *Kyles v. Whitley,* (1995), 514 U.S. 419, 434, 115 S. Ct. 1555, 131 L. Ed.2d

490, outlined four aspects of materiality under the standard set forth in *Bagley*. Regarding the first aspect, the *Kyles* court stated that "a showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal." *Id.* The *Kyles* court further stated:

The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A "reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial."*Id.*, quoting *Bagley,* 473 U.S. at 678.

The second aspect of materiality is that it is not a test of sufficiency of evidence. *Kyles,* 514 U.S. at 434. In other words, "[o]ne does not show a *Brady* violation by demonstrating that some of the inculpatory evidence should have been excluded, but by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.* at 435. Regarding the third aspect, the court noted that "once a reviewing court applying *Bagley* has found constitutional error there is no need for further harmless-error review." *Id.* The fourth and final aspect of materiality is that its definition in terms of the suppressed evidence is considered collectively, not item by item. *Id.* at 436.     In the *Kyles* case, the United States Supreme Court found that disclosure of the witnesses' statements "would have resulted in a markedly weaker case for the prosecution and a markedly stronger one for the defense." *Id.* at 441. In its assessment, the Court in *Kyles* considered whether the value of the witnesses would have been substantially reduced or destroyed by disclosure of the statements. *Id.*

In the case sub judice, we cannot say that disclosure of the statements of Dwight Goodloe or James Grant to defense counsel prior to trial would have made a different result reasonably probable. The prosecution did not willfully withhold evidence that they knew would be favorable to the defense. Rather, the prosecution made all prior statements of the witnesses available to the court for in camera inspection pursuant to Crim.R. 16(B)(1)(g). Both Goodloe and Grant were key witnesses for the prosecution and their prior statements were made available by the prosecution for review by the trial court subsequent to their direct examination testimony. The court reviewed these statements, along with statements of four other witnesses, during the trial and determined that there were inconsistencies in the testimony of some of the witnesses and not with others. The court determined that there were no inconsistencies in the testimony of Goodloe and defense counsel was not permitted to review the prior statements of Goodloe. The court did find inconsistencies with the testimony of Grant and defense counsel was permitted to review his prior statements. All statements were made part of the trial record.

We agree with the trial court that Cunningham's second and sixth grounds are barred from consideration at this time based on the doctrine of *res judicata*. Our review of Cunningham's petition for postconviction relief occurs while his direct appeal is currently pending before the Ohio Supreme Court and it is quite possible that these grounds were raised on direct appeal. These issues could have fairly been determined without resort to evidence outside of the trial record. As the claims were evident and part of the record at the time of direct appeal, they are now barred. We therefore find no

-66-

error in the trial court's decision dismissing these claims without an evidentiary hearing.

*State v. Cunningham,* 2004 WL 2496525 at *11-12.

In *Strickler v. Greene*, 527 U.S. 263, 280 (1999), the Supreme Court, quoting its earlier decision in *Brady*, 383 U.S. at 87, noted that the "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." A prosecutor has a duty to disclose impeachment evidence, exculpatory evidence, and evidence known only to police investigators. *Id.* at 280-81. The Court then noted that a *Brady* violation required proof that: (1) the evidence in question was favorable to the defendant; (2) the evidence was suppressed by the state; and (3) the defendant was prejudiced by the suppression. *Id.* at 281-82.

The standard for determining whether withheld exculpatory evidence violates due process was set out in *Jamison v. Collins*, 100 F.Supp.2d 647, 672 (S.D. Ohio, 2000), as follows:

> Petitioner argues that the State of Ohio failed to provide Petitioner with all relevant, material, and exculpatory evidence at pretrial discovery proceedings. [If true, this failure may have violated Petitioner's rights under] the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. The substance of that claim is based on the rule announced in *Brady v. Maryland*, 373 U.S. 83 (1963) and explored in later cases. These cases held that the suppression by the prosecution of evidence favorable to the accused in a criminal case violates due process if the evidence is material to guilt and sentencing regardless of the degree of culpability of the prosecution. *Id.* at 87. The trial prosecutor's duty to disclose exculpatory evidence extends to information in the possession of the prosecutor's office or in the possession of the law enforcement agency responsible for investigating the offense. This duty to disclose also applies to impeachment evidence. *Giglio v. United States*, 405 U.S. 150, 154 (1972).
>
> ***
>
> A true *Brady* violation consists of three components. *Strickler v. Greene,* 527 U.S. 263 (1999). First, a petitioner must show that the evidence at issue was favorable to him. *Id.* Secondly, the petitioner must demonstrate that the State suppressed the evidence.

*Id.* Thirdly, the petitioner must satisfy the materiality inquiry by establishing the prejudice suffered because of the suppression. *Id.* In making a decision whether certain exculpatory evidence is material, the reviewing court must assess the cumulative effect of all such suppressed evidence. *Kyles v. Whitley*, 514 U.S. 419, 436-37 (1995). The favorable evidence is material when there is a reasonable probability that the result of the proceeding would have been different if the prosecutor had disclosed the evidence to the defense. *Id.* at 434-35; see also *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir.1988). The question is not whether the defense would more likely than not have received a different verdict with the evidence. *Kyles,* at 434-35. Rather, a reasonable probability of a different result means that the net effect of the suppressed evidence would undermine the confidence in the outcome of the trial. *Id.* at 435.

The conviction must be set aside if the nondisclosed evidence is material in that its suppression undermines confidence in the trial. *United States v. Bagley*, 473 U.S. 667, 678 (1985). The suppressed evidence must be considered collectively, not item by item. *Kyles v. Whitley*, 514 U.S. 419, 436 (1995).

As previously discussed, Goodloe did not give a written statement to police. The Respondent points out, it is likely that the officer took notes and later typed a synopsis of what Goodloe said. It may not have been accurate. After Goodloe testified, defense counsel moved for disclosure of his statement under Crim. R. 16(B)(1)(g). The court examined the statement, as required by the rule, in an in camera review and found no inconsistencies. Defense counsel did not request inspection of the prior statement.

Cunningham contends that because Goodloe's statement is not as elaborate as his trial testimony, *Brady* required the statement's disclosure. The court finds this argument to be without merit because failure to produce the less detailed statement would not have created a reasonable probability that the result of the proceeding would have been different if the prosecutor had disclosed the evidence to the defense. Confidence in the trial would not have been undermined by defense

-68-

counsel's failure to see Goodloe's statement.

Cunningham did not address this issue in his Traverse. The record shows that James Grant's statements were given to defense counsel for cross-examination.[7] *Brady* is not violated if previously undisclosed evidence is disclosed during trial unless the defendant is prejudiced by its prior nondisclosure. *Thomas v. Warren,* 398 F.Supp.2d 850, 858 (E.D. Mich., 2005), (citing *United States v. Word*, 806 F.2d 658, 665 (6th Cir.1986)). *Brady* material must be disclosed in time for its effective use at trial. *United States v. Hayes*, 376 F. Supp.2d 736, 739 (E.D. Mich., 2006). For the reason discussed above, the Court concludes that this claim is without merit.

> **Ground Six**     The Ohio Supreme Court decision not finding prosecutorial misconduct for improper closing arguments both at the guilt and sentencing phases, in violation of the  Eighth Amendment admonition against cruel and unusual punishment and the Due Process Clause of the Fourteenth Amendment, was contrary to or an unreasonable application of clearly established Supreme Court authority.

In his sixth ground for relief, Cunningham alleges that the prosecutor made improper remarks at both the guilt and sentencing phases of the trial. He contends that they were neither minor nor something that could easily be overlooked by the jury. At the minimum, these remarks allegedly had a cumulative effect of causing him to be sentenced to death.

"[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is fairness of trial, not culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). *Accord Smith,*, 348 F.3d at 210. Therefore, a death sentence should not be reversed on constitutional grounds even if the prosecutor's actions are undesirable or even universally condemned unless those actions

---

[7] Grant also did not give a written statement to police.

"so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)). Furthermore, a prosecutor's actions are to be viewed in the appropriate context. Thus, inappropriate prosecutorial comments, standing alone, will not justify reversal of a conviction obtained in an otherwise fair proceeding. *United States v. Young*, 470 U.S. 1 (1985); *United States v. Bond,* 22 F.3d 662 (6th Cir. 1994). The determination is made by examining the totality of the circumstances. *Schauer v. McKee,* 662 F. Supp.2nd 864, 878 (E.D. Mich.., (2009) (citing *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982)).

The court must first find whether the prosecutor's statements were improper. *Slagle v. Bagley,* 457 F.3d 501, 516 (6th Cir. 2006). If the statements are found to be improper, four factors are considered in weighing the extent of a prosecutor's misconduct: 1) the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; 2) whether they are isolated or extensive; 3) whether they were deliberately or accidentally placed before the jury; and 4) the strength of the competent proof to establish the guilt of the accused. *Hamblin v. Mitchell*, 354 F.3d 482, 494 (6th Cir. 2003); *accord Frazier v. Huffman*, 343 F.3d 780, 791 (6th Cir. 2003); *Hutchison v. Bell*, 303 F.3d 720, 750 (6th Cir. 2002); *Byrd*, 209 F.3d at 529. *Pritchett v. Pitcher,* 117 F.3d 959, 964 (6th Cir.1997).  The prosecutorial misconduct must likely have had an impact on the outcome of the trial. *Byrd*, 209 F.3d at 529. The Sixth Circuit has stated that "for denial of due process to exist, the misconduct must be so pronounced and persistent that it permeates the entire atmosphere of the trial." *Pritchett,* 117 F.3d at 964.

In habeas corpus cases, the inquiry is directed to deciding whether the state court's determination of the issue was an unreasonable application of clearly established federal law. *Frazier*,

343 F.3d at 793. *See, e.g., Bowling*, 344 F.3d at 514 (prosecutor cannot comment on a defendant's decision not to testify at trial, although he may summarize the evidence and comment on its quantitative and qualitative significance); *United States v. Payne*, 2 F.3d 706, 715-16 (6th Cir. 1993) (inflammatory remarks in opening and closing statements and throughout trial were not cured by cautionary instructions); *United States v. Roberts*, 986 F.2d 1026, 1031 (6th Cir. 1993) (closing argument that appeals to the community conscience was cured by instructions). Extensive prosecutorial misconduct during trial and during closing argument justifies the granting of a writ of habeas corpus. *Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000). However, where the evidence pointing to the defendant's guilt is strong and the prosecutor's improper comments go to the nature and intent of the crime, not to the defendant's guilt or innocence of the crime, the improper comments may be "error, but the jury would probably have returned the verdict of guilty anyway," and habeas relief is not warranted. *Hamblin*, 354 F.3d at 495.

The Sixth Circuit has held that some statements and actions by prosecutors are not in fact misconduct. For instance, when a prosecutor said, "Everyone available testified," that statement had other meanings beside a comment on the petitioner's right to testify, and no constitutional error occurred. *Martin v. Mitchell*, 280 F.3d 594, 618-619 (6th Cir. 2002). In another case, failure to disclose the identity of a doctor used as a rebuttal witness until after the defense doctor testified was not prosecutorial misconduct. *Lorraine v. Coyle*, 291 F.3d 416, 439-43 (6th Cir.), *amended on reh'g*, 307 F.3d 459 (6th Cir. 2002), *cert. denied*, 538 U.S. 947 (2003). The court in *Slagle* found fifteen improper prosecutorial comments, but because the improper comments were made in the context of a strong evidentiary case against Slagle they were almost all minimally prejudicial, not extensive, and not repeated, the misconduct claim failed. *Slagle*, 457 F.3d at 514.

-71-

The Ohio Supreme Court considered Cunningham's claim of prosecutorial misconduct, but also stated that defense counsel failed to object. The Court will address procedural default during the discussion of each individual issue.

In proposition of law VIII, Cunningham argues that he was denied a fair trial because of prosecutorial misconduct. Whether the prosecutor's remarks at trial constitute misconduct requires analysis as to (1) whether the remarks were improper and (2) if so, whether the remarks prejudicially affected the accused's substantial rights. *State v. Smith* (1984), 14 Ohio St.3d 13, 14-15, 14 OBR 317, 470 N.E.2d 883. The touchstone of the analysis "is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips* (1982), 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78. Cunningham argues that prosecutorial misconduct occurred when the prosecutor improperly introduced victim-impact evidence through the testimony of Armetta Robinson. Defense counsel failed to object, however, and waived all but plain error. *State v. Tibbetts* (2001), 92 Ohio St.3d 146, 160-161, 749 N.E.2d 226.
  Robinson, a victim of the shooting, testified that she had no recollection of the day she was shot. She displayed the gunshot wound on the back of her head, told the jury that she had had surgery, that she had been in a coma for 47 days, and that she was undergoing occupational, physical, and speech therapy. She also identified her eyeglasses, which later testimony confirmed had been found at the scene of the crime. Cunningham was charged with the attempted murder of Robinson, and, although she could not identify Cunningham as her assailant, her testimony was relevant to issues of his intent and to show the nature and extent of her injuries. *See State v. Fautenberry* (1995), 72 Ohio St.3d 435, 440, 650 N.E.2d 878 (victim-impact evidence relating to the facts attendant to the offense is clearly admissible during the guilt phase). Robinson's identification of her eyeglasses helped to prove that she had been at Shane's apartment at the time of the shooting. Testimony about her gunshot wound proved that she had been shot, and her testimony about surgery, her coma, and her physical therapy established that she had been seriously injured. Finally, her testimony was not directed to the penalty and did not appear to be overly emotional. It cannot be said that the outcome of Cunningham's trial would have been otherwise but for Robinson's testimony. Its admission was not error. *See State v. Hartman* (2001), 93 Ohio St.3d 274, 293, 754 N.E.2d 1150. *See, also*, *Reynolds,* 80 Ohio St.3d at 679, 687 N.E.2d 1358.
  Cunningham claims that the prosecutor made several improper comments during guilt-phase closing argument. During the defense's closing argument, counsel argued that the physical evidence found at the scene proved that only one weapon was fired and that Jackson fired that weapon. Defense counsel suggested that Cunningham's gun was inoperable. Cunningham complains that the prosecutor responded to this argument by improperly speculating about evidence when he commented about the condition of bullets purportedly fired from Cunningham's gun and how the age of a gun affects its use. Cunningham's failure to object to these comments waived all but plain error. *State*

*v. Slagle* (992), 65 Ohio St.3d 597, 604, 605 N.E.2d 916. "Prosecutors are entitled to latitude as to what the evidence has shown and what inferences can be drawn therefrom." *State v. Richey* (1992), 64 Ohio St.3d 353, 362, 595 N.E.2d 915. See, also, *Watson,* 61 Ohio St.3d at 10, 572 N.E.2d 97. The prosecutor's comment about the condition and operability of Cunningham's gun was not misconduct. During cross-examination, defense counsel elicited from James Grant that he had seen Cunningham holding a revolver that had not been well cared for and "looked old and rusty." Thus, the prosecutor's comment about the gun amounted to fair comment on the evidence. See, e.g., *State v. Hicks* (1989), 43 Ohio St.3d 72, 76-77, 538 N.E.2d 1030.The prosecutor's comment about bullets being lost or damaged was also not misconduct. In *Richey,* laboratory tests failed to reveal fire accelarants on defendant's clothing. Nevertheless, we found that the prosecutor's comments speculating why accelarants had not been found in an arson case amounted to fair comment. *Richey,* 64 Ohio St.3d at 362, 595 N.E.2d 915.

Cunningham complains that the prosecutor made inflammatory comments about one of the victims and improperly commented on Cunningham's right to a fair trial. During the state's rebuttal closing argument, the prosecutor stated that "[Jayla Grant] never asked to be there and she was never given a chance. She was never given justice like he's receiving." Cunningham argues that the prosecutor's comment invited the jury to punish Cunningham for exercising his jury trial rights and insinuated that the only way for the victim to receive justice was through Cunningham's conviction. Cunningham did not object to the comment and waived all but plain error.

Isolated comments by a prosecutor are not to be taken out of context and given their most damaging meaning. *See Donnelly v. DeChristoforo* (1974), 416 U.S. 637, 647, 94 S.Ct. 1868, 40 L.Ed.2d 431; *State v. Hill* (1996), 75 Ohio St.3d 195, 204, 661 N.E.2d 1068. The "justice" comment was within the creative latitude accorded both parties in closing argument. See, e.g., *State v. Nields* (2001), 93 Ohio St.3d 6, 38, 752 N.E.2d 859. The comment that Jayla Grant "was never given a chance" represented fair commentary on the evidence because Cunningham had rejected numerous pleas to spare her life. *See State v. Clemons* (1998), 82 Ohio St.3d 438, 452, 696 N.E.2d 1009.

Similarly, the prosecutor's comment characterizing the murders as "the most cold-blooded calculated inhumane murder" fell within the latitude permitted to both parties. See *State v. Brown* (1988), 38 Ohio St.3d 305, 317, 528 N.E.2d 523. *See, also, e.g.,* *State v. Grant* (1993), 67 Ohio St.3d 465, 484, 620 N.E.2d 50; *State v. Greer* (1988), 39 Ohio St.3d 236, 251, 530 N.E.2d 382. Even if these comments were improper, nothing suggests that but for these comments, the outcome of Cunningham's trial would have been otherwise. *See State v. Bies* (1996), 74 Ohio St.3d 320, 326, 658 N.E.2d 754.

Cunningham also claims that prosecutorial misconduct occurred during the penalty phase. He first contends that the prosecutor improperly commented that his unsworn statement prevented cross-examination. We reject this argument. *See State v. Smith* (2000), 87 Ohio St.3d 424, 444, 721 N.E.2d 93; *State v. Davis* (1996), 76 Ohio St.3d 107, 119-120, 666 N.E.2d 1099.

Cunningham contends that the prosecutor mischaracterized the mitigating evidence throughout closing argument by advising the jury to weigh evidence other than the mitigation evidence presented by the defense. As a result, Cunningham argues, the prosecutor improperly injected nonstatutory aggravating circumstances into the penalty-phase weighing process. Cunningham failed to object, however, and waived all but plain error. *Slagle,* 65 Ohio St.3d at 604, 605 N.E.2d 916.

Here, each of the comments complained of related to evidence presented during the penalty phase. Prosecutors are entitled to urge the merits of their cause and legitimately argue that defense mitigation evidence is worthy of little or no weight. *Wilson,* 74 Ohio St.3d at 399, 659 N.E.2d 292. Although some comments could have been more artfully stated, the prosecutor never argued nonstatutory aggravating circumstances to the jury or urged the jury to weigh mitigating evidence as aggravating. Moreover, the trial court correctly instructed the jury on the aggravating circumstance and on the proper standard to apply in the weighing process. *See Smith,* 87 Ohio St.3d at 444, 721 N.E.2d 93. It is presumed that the jury followed the court's instructions. *State v. Loza* (1994), 71 Ohio St.3d 61, 79, 641 N.E.2d 1082. Accordingly, we find no plain error.

Finally, Cunningham contends that the cumulative effect of misconduct impaired the overall fairness of his trial. This argument is without merit. See, e.g., *Landrum,* 53 Ohio St.3d at 113, 559 N.E.2d 710; *Smith,* 87 Ohio St.3d at 444-445, 721 N.E.2d 93. We reject proposition of law VIII.

*State v. Cunningham*, 105 Ohio St.3d at 212-214.

## Sub-Claim (a)

During guilt phase closing arguments, the prosecutor responded to defense counsels' remarks about the fact that no bullets from Cunningham's gun were found. The state court stated that defense counsel failed to object and waived all but plain error. Therefore, the Court finds that it is procedurally defaulted. If it were to be considered, the Court would find it to be without merit.  Cunningham stated in his Petition:

In response to the defense's closing arguments, the prosecutor speculated about the whereabouts of the bullets that may have been fired from petitioner's gun. "Let's not get caught up in a smokescreen about the bullets. Those bullets could be lost-lost in blood, they could disintegrate when they hit a wall because they're not jacketed." (Vol. 7, TR. 1444). The prosecutor also informed the jury that the failure of the State to produce the bullets was of no consequence. "Mr. Grzybowski wants to talk about a rusted or an old gun. We all know there's a lot of people in the graveyard that were killed with rusty and old guns and unloaded guns." (Vol. 7, TR 1442). It was improper for the prosecutor to speculate about the status of the bullets and about how the age of

-74-

> a gun affects its use. There was absolutely no evidence introduced at trial by the State
> to the jury that bullets could disintegrate. Nor was there evidence presented by the
> State's witnesses that demonstrated the State's assertions regarding old and rusty guns.
> These statements were clearly beyond the bounds of an invited response to argument.
> *Id.* at 788-789.

Pet. pg. 70.

The evidence showed that only five bullets out of thirteen fired were recovered from the scene.

The five found bullets were from the same gun.  Obviously, not all the fired bullets were recovered.

Cunningham possessed a revolver whose casings are not expelled when the gun is fired. The

prosecutor was emphasizing that even though no other bullets were found, it does not mean that the

other bullets were not fired by Cunningham. In addition, Cunningham was not charged as the principal

offender so the State was not required to prove that his gun was the murder weapon.

During cross-examination, prosecution witness James Grant testified that he had seen

Cunningham holding a revolver that had not been well cared for and looked old and rusty. Tr. Vol.

7, pg. 1300. The Ohio Supreme Court found the prosecutor's statement about the gun to be fair

comment on the evidence.  *State v. Cunningham*, 105 Ohio St.3d at 213. This Court agrees.

### Sub-Claim (b)

Also, Cunningham contends that:

> when commenting about victim Jala Grant he stated, "She never asked to be there and
> she was never given a chance. She was never given justice like he's receiving." (Mit.
> TR. 1448). This statement by the prosecutor was clearly an unfair comment on the
> defendant's right to a jury trial. The danger of such a statement is that it invited the
> jury to punish the defendant for exercising his right to a jury trial. *See State v. Willard*,
> 144 Ohio App.3d 767, 775, 761 N.E.2d 688, 694 (2001). Moreover, this comment
> improperly insinuated to the jury that the only way for the victim to receive justice was
> through petitioner's conviction.                                    In
> addition, the prosecutor commented that, "This is absolutely the most coldblooded
> calculated inhumane murder that anyone could ever imagine. Absolutely the most
> cold-blooded inhumane murder anyone could imagine." (Vol. 7, TR 1449). This
> comment by the prosecutor was simply designed to inflame the jury and appeal to the

-75-

emotions of the jury. The comments invited the jury to convict petitioner based not upon facts in evidence, but upon the jury's horror of the crime. The prosecutor's arguments created an unacceptable risk that the jurors would convict petitioner because of the heinousness of the crime and not because the State met its burden of proof.

Pet. pg. 72-73. The State court stated that defense counsel failed to object and waived all but plain error. Therefore, it is procedurally defaulted. If it were to be considered, the Court would find it to be without merit. The Ohio Supreme Court found that the comments concerning Jayla Grant represented fair commentary on the evidence because Cunningham had rejected numerous pleas to save her life. *State v. Cunningham*, 105 Ohio St. 3d at 213. This Court agrees.

### Sub-Claim (c)

The state court held that the prosecutor's characterization of the murders as the "most cold-blooded inhumane murder anyone could imagine" fell within the latitude afforded to both parties even if the comment was improper, there is nothing in the record suggesting that the outcome of the trial would have been different. *State v. Cunningham*, 105 Ohio St.3d at 214. The Respondent agrees that this issue is preserved for federal habeas review. The Court finds that the Ohio Supreme Court's decision on this issue was not contrary to clearly established United States Supreme Court law.

### Sub-Claim (d)

Next, Cunningham alleges that the prosecutor made several improper comments during closing arguments at the penalty phase of his trial. First, he reminded the jury that the defendant's statement was unsworn. Cunningham agrees that this is permissible under *State v. DePew*, 38 Ohio St.3d 275, 285 (1988). However, he asserts that the prosecutor said more than that allowed by *DePew* by informing the jury that his failure to testify under oath prevented the State from cross-examining him. The Respondent agrees that this issue is preserved for federal habeas review.

The prosecutor stated: "So, with that the question becomes does the fact that the defendant

made a statement that was not under oath in contrast to all other witnesses and that he was not subject to cross examination does that lessen his moral culpability ? Does it diminish the appropriateness of a death sentence? " Tr. Vol. 9, pg. 116. In Ohio, prosecutorial comment on the lack of cross-examination on a defendant's unsworn statement is acceptable and consistent with *DePew*. *State v. Smith*, 87 Ohio St.3d 424, 444 (2000); *State v. Davis*, 76 Ohio St.3d 107, 119-120 (1996). There was no violation of Ohio law. Therefore, the Ohio Supreme Court's decision on this issue was not contrary to clearly established United States Supreme Court law.

### Sub-Claim (e)

Finally, Cunningham argues that throughout the closing argument of the mitigation phase, the prosecutor advised the jurors to weigh the aggravating circumstance in the case against evidence other than the mitigation evidence presented by the defense. Cunningham alleges that the jury was not supposed to weigh the factors the State argued during closing argument against the aggravating circumstance in the case. Instead, the jury was supposed to weigh the mitigation evidence presented against the aggravating circumstances in the case. Pet. pgs. 74-75. The State court stated that defense counsel failed to object and waived all but plain error. Therefore, it is procedurally defaulted. If it were to be considered, the Court would find it to be without merit. The prosecutor was arguing against Cunningham's mitigation evidence, trying to persuade the jury that his mitigation evidence did not outweigh the aggravating circumstances. As the state court found, the prosecutor did not argue non-statutory aggravating circumstances to the jury, nor did he urge the jury to weigh mitigating evidence as aggravating. The Supreme Court fulfilled its requirement to identify the aggravating circumstances and mitigating factors, performed the weighing process, and found that the aggravating circumstances outweighed the mitigating factors.

In summary, Sub-Claims (a), (b), and (e) are without merit. The state court's decision as to Sub-Claims (c) and (d) are not contrary to, or involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

### D.     Ineffective Assistance of Counsel

In order to establish a claim for ineffective assistance of counsel, a habeas petitioner must demonstrate that (1) counsel's performance was deficient, and (2) counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 698 (1984). The standard for judging a claim of ineffectiveness is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Id.* at 686.

The Sixth Circuit, interpreting *Strickland,* has rejected habeas corpus claims which challenged strategic defense counsel decisions. In *Meeks v. Bergen*, 749 F.2d 322 (6th Cir. 1984), the court held that, where more than one possible defense exists and counsel conducts a substantial investigation into each of the possible defenses, the strategic choice made as a result of that investigation is "virtually unchallengeable." *Id.* at 328 (quoting *Strickland,* 466 U.S. at 690-91). Furthermore, the court noted that, even should counsel fail to conduct a substantial investigation into each of several plausible lines of defense, the representation might nonetheless be effective .*Id*; *Strickland,* 466 U.S. at 690-91. This court may "not conjure up tactical decisions an attorney could have made, but plainly did not." *Griffin v. Warden*, 970 F.2d 1355, 1358 (4th Cir. 1992); *see also Harris v. Reed*, 894 F.2d 871, 878 (7th Cir.1990).

Even where defense counsel performed deficiently, a petitioner still must show actual prejudice in order to prevail on the claim. *Strickland*, 466 U.S. at 698. "The 'prejudice' component of . .*Strickland* . . . [tests] whether counsel's deficient performance renders the result of the trial

unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). To amount to prejudice, an error must be such that there is "a reasonable probability that . . . the result of the proceeding would have been different" in the absence of the error. *Strickland*, 466 U.S. at 694. "[U]nreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart*, 506 U.S. at 372.

To successfully assert an ineffective assistance of counsel claim, a petitioner must point to specific errors in trial counsel's performance. *United States v. Cronic*, 466 U.S. 648, 666 (1984). Thereafter, a reviewing court must subject the allegations to rigorous scrutiny, determining "whether, in light of all circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. As the Supreme Court stated,

> "Judicial scrutiny of a counsel's performance must be highly deferential" and . . . "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."

*Bell v. Cone*, 535 U.S. 685, 698 (2002)(quoting *Strickland*, 466 U.S. at 689). A reviewing court must strongly presume that counsel's conduct was reasonable and might be part of a trial strategy. *Strickland*, 466 U.S. at 689. "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* When challenging a death sentence, "the question is whether there is a reasonable probability that, absent the errors, the sentencer – including an appellate court, to the extent it independently reweighs the evidence – would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Id.* at 694. A verdict "only weakly supported" would

-79-

be more susceptible to influence of counsel error than one which is supported by an overwhelming record. *Id.* at 696.

>**Ground Five**     The State court determinations that trial counsel were not ineffective for failing to investigate, obtain and use ballistic evidence demonstrating that Jeronique Cunningham was not the actual killer is contrary to or an unreasonable application of *Strickland v. Washington.*

In his fifth ground for relief, Cunningham, argues that defense counsel were ineffective at the quilt phase of the trial when they failed to obtain a ballistics expert to prove that he was not the actual killer. An expert would allegedly have clarified for the jury that none of the possible revolvers that Cunningham might have had at the apartment could fire a .380 caliber cartridge, the type of cartridges and bullets found at the scene. Such a comparison would allegedly illustrate the disparity in size and weight of the two types of bullets for the different weapons. With a reasonable investigation, Cunningham contends that counsel would have been able to prove that he could not have been a murderer. Respondent agrees that this claim is preserved for federal habeas review.

The Third District Court of Appeals addressed this issue as follows:

>For purposes of clarity and logic, we have chosen to address the grounds for relief in a different order than that in which Cunningham discusses them. We begin by addressing the grounds which raise ineffective assistance of counsel.
>In *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, the United States Supreme Court established the process for evaluating a claim of ineffective assistance of counsel. The court held that an appellant must first show that his counsel's performance was deficient. *Id.* at 687. An appellant demonstrates this by "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Second, the appellant must show that his counsel's deficient performance prejudiced him. *Id.* This is proven by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*
>The Ohio Supreme Court set forth the test as to whether an individual has been denied effective counsel in *State v.. Hester* (1976), 45 Ohio St.2d 71, 341 N.E.2d 304. In *Hester,* the court held that the test was "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done." *Id.* at 79, 341 N.E.2d 304. The Ohio Supreme Court later revised this test in *State v. Lytle* (1976),

-80-

48 Ohio St.2d 391, 396-397, 358 N.E.2d 623, *vacated on other grounds in* (1978), 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154, stating:

When considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness.

The court also placed the burden of proof upon the appellant, "since in Ohio a properly licensed attorney is presumably competent ." *Id.*, citing *Vaughn v. Maxwell* (1965), 2 Ohio St.2d 299, 209 N.E.2d 164; *State v. Williams* (1969), 19 Ohio App.2d 234, 250 N.E.2d 907.

Therefore, in order for an appellant to overcome the presumption of effectiveness, he "must submit sufficient operative facts or evidentiary documents which, if proven, would show that appellant was prejudiced by said ineffective counsel." *State v. Smith* (1987), 36 Ohio App.3d 162, 163, 521 N.E.2d 1112. Until appellant has proven prejudice as a result of ineffective counsel, an evidentiary hearing is not required. See *State v. Pankey* (1981), 68 Ohio St.2d 58, 428 N.E.2d 413.

We now review the claims presented by Cunningham alleging ineffective assistance of counsel at the guilt phase of the trial using the standard set forth above. We begin with the first and fourth claims for relief, in which Cunningham alleged that his defense counsel was ineffective for failing to obtain the appointment of a qualified ballistics expert and inadequately preparing the defense case at trial. Cunningham argues that counsel could have and should have shown to the jury a videotape of a procedure in which .380 caliber cartridges were placed into different caliber revolvers and fired. Cunningham argues that this procedure would have clarified for the jury that he could not have fired a .380 caliber cartridge in any of the weapons (.38, .357, or .44 revolver) which the state suggested he possessed on January 3, 2002. Cunningham also argues that defense counsel was ineffective for failing to adequately rebut the testimony of state's witnesses Cynthia Beisser and John Heile with regard to this point. It is not disputed in the record or by the state that on January 3, 2002 Cunningham was not armed with a semi-automatic weapon or a weapon with a clip, but rather was armed with a revolver. Since the weapons Cunningham and Jackson purportedly used on that day were not recovered, witness testimony was the only evidence to indicate which weapon Cunningham possessed. In addition, there is no dispute in the record or by the state that the casings and bullets recovered at the scene by law enforcement officers were of a .380 caliber, which are typically fired by a semi-automatic weapon and not a revolver.

John Heile, a forensic scientist with the Bureau of Criminal Investigation and Identification, was a witness for the state. Heile testified that the cartridges recovered at the scene were all fired from the same weapon, a .380 caliber pistol. Heile also testified that most of the bullets recovered at the scene were .380 automatic caliber

-81-

bullets. Heile could not conclusively state that one of the bullets was fired from the same weapon as the others due to its condition. Also, a lead core from a full metal jacket bullet was recovered which Heile could not conclusively state was fired from the same weapon as the other bullets. However, Heile did testify that the damaged bullet and fragmented lead core had the characteristics of .380 caliber bullets. Since Heile did not have the actual weapons to analyze, he constructed a list of possible guns which could have fired the bullets he analyzed from the scene. All of the weapons on the list were semiautomatic handguns as opposed to revolvers. While Heile testified that .380 caliber cartridges would fit in the chamber of a .38 caliber revolver, he stated that it was unlikely that the revolver would fire. Heile also testified that the .380 caliber cartridges would not fire in a .44 caliber revolver without some type of manipulation to the weapon.

Defense counsel thoroughly questioned Heile on cross-examination regarding the differences between weapons of different calibers and the casings and bullets that were recovered from the scene. Heile was consistent in his testimony that the .380 caliber cartridges would fit in a .38 caliber revolver, but that the revolver likely would not fire.

Cynthia Beisser, Lucas County coroner, was also a witness for the state. Dr. Beisser performed the autopsies of Leneshia Williams and Jala Grant and testified as to her findings. Dr. Beisser found that both victims died of gunshot wounds to the head. Dr. Beisser testified that she could not determine the caliber of the projectile that was fired based solely on her examination of the wounds. Dr. Beisser testified that the entrance wounds on Leneshia Williams and Jala Grant were consistent with the size of a .380 caliber pistol. Dr. Beisser also testified that the entrance wounds on both victims were consistent with a range of different size caliber weapons. Further, Dr. Beisser testified that .380 and .38 caliber bullets are essentially the same size.

Defense counsel also thoroughly examined Dr. Beisser regarding the wounds she examined on the two victims. While Dr. Beisser maintained that the size of the wounds were consistent with the size of .380 caliber bullets, she also stated that the size of .380 and .38 caliber bullets are in essence equal. Although Dr. Beisser was unable to conclusively state the caliber of the bullets that caused the wounds on the victims, she testified that the size of the wounds were not consistent with a large caliber weapon. Further, due to the elasticity of the skin, a bullet may stretch the skin when it passes through it but the skin will snap back in place. Therefore, Dr. Beisser testified that the size of the hole in the skin is not exactly the same size as the projectile that goes through the skin.

In the defense's presentation of evidence, Daniel Reiff, a gun shop owner, testified regarding the differences between a .380 caliber pistol and a .44 caliber revolver. Defense counsel apparently wanted to give the impression that Cunningham possessed a .44 caliber revolver on January 3, 2002. Reiff testified that a .44 caliber revolver is much bigger than a .380 caliber pistol. Similarly, Reiff testified that .44 caliber bullets are much bigger than .380 caliber bullets. On cross-examination, Reiff testified that .38, .357, .380 and .9 caliber cartridges are all approximately the same diameter and that they would be indistinguishable to the eye of an average person.

-82-

Cunningham argues that defense counsel's decision to rebut the prosecution's case with the testimony of Daniel Reiff "did not work." Appellant's Merit Brief, p. 7. However, as noted above, this is not the standard by which a reviewing court determines ineffective assistance of counsel. A reviewing court may not second-guess decisions of counsel which could be considered matters of trial strategy. *State v. Smith* (1985), 17 Ohio St.3d 98, 477 N.E.2d 1128. While the testimony of Daniel Reiff may not have convinced the jury that Cunningham did not fire his gun, defense counsel's cross-examination of the state's witnesses and presentation of the case-in-chief for the defense did not fall below the level of reasonable representation.

While the evidence presented at trial showed that a .380 semi-automatic weapon was fired during the shootings on January 3, 2002, the evidence also supported the finding by the jury that Cunningham fired his weapon as well. The testimony of the five witnesses who could recall the events of January 3, 2002 supported the finding that Cunningham fired his weapon at the victims. Since the testimony showed that Cunningham's weapon was a revolver, the casings of the bullets would not have been expelled at the scene, as is the case with a semi-automatic weapon. Therefore, while .380 caliber casings were collected by law enforcement officers at the scene, casings from the weapon fired by Cunningham were not recovered, which would be consistent with him firing a revolver.

Further, the evidence shows that only five spent .380 caliber bullets and one .380 caliber bullet fragment were recovered by the police although there were a total of thirteen gunshot wounds among the victims. The difference in the number of bullets recovered and gunshot wounds shows that the physical evidence of the bullets and casings is not conclusive regarding which weapon caused the victims' injuries. Moreover, other pieces of evidence were either not located or were not maintained by the time of trial. Coron Liles, who was shot in the mouth, testified that as he was running to get help after the shooting he spit out a bullet a few blocks from the residence on Eureka Street. This bullet was never recovered by law enforcement officers. A bullet was also discovered on the front steps of the residence on Eureka Street, which was photographed and recovered by law enforcement officers, but was inadvertently misplaced prior to trial. Finally, a bullet still remained in the arm of Tomeaka Grant, a victim of the shootings on January 3, 2002, at the time of trial. The caliber of the bullet in Tomeaka Grant's arm is unknown.

Thus, as the trial court held, "while the physical evidence did not directly establish that a revolver was fired during the shootings, the physical evidence and surrounding facts did not in the least rule that out." February 11, 2004 Judgment Entry Denying Post-Conviction Relief, p. 11. The trial court's finding is supported by the record.

Cunningham argues that defense counsel could have convinced the jury that a revolver could not have fired .380 caliber cartridges by obtaining a qualified ballistics expert. Cunningham relies on the post-trial interview statements of jurors that it was their understanding that a revolver could fire a .380 caliber cartridge to support his argument. However, based on the evidence outlined above, the jury's finding of Cunningham's guilt was clearly supported. Sufficient evidence existed aside from the analysis of the physical evidence to support Cunningham's involvement in the

-83-

shootings. Therefore, we cannot say that had defense counsel obtained a ballistics expert it would have established that Cunningham did not fire a weapon at the residence on Eureka Street on January 3, 2002. Even if Cunningham had not fired a weapon in this incident, the jury would still have been able to find him guilty of complicity in all of the crimes and specifications charged.

The evidence submitted by Cunningham lacks the threshold standard of cogency. The evidence is only marginally significant and does not advance Cunningham's claim beyond mere hypothesis. Cunningham's counsel was not ineffective so as to have precluded a fair trial or to have created an unreliable result. Since Cunningham has failed to support these grounds with evidence that contains sufficient operative facts to demonstrate he was prejudiced as a result of ineffective counsel, we hold that the trial court did not error in dismissing the first and fourth grounds for relief without an evidentiary hearing.

*State v. Cunningham*, 2004 WL  2496525 at *5 -9.

The Court examines this claim, as it does all preserved habeas claims, to determine whether the state court's decision is contrary to or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. The Ohio court of appeals found inconsequential the fact that no found bullet came from a revolver, Cunningham's gun. Casings from a revolver would not have been expelled at the scene. Only five spent .380 caliber bullets and one .380 caliber bullet fragment were recovered by police although there were a total of thirteen gunshot wounds. The court stated that the difference in the number of bullets recovered and gunshot wounds shows that the physical evidence of bullets and casings is not conclusive regarding which weapon caused the victims' injuries. Thus, wounds from a revolver had not been precluded.

Further, defense counsel obtained funds from the court to hire a ballistics expert. Apx. Vol. 2, pgs. 188, 217. On May 24, 2002, there was a discussion on the record about the testimony and availability of the expert. Tr. Vol. 1, pgs. 56-60 . Counsel may have made a strategic decision not to call the expert because he may have believed it not helpful or unnecessary.

Cunningham was not charged as the principal offender. In fact, he was charged with prior

-84-

calculation and design. Ohio Revised Code Section 2929.04(A)(7) allows imposition of the death penalty for prior calculation and design, apparently to enable conviction where it is difficult to prove whether the defendant was the actual killer or took part in the preparation of the crime.

Prior calculation and design is more than just an instantaneous decision to kill; it encompasses planning "a scheme designed to carry out the calculated decision to cause the death."[8] *State v. Jones,* 91 Ohio St.3d 335, 348 (2001). The evidence showed that Cunningham knew that drugs were in the apartment,, and that the jury could find that he and Jackson wiped their fingerprints off the guns and bullets because they knew they were going to leave discharged bullets. Further, the evidence showed that Cunningham participated in the robbery. Witnesses also testified that Cunningham fired his revolver. Even if counsel should have called a ballistics expert, Cunningham has not shown that if they had done so, the result of his trial would have been different. The prejudice prong of ineffective assistance of counsel has not been satisfied. The Court finds that the state court's decision is not contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

> **Ground Seven**      The decision of the Ohio Supreme Court and the Ohio appellate  court holding trial counsel was not ineffective at sentencing for failing to investigate and present important mitigating evidence for causing the submitted mitigation evidence to be overlooked and understated, and for presenting an inadequate closing argument, was contrary to or an unreasonable violation of *Strickland v. Washington* and its progeny, and in violation of Petitioner's rights under the Sixth, Eighth, and Fourteenth Amendment.

In his seventh claim for relief, Cunningham states that he does not challenge his counsel's trial strategy at mitigation, but contends that it was not carried out in an effective manner. Counsel

---

[8] Prior calculation and design is not defined in the Revised Code,

allegedly should have presented: (1) evidence from records of Allen County Children's Services; (2) records of Petitioner's mother's mental illness, killing, suicide attempts and substance abuse; (3) evidence that as an adult, Petitioner cared for his mother when she was confined to a nursing home (Sub-claim (a)); (4) evidence from a competent expert, such as a cultural expert, to present to the jury the effects on Petitioner of his deprivations and the culture in which he lived as a child (Sub-claim( b)); (5) evidence that Petitioner passed a lie detector test—indicating that he did not shoot anyone—but his co-defendant failed the test (Sub-Claim (c)); and (6) evidence that Petitioner's Pretrial Statement that his gun did not fire is consistent with the physical evidence indicating that he was not the principal offender of the murder (Sub-Claim (d)). Further, Cunningham alleges that his counsel were ineffective in closing argument during the penalty phase of the case. (Sub-Claim (e)). The Respondent agrees that all of these issues are preserved for federal habeas review.

In *Wiggins v. Smith*, 539 U.S. 510, 533 (2003), the United States Supreme Court held that *Strickland* does not require defense counsel to investigate and present every possible type of mitigating evidence no matter how unlikely it would assist the defendant. A strategic decision to forego certain mitigation evidence is reasonable to the extent that "reasonable professional judgments support the limitation on investigation." *Id*. (quoting *Strickland,* 466 U.S. at 690-91). "Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691.

The Supreme Court, in *Rompilla v. Beard*, 545 U.S. 374 n. 7 (2005) and *Wiggins* 539 U.S. at 524, has unequivocally declared that a thorough and complete mitigation investigation is absolutely necessary in capital cases. Under the ABA standards in effect during Cunningham's trial, defense counsel had a duty to investigate both the merits and mitigating circumstances: "It is the duty of the

lawyer to conduct a prompt investigation of the circumstances of the case and to explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction." 1 ABA Standards for Criminal Justice 4-4.1, p. 4-53 (2d ed.1980). The accompanying two-page commentary stated that defense counsel have "a substantial and important role to perform in raising mitigating factors," and that "[i]nformation concerning the defendant's background, education, employment record, mental and emotional stability, family relationships, and the like, will be relevant, as will mitigating circumstances surrounding the commission of the offense itself." *Id.,* at 4-55. *See Bobby v. Van Hook*, 130 S.Ct. 13, 16-17 (2009). A partial, but incomplete mitigation investigation does not satisfy the requirements of *Strickland. Strickland*, 466 U.S. at 695. A strategic decision not to perform a complete investigation is inadequate when a full investigation would have revealed extensive mitigation evidence. *Id*. at 696. Further, an investigation must be performed if the investigator does not know what relevant facts the investigation would uncover. *Id.*

The Ohio court of appeals addressed Cunningham's contentions that the death penalty would not have been imposed if counsel had presented the Allen County Children Service's records, Nurse Sharon Cage's testimony that Cunningham visited his mother at the nursing home every day, a cultural expert, his Voice Stress Aanalyzer test results and his previous statement to police:

> In the ninth, tenth, eleventh and twelfth grounds for relief, Cunningham alleged that defense counsel was ineffective for failing to investigate, prepare and present available mitigating evidence to the jury pertaining to his character, history and background. In the ninth ground, Cunningham alleged counsel did not present records or testimony from employees of the Allen County Children's Services pertaining to Cunningham's involvement with the agency. In the tenth ground, Cunningham alleged counsel failed to present testimony from Sharon Cage, a nurse's aide at Lima Manor Nursing Home, who provided long term care to Bettye Cunningham, Cunningham's mother. In the eleventh ground, Cunningham alleged counsel failed to present evidence of Cunningham's limited involvement in the shootings, consisting of statements Cunningham and Jackson had made to police and the results of the Voice Stress Analyzer tests (VSA) administered to Cunningham and Jackson. Finally, in the

-87-

twelfth ground, Cunningham alleged counsel failed to seek the assistance of a cultural expert and present such evidence at the mitigation phase. Cunningham argues that these failures by defense counsel prejudiced him.

Ohio courts have held that the claim of failure to present mitigating evidence is properly considered in a post-conviction proceeding because evidence in support of the claim could not be presented on direct appeal. See *State v. Keith,* 79 Ohio St.3d 514, 536, 1997-Ohio-367, 684 N.E.2d 47; *State v. Scott* (1989), 63 Ohio App.3d 304, 308, 578 N.E.2d 841. In *Wiggins v. Smith* (2003), 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471, the United States Supreme Court held that the failure to conduct a reasonable investigation into a defendant's history and background and present mitigating evidence constituted ineffective assistance of counsel. In his ninth, tenth and twelfth grounds for relief, Cunningham argued that counsel's failure to present additional evidence of his positive qualities fell below the standard of reasonable and effective counsel and prejudiced him. However, Cunningham has not shown what these witnesses or records would have provided to the jury that was not provided by the witnesses who testified at the penalty phase. It is uncertain that such testimony or records would have made a difference in the determination of the jury.

Our review of the record reveals that Cunningham's counsel adequately investigated his background and character and presented such evidence through the testimony of Cunningham's mother and sister and a forensic psychologist. The forensic psychologist, Dr. Davis, evaluated Cunningham several times, interviewed Cunningham's mother, and reviewed records and other information regarding Cunningham's history and background. Cunningham's mother and sister both testified as to the involvement of Children's Services during Cunningham's childhood, as well as the abuse that both Bettye and the children endured. Dr. Davis also testified regarding Children's Services involvement with the family, specifically relaying the circumstances surrounding the multiple referrals and home visits. Further, Dr. Davis explained his assessments of Cunningham and gave a lengthy description of the factors that likely contributed to Cunningham's problems with depression and substance abuse.

The documents presented by Cunningham in support of his ninth, tenth and twelfth grounds do not set out any information that would not have been repetitive and cumulative of that presented at trial. It is within the purview of counsel to determine whether additional expert testimony or other information regarding a defendant's background is cumulative in nature. *Yarbrough,* 2001 WL 454683, at *7.

In the eleventh ground, Cunningham argues that counsel should have presented to the jury Cunningham's and Jackson's statements to law enforcement officers, as well as the results of the VSA tests administered to them. The Ohio Supreme Court has ruled that, while defendants must be given wide latitude in the presentation of mitigating evidence, the Rules of Evidence nevertheless apply at the sentencing phase of a capital trial. *State v. Esparza* (1988), 39 Ohio St.3d 8, 11-12, 529 N.E.2d 192; see also *State v. Jenkins* (1984), 15 Ohio St.3d 164, 171, 473 N.E.2d 264. While the evidence that Cunningham argues should have been admitted was not ruled upon by the trial court at the penalty phase, it is possible that defense counsel did not seek to admit such

evidence due to its presumed inadmissibility. The trial court had already ruled on the admissibility of Cunningham's statement at the guilt phase of the trial. In addition, results of lie detector tests are generally inadmissible under Ohio law. Further, defense counsel could have decided not to attempt to admit such evidence due to the incriminating nature of the evidence.

Moreover, this court has repeatedly held that debatable trial tactics and strategies do not constitute a denial of effective assistance of counsel. *Yarbrough,* 2001 WL 454683, at *7, citing *State v. Clayton* (1980), 62 Ohio St.2d 45, 49, 402 N.E.2d 1189. We will not second-guess every aspect of defense counsel's presentation of mitigation evidence at the penalty phase. *Yarbrough,* 2001 WL 454683, at *7. It is well-settled that the existence of alternative or additional mitigation theories not pursued by defense counsel does not establish ineffective assistance of counsel. *Id.,* citing *State v. Combs* (1994), 100 Ohio App.3d 90, 105, 652 N.E.2d 205.

Nothing in the record before us or in the evidentiary material offered in support of these claims presents a reasonable probability that, but for the alleged omissions of counsel, the result of the penalty phase of Cunningham's trial would have been different. Thus, Cunningham failed to sustain his burden of demonstrating substantive grounds for relief. We, therefore, hold that the trial court did not err in dismissing Cunningham's ninth, tenth, eleventh and twelfth grounds for relief without an evidentiary hearing.

*State v. Cunningham*, 2004 WL 2496525, at *9-11.

## Sub-Claim (a)

Cunningham asserts that his counsel failed to present evidence from the records of the Allen County Children's Services, as well as records of his mother's mental illness, the killing of her husband, her suicide attempts, and her substance abuse. Petitioner's sister, Tara Cunningham, his mother, Betty Cunningham, and Dr. Daniel Davis testified about Cunningham's terrible childhood. Tara told the jury that Betty's husband beat her three times a week in front of the children, as well as beating Cunningham. Tr. Vol. 9, pg. 30. She further stated that the beatings caused Betty to stab him to death with the children present. Tr. Vol. 9, pg. 31. Afterward, Betty began using drugs, and was also an alcoholic. Tr. Vol. 9, pg. 32. She stayed away from home so that the children moved in with their grandmother. Tr. Vol. 9, pg. 31. When Betty left, Cunningham would take care of his siblings. Tr. Vol. 9, pg. 32. Tara also testified that Betty often physically abused Cunningham. Tr. Vol. 9, pg.

33. The Children's Services removed the five children from the home three different times. Tr. Vol. 9, pg. 34.

Betty Cunningham testified about the abuse from her husband, but said that Cunningham was whipped with a belt like a normal child. Tr. Vol. 9, pg. 42. The jury heard testimony about the beatings of Cunningham from his sister, as well as Betty's atrocious parenting skills, drug and alcohol abuse, mental illness, attempted suicide, and murder of her husband. The jury was not likely to believe that Betty's beatings of her son were normal.

The Respondent points out the pretrial history of this case. Defense counsel filed a Motion for Appropriation of Funds for a Defense Mitigation Specialist who would help in collecting records. Apx. Vol 1, pg. 214. They also moved for funds for a defense investigator, Apx. Vol. 1, pg. 217, and for a psychologist. Apx. Vol. 1, pg. 201. The Motions were granted and $8500 was appropriated for the mitigation specialist, investigator, and psychologist. Further, the court ordered the Allen County Children's Services, the Allen County Juvenile Court, the Family Resource Center, the Tri-Star n/k/a Lutheran Services, the Department of Corrections, and all hospitals, institutions, and doctors to release to defense counsel, or the investigator, all records pertaining to Cunningham. Apx. Vol. 1, pgs. 366, 367, 368.

It appears that Cunningham's counsel performed a complete investigation of his juvenile history, children's records, and his medical and penal history. A strategic decision to pursue or not to pursue a particular trial tactic "after thorough investigation of law and facts," is "virtually unchallengeable." *Clark v. Mitchell* 425 F.3d 270, 286 (6th Cir. 2005). The court must determine whether the investigation supporting counsel's decision whether or not to introduce evidence was reasonable. *Id.* at 284; *Wiggins*, 539 U.S. at 523; *Strickland*, 466 U.S. at 690-91. Reasonableness is

-90-

assessed by considering the quantity of evidence known to counsel, as well as whether that evidence should have led a reasonable attorney to investigate further. *Wiggins*, 539 U.S. at 527; *Clark*, 425 F.3d at 284.

Even if counsel were ineffective, Cunningham must show that he suffered prejudice. Prejudice exists where the new evidence that a habeas petitioner presents differs in a substantial way - in strength and subject matter - from the evidence actually presented at sentencing. *Hill v. Mitchell,* 400 F.3d 308, 319 (6th Cir.2005). The evidence Cunningham claims should have been presented appears to be similar to what counsel brought out at the trial. The Sixth Circuit held in *Smith v. Mitchell*, 348 F.3d 177, 200-02 (6th Cir.2003), that a petitioner was not prejudiced by his counsel's failure to introduce additional mitigating evidence at sentencing where new evidence sought to be introduced was merely cumulative to that which had already been presented at mitigation. *See Clark,* 425 F.3d at 286. Cunningham is contending that if the evidence had been more elaborate he would not have received the death penalty. He has not shown that but for counsel's performance the outcome of the trial would have been different. *Baze v.Parker*, 371 F.3d 310, 321 (6th Cir. 2004).

Nurse Sharon Cage allegedly would have testified that Cunningham visited his mother every day. But Betty Cunningham testified to that effect. Thus, the nurse's testimony would have been cumulative, and failure to call her was not prejudicial.

### Sub-Claim (b)

Cunningham asserts that his counsel were ineffective for failing to call a cultural expert to present to the jury the effect on Cunningham of his deprivations and the culture in which he lived as a child. Had such an expert testified, the jury could allegedly have learned of the cultural impact of Cunningham's family, neighborhood, and his unique experiences in the world. In addition, contends

Cunningham, the cultural expert could have put his mother's problems into context, as well as his caring for his siblings despite his own suffering and abuse.

As previously discussed, counsel did a thorough investigation. It appears that they made an informed strategic decision to bring testimony through a psychologist rather than, or in addition to, a cultural expert. Testimony from a psychologist was appropriate. Any additional testimony from a cultural expert would have been, as the Ohio court of appeals found, cumulative and unnecessary.

### Sub-Claims (c), (d)

Cunningham next contends that had counsel offered evidence during mitigation that he passed a Voice Stress Analyzer test administered by the police that included two of the questions pertaining to his guilt, and that he originally told police that his gun was inoperable, a different outcome would have resulted.

The United States Supreme Court has held that it had not interpreted the Eighth Amendment as providing a capital defendant the right to introduce at sentencing evidence designed to cast "residual doubt" as to his guilt of the basic crime of conviction. *Oregon v. Guzek,* 546 U.S. 517, 525 (2006). A state has the authority to set reasonable limits upon the evidence a defendant can submit, and to control the manner in which it is submitted.  "States are free to structure and shape consideration of mitigating evidence 'in an effort to achieve a more rational and equitable administration of the death penalty.'" *Boyde v. California,* 494 U.S. 370, 377 (1990) (quoting *Franklin v. Lynaugh,* 487 U.S. 164, 181 (1988) (plurality opinion)). Residual doubt is not a mitigating factor under Ohio law. *Coleman v. Mitchell,* 268 F.3d 417, 447 (6th Cir.2001). It is irrelevant to the issue of whether the defendant should be sentenced to death. *State v. McGuire,* 80 Ohio St.3d 390, 403 (1997).

Cunningham contends that this evidence should not be considered residual doubt, but an argument that his gun was inoperable and his conduct constituted a lesser role in the murders. However, the rules of evidence apply to mitigation hearings, and polygraph examination results are generally inadmissible. *State v. Sheppard,* 84 Ohio St.3d 230, 237 (1998);*United States v. Gantley,* 172 F.3d 422, 430 (6th Cir. 1999)*; United States v. Blakeney,* 942 F.2d 1001, 1014 (6th Cir.1991). The reason for this is the general skepticism that pervades the scientific community concerning the reliability of polygraph examination. *Gantley,* 172 F.3d at 430.  *United States v. Scheffer*, 523 U.S. 303, 311 (1998).

### Sub-Claim (e)

Finally, Cunningham alleges that his counsel were ineffective because the closing argument was too brief, an inadequate plea for his life.  Counsel should have reviewed before the jury all of the mitigation evidence he has argued above. The mitigation closing argument consisted of forty-nine lines of transcript.

The Ohio Supreme Court in rejecting this argument stated:

Cunningham argues that counsel's penalty-phase closing argument was too brief and that counsel failed to argue relevant and humanizing defense mitigation testimony. Cunningham further contends that counsel should have made a more "powerful plea" to spare Cunningham's life. We rejected a similar argument in *State v. Bradley,* 42 Ohio St.3d at 144, 538 N.E.2d 373, finding that it is "nearly impossible for a reviewing court to discern the amount of emotion or feeling the argument showed." Moreover, judicial scrutiny of counsel's performance must be highly deferential, and reviewing courts should refrain from second-guessing tactical decisions of trial counsel. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674. During closing argument, Cunningham's counsel set forth the four sentencing options, outlined the mitigating factors established by the evidence, and asked the jury to consider those factors in making a determination. Counsel also informed jurors that they did not have to unanimously agree on the existence of mitigating factors before considering them against the aggravating circumstance, that any one mitigating factor is sufficient to support a life sentence, and emphasized that one juror alone could prevent the death penalty. Counsel also argued that Cunningham had accepted responsibility for his

actions and shown remorse. Whether defense counsel should have spoken more forcefully in urging a life sentence is a tactical question, and Cunningham has failed to establish that counsel's performance fell below an objective standard of reasonable representation. See *State v. Ballew* (1996), 76 Ohio St.3d 244, 256-257, 667 N.E.2d 369.

*State v. Cunningham,* 105 Ohio St.3d at 216-217.

A criminal defendant has a right to effective assistance of counsel at closing arguments. *See Bell,* 535 U.S. at 701-702; *Herring v. New York,* 422 U.S. 853, 865 (1975). "Counsel has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage. Closing arguments should 'sharpen and clarify the issues for resolution by the trier of fact,'" *Yarborough v. Gentry* 540 U.S. 1, 5-6,  (2003)(quoting *Bell*, 535 U.S. at 862).  "But which issues to sharpen and how best to clarify them are questions with many reasonable answers. Indeed, it might sometimes make sense to forgo closing argument altogether. Judicial review of a defense attorney's summation is therefore highly deferential, and doubly deferential when it is conducted through the lens of federal habeas." *Id*.

The Court finds this claim to be without merit. The jury heard the evidence Cunningham wanted repeated just a few minutes earlier. Counsel may have made a strategic decision not to repeat what the jury recently heard. It might have made sense to eliminate such repetition.  Even if counsel's closing argument should have been longer, the state court's decision is not contrary to or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

### E.    Jury Instructions

**Ground Eight**                              The jury instructions deprived Mr. Cunningham of his right to defend against the State's charges, to confront

the State's Witnesses, his right to a reliable sentence, as well as his rights to due process, and equal protection, and the State court decisions to the contrary are an unreasonable application of, or contrary to law, U.S. Const. Amends. V, VI, VIII, AND XIV.

### Sub-Claim (a)

Cunningham contends that two of the court's jury instructions violated his constitutional rights. The state court stated that defense counsel failed to object and waived all but plain error. Therefore, this sub-claim is procedurally defaulted.  If it were to be considered, the Court would find it to be without merit. The first error allegedly occurred when the court instructed the jury regarding inconsistencies in witness testimony. The judge gave the following instruction:

Also, discrepancies in the witness's testimony, or between his or her testimony and that of others, if there are any, does not necessarily mean that you should disbelieve that witness , as people commonly forget facts or recollect them erroneously after the passage of time. In considering a discrepancy in a witness testimony, you should consider whether such discrepancy concerns an important fact or a trivial fact.

Tr. Vol. 8, pg. 1457.

According to Cunningham, the trial court improperly instructed the jury that discrepancies in witnesses' testimony were insignificant. This was a decision to be made by the jury as the trier of fact. The jury instruction allegedly unduly influenced the jury and prejudicially affected Cunningham's constitutional rights. Pet. pg. 113. Despite clear recognition from both the United States Supreme Court that inconsistencies weigh heavily in the evaluation of witness testimony, the trial court instructed Cunningham's jury in a manner allegedly calculated to neutralize the impact of any inconsistencies among and between the State's witnesses. It is argued that this did significant damage to Cunningham's defense, which was primarily presented through the cross-examination of the State's witness. Pet. pgs. 115-16.

Because errors in jury instructions typically are matters of state law that do not warrant federal relief, the instruction must violate a constitutional right. *Estelle*, 502 U.S. at 72. Upon review, a court must determine whether there is a reasonable likelihood that the jury applied the instruction in a way that prevents consideration of constitutionally relevant evidence. *Boyde,* 494 U.S. at 380. The impropriety of the instruction must be considered in the context of the instructions as a whole and of the entire record. *Id*. Since jury instruction errors typically are matters of state law, the standard for demonstrating that a jury instruction caused constitutional errors in a habeas proceeding "is even greater than the showing required to establish plain error on direct appeal." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977).

The Ohio Supreme Court found this claim to be without merit.

Cunningham argues in proposition of law II that the trial court instructed the jury in a manner calculated to defeat the effectiveness of cross-examination. Cunningham complains that the court instructed the jury that inconsistencies in testimony did not affect witness credibility.

During the guilt phase, the trial court instructed the jury regarding the credibility of witnesses and the weight to be given their testimony. The court's instruction substantially tracked the standard credibility instruction in 4 Ohio Jury Instructions (2001), Section 405.20. The trial court, however, added the following language to the general charge:

"You should not decide any issue of fact merely on the basis of the number of witnesses who testify on each side of the issue. Rather, the final test in judging evidence should be the force and weight of the evidence, regardless of the number of witnesses on each side of an issue. The testimony of one witness, believed by you, is sufficient to prove any fact.

"Also, discrepancies in the witness' testimony, or between his or her testimony and that of others, if there are any, does not necessarily mean that you should disbelieve that witness, as people commonly forget facts or recollect them erroneously after the passage of time. In considering a discrepancy in a witness [sic] testimony, you should consider whether such discrepancy concerns an important fact or a trivial fact."

The trial court gave an identical preliminary instruction to the jury before trial.

Cunningham failed to object to this instruction and thus waived all but plain error. An erroneous jury instruction does not constitute plain error unless, but for the error, the outcome of the trial clearly would have been otherwise. *State v. Underwood* (1983), 3 Ohio St.3d 12, 3 OBR 360, 444 N.E.2d 1332, syllabus, following *State v. Long,* 53

-96-

Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804.

There was no error, plain or otherwise, in the trial court's credibility instruction. Crim.R. 30(B) permits the trial court to give the jury instructions of law relating to credibility and weight of the evidence. A single jury instruction may not be judged in artificial isolation, but must be viewed in the context of the overall charge. *State v. Price* (1979), 60 Ohio St.2d 136, 14 O.O.3d 379, 398 N.E.2d 772, paragraph four of the syllabus. When the credibility instruction is viewed in its entirety, it is clear that the trial court did not instruct the jury to disregard discrepancies in the evidence. Rather, the court charged the jury to consider discrepancies and weigh their significance when determining credibility.

Even were we to find error in the trial court's credibility instruction, plain error is lacking. Cunningham contends that this instruction significantly damaged his defense, which was presented primarily through cross-examination of the state's witnesses. Defense counsel sought to establish that Cunningham did not plan to rob or kill anyone that night, that he fired no shots, and that he did not participate in the robbery. The state's case against Cunningham rested primarily on the testimony of several eyewitnesses, and their testimony was consistent regarding Cunningham's degree of participation in the crimes. All but one of the surviving eyewitnesses identified Cunningham as one of the two assailants who held them at gunpoint while they were forced to surrender their valuables. Several witnesses testified that Cunningham fired his weapon into the group. Despite Cunningham's claims to the contrary, the eyewitness testimony of the state's witnesses was strongly corroborated. Cunningham has therefore failed to show that, but for the trial court's credibility instruction, the result of his trial would have been different.

Cunningham also argues that the effect of this guilt-phase instruction had a carryover effect on the penalty phase. We disagree. As discussed, there was no error in the trial court's credibility instruction. Moreover, the instruction was not repeated in the penalty phase. We reject proposition of law II.

*State v. Cunningham*, 105 Ohio St.3d at 207-208. The Ohio court opined that eyewitness testimony was strongly corroborated. Although there were some inconsistencies, this Court agrees with the Ohio court. Several witnesses testified that Cunningham stood up from the couch, retrieved his gun, and hit Coron Liles in the mouth. Tr. Vol. 5, pg. 1021; Tr. Vol 6,  pg. 1121. They also said that Cunningham ordered them into the kitchen, *Id*,  and pulled away the table the victims were hiding under. Tr. Vol. 5, pg. 1022; Tr. Vol. 6, pg. 1125; Tr.  Vol. 7, pg. 1279. Dwight Goodloe testified that he saw Cunningham shoot Liles in the mouth. Tr. Vol. 5, pg. 1028. Liles said that Cunningham shot him. Tr. Vol. 6, pg. 1130.  Again, even though Cunningham may not have fired his gun, the  evidence

-97-

showed that he participated. Since the murder charge against him was based on prior calculation and design, not under a principal offender theory, the jury's verdict was justified.

The court gave the standard credibility instruction. The jurors were to assign to the testimony of each witness such weight as it deemed proper. Viewing the instructions as a whole, the Court finds no violation of due process.

### Sub-Claim (b)

Cunningham also asserts that the additional jury instruction violated the Equal Protection Clause. This claim was not presented to the state courts and is procedurally defaulted. If it were to be considered, the Court would find it to be without merit. According to Cunningham, the jury should have determined the significance of any inconsistencies or contradictions without the trial court' s undue influence. Instead, the trial court's instruction allegedly created an uneven playing field for the State and the defense. The State was allegedly protected from any weaknesses in its case found in a witness's testimony. The jury was told that it is "normal" to have inaccuracies in one's memory. The jury was not told similarly, that a witness can tell the same lie consistently. The balance was allegedly not kept true between the State and the defense in violation of the Equal Protection Clause of the United States Constitution. Pet. 118-19.

The Respondent points out that the cases cited by Cunningham do not involve the Equal Protection Clause. *Snyder v. Massachusetts*, 291 U.S. 97, 122 (1934)(defendant may be excluded from a jury view if the court tells the jury that the view has no other function than to give them understanding of the evidence); *Wardius v. Oregon*, 412, 470, 475 (1973) (due process requires the conclusion that it is unfair to require one party to provide discovery without the same requirement being imposed on the opposing party). Cunningham has not sufficiently supported this argument. As

previously stated, the instructions as a whole preclude a finding that the particular instruction was unconstitutional.

### Sub-Claim (c)

Cunningham contends that the court's instruction had a carry-over effect to the sentencing phase of the trial. He argues that this claim was presented to the state courts in his *Murnahan* application. A *Murnahan* application involves ineffective assistance of appellate counsel, an issue not involved here. The claim must be presented to the state courts under the same theory in which it is later presented in federal court. *Lott*, 261 F.3d at 607, 611, 617, 619; *Wong,* 142 F.3d at 322. The instruction allegedly eviscerated the significance of the inconsistencies thus hampering the usefulness of the facts in mitigation. The jury did not hear this instruction during the penalty phase. There is no indication that they might have remembered this specific instruction. The Court finds this claim to be without merit.

### Sub-Claim (d)

Cunningham claims that Ohio's reasonable doubt jury instruction is unconstitutional. The Respondent agrees that this claim is preserved for federal habeas review. The reasonable doubt instruction given to the jury was Ohio's statutory definition of reasonable doubt. The Sixth Circuit has ruled that Ohio's definition of reasonable doubt does not violate due process. *Thomas v. Arn*, 704 F.2d 865, 867-69 (6th Cir. 1963); *Benge v. Johnson*, 312 F. Supp.2d 978, 1029 (S.D. Ohio, 2004); *Taylor v. Mitchell*, 296 F. Supp.2d 784, 814 (N.D. Ohio, 2003). The court's jury instruction on reasonable doubt was not improper.

### F.    Miscellaneous

**Ground Ten**                      Jeronique Cunningham's sentence of death is inappropriate, arbitrary and capricious and the State court decisions to the

contrary rest on unreasonable determinations of facts, are contrary to, or an unreasonable application of law.

Cunningham explains that his death sentence was arbitrary and capricious because he did not kill anyone, carried an inoperable gun, and lacked the prior calculation and design to kill anyone. This issue was raised in the Ohio Supreme Court but not discussed. The Court will consider it preserved for federal habeas review. The jury verdict and the trial court sentence were allegedly imposed without this critical fact. He contends that the Fifth, Sixth, Eighth, and Fourteenth Amendments require that there must be a meaningful basis upon which to distinguish between those few cases in which the death penalty is justified and the many cases in which it is not. He further argues that the Ohio court unreasonably applied clearly established law regarding the proportionality limitations on the arbitrary imposition of death sentences. Pet. pgs. 148-49. Cunningham's mitigation evidence, the physical evidence regarding his gun and bullets, the fact that he showed remorse, and the fact that he was not the principal offender allegedly mitigate in favor of a life sentence.

This claim is without merit because no proportionality review is required by the Constitution. *Buell*, 274 F.3d at 368 (citing *Pulley*, 465 U.S. at 44-51). Since Ohio law requires proportionality review, the review must be consistent with constitutional requirements. *Dickerson v. Mitchell*, 336 F. Supp.2d 770, 789 (N.D. Ohio, 2004), *rev'd on other grounds*, 453 F.3d 690 (2006). A trial judge has the duty to reweigh the aggravating circumstances and mitigating factors before determining whether to impose a death sentence or a life sentence, R.C. 2929.03(D)(3), and to state this finding in a separate opinion. R.C. 2929.03(F). The judge must examine the state's proportionality review to determine whether the imposition of a death sentence on the petitioner is patently unjust or "shocks the conscience." The court is not to second guess the state court's comparison of other cases in which the death penalty was imposed. *Dickerson*,, 336 F. Supp.2d at 789; *Taylor*, 296 F. Supp.2d at 839.

Because proportionality review is not required by the Constitution, states have a great latitude in defining the pool of cases used for comparison. *Wickline v. Mitchell*, 319 F.3d 813, 824 (6th Cir. 2003). The Sixth Circuit has held that by limiting proportionality review to previous cases wherein the death penalty has been imposed, the Ohio Supreme Court has complied with the latitude allowed. *Id.* at 824; *Buell*, 274 F.3d at 369. *See Leonard v. Warden, Ohio State Penitentiary*, 2010 WL 2889102 (S.D. Ohio, Jul. 20, 2010) (citing *Buell*, 274 F.3d at 369)(Constitution does not require the state to provide for a system of proportionality review so proportionality review is not constitutionally required, and the state therefore has "great latitude" in defining its system of proportionality review).

Review of the Ohio Supreme Court's opinion shows that it conducted a meaningful review of his sentence. Even though Cunningham may not have been the actual killer, Ohio law provides for a death sentence to be based on conduct amounting to prior calculation and design. R.C. 2929.04(A)(7).  The evidence showed the existence of prior calculation and design. Cunningham's sister testified that she saw him wiping off a gun. Other witnesses testified that Cunningham fired his gun and that he shot Coron Liles. Furthermore, the Supreme Court in *Tison v. Arizona*, 481 U.S. 137, 158 (1987), held that major participation in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy a sentence of death.

| **Ground Fourteen** | The cumulative impact of the errors addressed in this Petition render Mr. Cunningham's conviction and sentence unreliable and unconstitutional. |
|---|---|

In his last claim for relief, Cunningham contends that the impact of ineffective assistance of counsel, prosecutorial misconduct, trial court errors, invalid jury instructions, inadequate state remedies, and other errors combined to render his convictions and sentences unreliable. The Respondent argues that this claim was not exhausted in state court. Even though a cumulative error

claim was brought in post conviction, it allegedly involved a different group of factual claims and legal arguments. Review of the state court decision shows this statement to be correct. *See* Vol. 7, pgs. 373, 401-02. Cunningham contends that this claim has not been defaulted as it was presented to the Ohio court in his *Murnahan* application. A *Murnaha*n application preserves only claims of ineffective assistance of appellate counsel, a claim not involved in this case. Thus, this claim has not been exhausted and is procedurally defaulted. If considered, the Court would find it to be without merit as follows.

The Sixth Circuit ruled in *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005), that constitutional errors that would not individually support habeas relief cannot be cumulated to support it. *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006)(the law of this Circuit is that cumulative error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue). Further, Cunningham has not established that any error occurred in the state courts. Thus, this claim is without merit. *Baze*, 371 F.3d at 330.

### G.     Constitutionality

| **Ground Thirteen** | The Ohio court's determination that Ohio's death penalty scheme does not violate the Constitution is predicated on an unreasonable determination of facts, contrary to, or an unreasonable application of law. |
|---|---|

Cunningham has raised nineteen reasons why Ohio's statutory death penalty is unconstitutional. The Respondent contends that twelve of them have not been presented to the state court. Since most of his assertions, if not all, have been determined by the Sixth Circuit and found to be without merit, they will be briefly discussed.

### (a)     Least Restrictive and No Compelling Interest

The Supreme Court held that it could not require a state legislature to select the least restrictive

penalty as long as the penalty selected is not inhumanely cruel or disproportionate to the crime. Further, the Court in *Gregg v. Georgia*, 428 U.S. 153 (1976), rejected this argument, finding that the death penalty serves compelling state interests and is not "invariably disproportionate to the crime" of murder. *Id.* at 183, 187; *Williams,* 380 F.3d at 966; *Greer v. Mitchell*, 264 F.3d 663, 690 (6th Cir. 2001); *Madrigal v. Bagley*, 276 F.Supp.2d 744, 809 (N.D. Ohio, 2003).

      **(b)**      **Cruel and Unusual Punishment**

      In *Gregg*, 428 U.S. at 179, the Supreme Court rejected the argument that the death penalty is cruel and unusual punishment. The most marked indication of society's endorsement of the death penalty for murder is the legislative response to the Supreme Court's decision in *Furman v. Georgia*, 408 U.S. 238 (1972). Since *Furman*, the legislatures of at least 35 states have enacted new statutes that provide for the death penalty for at least some crimes that result in the death of another person. In 1974, the Congress of the United States enacted a statute providing the death penalty for aircraft piracy that results in death. These recently adopted statutes have attempted to address the concerns expressed by the Court in *Furman* primarily (i) by specifying the factors to be weighed and the procedures to be followed in deciding when to impose a capital sentence, or (ii) by making the death penalty mandatory for specified crimes. But all of the post-*Furman* statutes make clear that capital punishment itself has not been rejected by the elected representatives of the people. *Gregg*,  428 U.S. at 179-81. Ohio's death penalty statutes satisfy the concerns identified in *Furman*.

(c)  **Equal Protection**

Cunningham contends that Ohio's death penalty scheme is unconstitutional because it imposes the death penalty in a racially discriminatory manner. He must prove the existence of purposeful discrimination,  i.e., that the decision makers in his case acted with discriminatory purpose. *McCleskey v. Kemp,* 481 U.S. 279, 292 (1987). *See Wiles v. Bagley*, 2005 WL 1181859 * 43 (N.D. Ohio, May 18, 2005), *aff'd*, 561 F.3d 636 (6th Cir. 2009). The Sixth Circuit has rejected challenges claiming that race is a factor in the application of the death penalty in Ohio. *Greer*, 264 F.3d at 690 (petitioner failed to show a constitutionally significant risk of racial bias affecting Ohio's death penalty statute). The Supreme Court in *McCleskey*, 481 U.S. at 297, stated: "[b]ecause discretion is essential to the criminal process, we would demand exceptionally clear proof before we would infer that the discretion has been abused." McCleskey presented to the Court a statistical study of the affect of race on the imposition of the death penalty.  In Georgia, the prosecution sought the death penalty for 70% of black defendants with white victims but for only 19% of white defendants with black victims. *McCleskey* held that a capital defendant must show that the discriminators in the defendant's case acted with a discriminatory purpose. *Id.* 481 U.S. at 292; *Wiles*, 2005 WL 1181859 at * 43. There is no evidence that race was involved in Cunningham's case.

(d)  **Prosecutorial Discretion**

In *Gregg*, 428 U. S. at 188, the Supreme Court set forth the following capital sentencing procedures likely to prevent arbitrary and capricious imposition of the death penalty: (1) consideration of a pre-sentence report by the sentencing authority; (2) jury sentencing where the jury is adequately informed and given meaningful standards to guide its use of the information; (3) a bifurcated guilt phase/sentencing phase trial; (4) weighing of aggravating circumstances and mitigating factors; (5)

a sentencing decision based on specific findings; and (6) meaningful appellate review. Ohio's death penalty statutes contain these preventative sentencing procedures.  *Buell*, 274 F.3d at 367.  *See Bryd,* 209 F.3d at 539.

### (e)    Bifurcated Trial Denies Impartial Jury and Effective Assistance of Counsel

Death penalty statutes should be drafted in a manner that ensures that the sentencing authority is given adequate information and guidance. This is best accomplished by a system that provides for a bifurcated proceeding at which the sentencing authority is apprised of the information relevant to the imposition of sentence and is provided with standards to guide its use of the information. *Gregg,* 428 U.S. at 195.

Although two hearings are required, there is no requirement that the same jury sit for both hearings. *Lockhart v. McCree*, 476 U.S. 162, 174-77 (1986). The Supreme Court has upheld against constitutional attack the Georgia capital sentencing plan which provided that the same jury must sit in both phases of a bifurcated capital murder trial. *Id*. 476 U.S. at 179-80.

The Supreme Court stated that it is "unwilling to say that there is any one right way for a State to set up its capital sentencing scheme." *Spaziano v. Florida*, 468 U.S. 447, 464 (1984). *See Hartman,*, 333 F.Supp.2d at 675. In fact, the Court in *Lockhart* noted that a defendant may even benefit at the sentencing phase from any "residual doubts" that the jury might have had during the guilt phase, and the evidence in both trials would be repetitive which might not be consistently fair to the state and perhaps not even to the accused. *Lockhart*, 476 U.S. at 180-81.

### (f)    Ineffective Assistance of Counsel Caused by R.C. 2929.03(D)(1)

The statutory scheme requires that the findings of an examination pursuant to R.C. 2929.03(D)(1) be furnished to the trial court, the trier of fact, and the prosecutor, and any information

learned about the accused would be used against him at trial. Ohio Revised Code Section 2929.03(D)(1) provides in relevant part:

> Copies of any reports prepared under this division shall be furnished to the court, to the trial jury if the offender was tried by a jury, to the prosecutor, and to the offender or the offender's counsel for use under this division. The court, and the trial jury if the offender was tried by a jury, shall consider any report prepared pursuant to this division.

The Supreme Court found that this procedure enhances the search for the truth and does not render the proceedings unfair. *Williams v. Florida*, 399 U.S. 78, 82 (1970); *Frazier v. Mitchell*, 188 F. Supp.2d, 798, 838 (N.D. Ohio, 2001). The Sixth Circuit has also rejected this claim without discussion. *Cooey v. Coyle,* 289 F.3d289 F.3d 882, 925-26 *(2002).* In *Keene v. Mitchell*, 2004 WL 3325797 * 76 (S.D. Ohio Aug. 25, 2004), *aff'd,* 525 F.3d 461 (6th Cir. 2008), *cert denied,* 129 S.Ct. 1047 (2009) and *Jamison*, 100 F. Supp.2d at 763-64, the courts denied relief on this issue reasoning that a defendant is not required to request a pre-sentence investigation report or a mental examination. Also, R.C. 2929.024 allows a trial court to provide funds to an indigent defendant for investigative services, experts, and other necessary services to prepare a defense. Since an indigent defendant is not required to utilize R.C. 2929.03(D)(1), this procedure is not unconstitutional.

### (g)     Ohio Criminal Rule 11(3)(c) Encourages Guilty Pleas

Ohio Criminal Rule 11(C)(3) allows a judge, in the interest of justice, to dismiss capital specifications if the defendant pleads guilty or no contest. The specifications are not automatically dismissed. If the judge does not dismiss the specifications, the rule requires three judges to determine if the offense was aggravated murder and, if so, they must determine the presence or absence of the specified aggravating circumstances, if any, compared to any mitigating factors and impose sentence accordingly. In *United States v. Jackson*, 390 U.S. 570 (1968), the Supreme Court held

-106-

unconstitutional a statute that automatically dismissed the capital specifications when a defendant pled guilty or waived a jury. The death penalty could be imposed if recommended by a jury, but the statute did not include a procedure for imposing the death penalty on a defendant who waived a jury or pled guilty.  However, the Supreme Court has never decided that a statute allowing a defendant to avoid the possibility of a death sentence with a guilty plea was invalid.  *Benge,* 312 F. Supp.2d at 1033-34; *Frazier,* 188 F.Supp. at  839, *Jamison*, 100 F. Supp.2d at 763. There is no *per se* rule against encouraging guilty pleas.  *Benge*, 312 F. Supp.2d at 1034 (citing *Corbitt v. New Jersey*, 439 U.S. 212, 223 (1978)). Under Ohio Criminal Rule 11(C)(3), a defendant who pleads guilty to an indictment containing a death penalty specification can still receive the death penalty. *Id.*  The Sixth Circuit has rejected the same argument.  *See Cooey*, 289 F.3d at 924-25; *Byrd*, 209 F.3d at 539.

### (h)    No Guidelines to Balance Aggravating and Mitigating Factors

It appears that Cunningham is arguing that the Ohio statute is unconstitutional because it forbids the sentencer to return a life sentence unless the aggravating circumstances fail to outweigh the mitigating factors. This argument was rejected in *Buell*, 274 F.3d at 368.  The sentencer is required to have information sufficient to enable it to consider the character and individual circumstances of a defendant prior to imposition of the death penalty. *Sumner v. Shuman*, 483 U.S. 66,  72 (1987); *Buell*, 274 F.3d at 368. Further, the Supreme Court held that the death penalty is constitutional if it is imposed only after a determination that the aggravated circumstances outweigh the mitigating factors present in the particular case, or after a determination that there are no mitigating circumstances. *Blystone v. Pennsylvania*, 494 U.S. 299, 305 (1990).  *Buell* held that Ohio's death penalty statute complies with both *Sumner* and *Blystone. Id.* 274 F.3d at 368; *Williams,* 380 F.3d at 964-65*; Hartman*, 333 F. Supp.2d at 676-77; *Benge,* 312 F.3d at 1034-35.

-107-

Furthermore,  "the Eighth Amendment does not require states to adopt specific standards for instructing juries on mitigating circumstances." *Buchanan v. Angelone*, 522 U.S. 269, 274 (1998). Thus, the absence of any standard to balance the weight of mitigating circumstances with aggravating circumstances is inconsequential.  *Dickerson*, 336 F. Sup.2d at 791; *Hartman,* 333 F. Supp.2d at 675; *Madrigal*, 276 F. Supp.2d at 744.

> **(i)** **Jury Not Required to Identify Mitigating Factors Found and Why They Outweigh Aggravating Circumstances When Recommending Life**

> **(j)** **Absence of Consideration of Passion, Prejudice or Other Arbitrariness During Proportionality Review**

The Supreme Court has held to be constitutional a statute that did not enunciate specific factors to consider or a specific method of balancing the competing considerations. *Buell*, 274 F.3d at 368 *(*citin*g* 487 U.S. at 172-73); *Zant v. Stephens,* 462 U.S. 862, 875 (1983). It follow that if there is no statute enunciating specific factors to consider, jurors do not have to explain their reasons for recommending a life sentence. As long as a death penalty is imposed after a determination that the aggravating circumstances outweigh the mitigating factors present in the particular crime committed by the particular defendant, or that there are no mitigating factors, the sentence is constitutional. *Blystone*, 494 U.S. at 305; *Buell*, 274 F.3d at 368; *Wiles*, 2005 WL 1181859 at * 42.

> **(k)** **Proportionality Review**

This issue was discussed and rejected in the tenth ground for relief.

> **(l)** **Existence of Passion, Prejudice or Other Arbitrary Factor that the Jury Might Have Considered Cannot be Reviewed**

Cunningham complains that the Ohio death penalty statute, R.C. 2929.05, does not specifically require an inquiry and findings as to the possible influence of passion, prejudice, or any other arbitrary factor.  Such inquiry is allegedly necessary according to the state and federal constitutions.

-108-

A jury may consider mercy but Ohio law does not mandate that a trial court give a mercy instruction. *Mapes* v. Coyle, 171 F.3d 408, 415-16 (6th Cir. 1999). Sympathy and mercy are not relevant sentencing criteria. *Jones v. Bradshaw*, 489 F. Supp.2nd 786, 818 (N.D. Ohio, 7007).

**(m)      Ohio Law Fails to Require the Jury to Decide Appropriateness of the Death Penalty**

The Ohio Supreme Court is required to review the trial court's decision and also independently determine whether the sentence is proportionate, non-excessive, and appropriate in accordance with the aggravating circumstances and mitigating factors. This requirement gives the sentencing authority sufficient information to enable it to consider the character and individual circumstances of the defendant.  The court in *Buell,* 274 F.3d at 368-69, found that this procedure sufficiently detects who deserves the death penalty. *Benge*, 312 F.Supp.2d at 1035-36; *Jamison*, 100 F. Supp.2d at 765-66. The state is not required to prove that death is the only appropriate sentence. The Constitution requires only that the "statutory scheme channel the sentencer's discretion and allow the sentencer to consider mitigating evidence." *Hartman,* 333 F.Supp.2d at 677 *(citing Eddings v. Oklahoma*, 455 U.S. 104,110, 102 (1982)). Ohio's death penalty scheme satisfies these constitutional requirements.

**(n)      Conscious Desire to Kill**

The Constitution does not require a premeditated and conscious desire to kill before a death sentence can be imposed. *Tison*, 481 U.S. at 158; *Cowans v. Bagley*, 624 F. Supp.2nd 709, 823 (S.D. Ohio, 2008).

**(o)      Proof Beyond All Doubt**

In *In re Winship*, 397 U.S. 358, 364 (1970), the Supreme Court found that the standard required to convict a criminal defendant is proof beyond a reasonable doubt. *Wiles*, 2005 WL 1181859 at *34, 43. Also, the Sixth Circuit has upheld Ohio's definition of reasonable doubt against

constitutional attack in various contexts. *See Buell,* 274 F.3d at 366; *Thomas,* 704 F.2d at 869; *Hartman,* 333 F. Supp.2d at 677; *Davie,* 291 F. Supp.2d at 620.

      **(p)**    **Ohio Statutes Fail to Narrow Class of Persons Eligible for the Death *Penalty***

      In order to be considered constitutional, a capital sentencing scheme must "generally narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." *Lowenfield v. Phelps*, 484 U.S. 231, 244 (1988); *Zant*, 462 U.S. at 877; *Jackson v. Anderson*, 141 F. Supp.2d 811, 849 (N. D. Ohio, 2001). In Ohio, the jury must find at least one aggravating circumstance before the death penalty may be imposed. R.C. 2929.03. By satisfying this requirement, the jury narrows the class of persons eligible for the death penalty according to an objective legislative definition. *Zant*, 462 U.S. at 878; *Jackson*, 141 F. Supp.2d at 849. The narrowing function can be performed by the jury at either the sentencing phase or guilt phase of the trial. *Lowenfield*, 484 U.S. at 245; *Jamison*, 100 F. Supp.2d at 762. Unless the aggravating circumstance is vague or otherwise impedes the requirement that sentencing determinations be individualized, a state can select any substantive criteria it wants to decide who is eligible for the death penalty. *California v. Ramos*, 463 U.S. 992, 1001 (1983).

      **(q)**    **Ohio's Death Penalty Scheme Treats Felony-Murders More Harshly Than Premeditated Murders.**

      Based on *Tison,* 481 U.S. at 157, which held that the imposition of the death penalty on felony murders is not unconstitutional, the Court finds that there is no merit to this claim, the adjudication of which did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. *Hartman*, 333 F.Supp.2d at 678; *Keene*, 2004 WL 3325797 at * 77; *See Frazier*, 188 F. Supp.2d at 842 (treatment of death penalty murders more harshly than premeditated murders not unconstitutional

-110-

because R.C. 2929.04(A)(7) sufficiently narrows the class of homicides).

### (r) State Not Required to Prove Absence of Mitigation

The Supreme Court rejected this argument in *Walton v. Arizona*, 497 U.S. 639, 650 (1990), *overruled on other grounds by Ring v. Arizona,* 536 U.S. 584,(2002) (overruling *Walton* to the extent that it allows a sentencing judge, sitting without a jury, to find an aggravating circumstance necessary for imposition of the death penalty).  A state law which places the burden of proving mitigating factors on the defendant is not *per se* unconstitutional as long as a state's methods of allocating the burdens of proof does not lessen the state's burden to prove every element of the offense charged, or to prove the existence of aggravating circumstances. A defendant's constitutional rights are not violated by placing on him the burden of proving mitigating circumstances sufficiently substantial to call for leniency. The state still has the burden to show the existence of aggravating circumstances that outweigh the existence of any mitigating factors.  *Wiles*, 2005 WL 1181859 at * 43; *Madrigal*, 276 F. Supp.2d at 780.

### (s) Definition of Mitigating Factors Creates an Unreliable Death Sentence By Creating Non-statutory Aggravating Circumstances

Consideration of a non-statutory aggravating circumstance by a jury or court, even if contrary to state law, does not violate the Constitution.  *Smith,* 348 F.3d at 210 (citing *Barclay v. Florida,* 463 U.S. 939, 956-58 (1983)). "[T]he Federal Constitution does not prevent a state appellate court from upholding a death sentence that is based in part on an invalid or improperly defined aggravating circumstance either by reweighing of the aggravating and mitigating evidence or by harmless-error review." *Slagle,* 457 F.3d at 521 (quoting *Clemons* 494 U.S. at 741).

### (t) Nature and Circumstances of Mitigating Factor Is Improperly Used as a Non-statutory Aggravating Circumstance

Any reference to the nature and circumstances of the offense may be proper since "[u]nder R.C. 2929.03(F), a trial court or three-judge panel may rely upon and cite the nature and circumstances of the offense as reasons supporting its finding that the aggravating circumstances were sufficient to outweigh the mitigating factors." *Smith* 348 F.3d at 209-10. *Carter v. Mitchell,* 2006 WL 2334853 at *42 (S. D. Ohio, Aug. 10, 2006). In fact, Ohio law requires the court to do so. *State v. Stumpf,* 32 Ohio St.3d 95 (1987). The Sixth Circuit quoted *Stumpf* in *Slagle,* 457 F.3d at 519 -520. "[I]t would be illogical to require a three-judge panel to consider the nature and circumstances of the offense in making its decisions whether the aggravating circumstances were sufficient to outweigh the mitigating factors, yet to forbid that panel from relying upon and citing such nature and circumstances as reasons for its decision." *Id*. 32 Ohio St.3d at 99.

### (u) Ohio Statutes Violate International Law

There is no indication that international law influences rulings under the federal Constitution regarding the death penalty.  In *Stanford v. Kentucky,* 492 U.S. 361, 391 (1989), the dissent relied partly on the decisions of respected organizations. But the majority, although not expressly stating, appeared to reject the dissent's reliance on international law holding that the execution of juveniles was constitutional and that "no modern societal concerns" forbids the imposition of the death penalty on individuals as young as sixteen. *Buell*, 274 F.3d at 375; *Madrigal,* 276 F. Supp.2d at 809-10. *See Jamison*, 100 F. Supp.2d at 766-67 (international law does not preclude the State of Ohio from establishing and carrying out a capital punishment scheme). Since about 90 countries still maintain the death penalty, no international law exists that supports the prohibition of the death penalty.  *Id.*  The countries that have abolished the death penalty have done so for moral, political, or other reasons than out of a sense of legal obligation. *Buell*, 274 F.3d at 373. Abolition of the death penalty is not a

customary norm of international law. *Id.* Any reaction by the United States to a violation of law is a domestic question belonging to the executive or legislative branches.

## VII. Certificate of Appealability Analysis

The Court now must determine whether to grant a Certificate of Appealability ("COA") for any of Cunningham's claims. The Sixth Circuit Court of Appeals has determined that neither a blanket grant nor a blanket denial of a COA is an appropriate means by which to conclude a capital habeas case as it "undermine[s] the gate keeping function of certificates of appealability, which ideally should separate the constitutional claims that merit the close attention of counsel and this court from those claims that have little or no viability." *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001); *see also Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001)(remanding motion for certificate of appealability for district court's analysis of claims). Thus, in concluding this Opinion, this Court now must consider whether to grant a COA as to any of the claims Cunningham presented in his Petition pursuant to 28 U.S.C. § 2253.

That statute states in relevant part:

(c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from –
> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court . . .

(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

28 U.S.C. § 2253. This language is identical to the requirements set forth in the pre-AEDPA statutes, requiring the habeas petitioner to obtain a Certificate of Probable Cause. The sole difference between the pre-AEDPA and post-AEDPA statutes is that the petitioner must now demonstrate he was denied a constitutional right, rather than the federal right that was required prior to the AEDPA's enactment.

-113-

The United States Supreme Court interpreted the significance of the revision between the pre-AEDPA and post-AEDPA versions of that statute in *Slack v. McDaniel*, 529 U.S. 473 (2000). In that case, the Court held that § 2253 was a codification of the standard it set forth in *Barefoot v. Estelle*, 463 U.S. 880 (1983), but for the substitution of the word "constitutional" for "federal" in the statute. *Id.* at 483. Thus, the Court determined

> "[t]o obtain a COA under § 2253(c), a habeas prisoner must make a substantial
> showing of the denial of a constitutional right, a demonstration that, under *Barefoot*,
> includes showing that reasonable jurists could debate whether (or, for
> that matter, agree that) the petition should have been resolved in a different
> manner or that the issues presented were "'adequate to deserve encouragement to
> proceed further.'"

*Id.* at 483–04 (quoting *Barefoot*, 463 U.S. at 893 n.4).

The Court went on to distinguish the analysis a habeas court must perform depending upon its finding concerning the defaulted status of the claim. If the claim is not procedurally defaulted, then a habeas court need only determine whether reasonable jurists would find the district court's decision "debatable or wrong." *Id.* at 484. A more complicated analysis is required, however, when assessing whether to grant a COA for a claim the district court has determined is procedurally defaulted. In those instances, the Court opined, a COA should only issue if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* (emphasis supplied).

After taking the above standard into consideration, the Court finds as follows.

The Court will not issue a COA for Grounds 1(a)(ii), 2(b), (c), (d), (e), 3(b) and 8(b). These claims were never raised at any point in Cunningham's appeals and are unexhausted. Accordingly, they are unequivocally procedurally defaulted.

The Court will not issue a COA for Grounds 1(b), 8(c), 9(c) and 14 because they were raised in an Application to Reopen under Ohio Supreme Court Practice Rule XI(6) which is similar to an Application for Reopening under Ohio Appellate Rule 26(B) or *Murnahan*. These rules apply to ineffective assistance of appellate counsel, an issue not involved in these claims. Further, the claim must be presented to the state courts under the same theory in which it is later raised in federal court. Accordingly, they are unequivocally procedurally defaulted.

Also undisputed is the defaulted status of Grounds 3(a), 6(a), (b), (e), 8(a), and 12(a) and (b) because Cunningham failed to object. Therefore, a COA will not issue as to those claims.

The Court will not issue a COA for Ground 4 because the state court opinion clearly and expressly states that this claim is barred by the doctrine of *res judicata*. Accordingly, it is unequivocally procedurally defaulted.

Reasonable jurists would not debate the Court's findings on Ground 1(a)(i), because defense counsel knew during *voir dire* that Mikesell worked at the Allen County Children's Services, she said that she could be fair and impartial, she followed the evidence closely, and no one connected with the Allen County Children's Services ever spoke to her about Cunningham. Further, she denied making this statement to the investigator who raised it during post-conviction proceedings.

The Court will not issue a COA for Ground 1(c) (ineffective assistance of counsel for failing to conduct *voir dire*) because although most jurors were somewhat familiar with the case, all of them promised that they could decide the case based on the merits, counsel knew that one of the jurors worked for the Allen County Children's Services, and she was asked whether she had any information concerning the case. No prejudice has been shown as this juror did not learn about the information in her alleged statements until after the trial began. No jurist of reason would debate these findings.

Reasonable jurists would not debate the Court's finding on Ground 2(a) (denied opportunity to life question jurors) because the jurors were informed by the court about mitigating factors, if any, and asked if they could weigh them against aggravating circumstances. Defense counsel are not entitled to address every mitigating factor they believe might be established during trial.

The Court will not issue a COA for Ground 3(c) (counsel were ineffective for not objecting to the trial court's erroneous implementation of Ohio Crim. R 16(B)(1)(g)) because pretrial statements that were never adopted by witnesses are not subject to in camera inspection and failure to elaborate does not amount to inconsistencies. Further, power to grant a writ of habeas corpus only extends to errors in the application of federal law. No jurist of reason would debate these findings.

No COA will issue for Ground 5 (failure to hire a ballistics expert to prove Cunningham was not the actual killer). No jurist of reason would debate the Court's finding that Cunningham participated in the robbery and was seen firing a gun. The amount and type of bullets found was not conclusive as to whether or not Cunningham fired a weapon.

The Court will not issue a COA for Ground 6 (c) (prosecutor's characterization of the murders as the "most cold-blooded inhuman murder anyone could imagine") because, even if it was improper, there is nothing in the record suggesting that the outcome of the trial would have been different without it. Also, no COA will issue for Sub-Claim (d) (prosecutor's comment that Cunningham's statement to the jury was unsworn) because in Ohio, prosecutorial comment on the lack of cross-examination on an defendant's unsworn statement is acceptable. No jurist of reason would debate these findings.

No COA will issue for Sub-Claims (a), (b), (c), (d) and (e) of Ground 7 (ineffective assistance of counsel during the mitigation phase of the trial). The evidence contained in the record of the Allen County Children's Services was presented to the jury by Cunningham's sister, mother, and a forensic

psychologist.  Records that were ordered by the court to be produced included records of Allen County Children's Services, Allen County Juvenile Court, Family Resource Center, Department of Corrections, hospitals, and doctors. Any testimony from a collateral expert would have been cumulative and unnecessary. Failure to present evidence that Cunningham failed to pass a Voice Stress Analyzer test cannot be used to cast residual doubt as to guilt as residual doubt is not a mitigating factor under Ohio law. Closing arguments may have been brief but the evidence Cunningham wanted heard was repeated a few minutes earlier and counsel made a strategic decision to avoid repetition. No jurist of reason would debate the Court's conclusions regarding these claims.

Reasonable jurists also would not debate the Court's finding that Ground 8 (d) (reasonable doubt jury instruction unconstitutional) because the Sixth Circuit has ruled that Ohio's definition of reasonable doubt does not violate due process.

The Court will not issue a COA for Sub-Claim (a) of Ground 9 (trial court failed to conform its sentencing opinion to the requirements of R.C. 2929.03) because any error was cured when the Ohio Supreme reweighed the trial court's sentencing decision.  No jurist of reason would debate this finding. The Court will not grant a COA for Sub-Claim (b) (Cunningham not given opportunity to argue residual doubt during the penalty phase of the trial ) because in Ohio, residual doubt cannot be considered a mitigating factor as it is irrelevant to the issue of whether the defendant should be given the death penalty. This finding is unequivocal.

No COA will issue for Ground 10 (Cunningham's death sentence is inappropriate, arbitrary, and capricious) because proportionality review is not required. Further, the Sixth Circuit has held that Ohio has appropriately limited proportionality review to previous cases wherein the death penalty had been imposed. No jurist of reason would debate this finding.

Reasonable jurists also would not debate the Court's findings regarding Ground 11 (a) and (b) (trial unfair because of publicity and ineffective assistance of counsel for failing to submit newspaper clippings to the court with a motion to change venue) because the court properly *voir dired* the jurors and each of them promised to decide the case based on the evidence, and the trial court was aware of the publicity.

No COA will issue for Ground 12 (c) (ineffective assistance of counsel  for failing to object to many photographs) because the court found the photographs to be probative, and nothing in the record showed doubt as to guilt if the jurors had not seen them. No jurist of reason would debate this finding.

The Court will not issue a COA for claims set forth in Grounds 13 ( unconstitutionality of the death penalty) and 14 (cumulative error). These claims occur almost pro forma in capital habeas petitions but are routinely denied. Reasonable jurists would agree with this finding.

## VIII. Conclusion

For the foregoing reasons, the Petition is denied. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith as to all grounds for relief, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed.R.App.P. 22(b).

IT IS SO ORDERED.


Date: 12/7/10                                    /s/ Patricia A. Gaughan
                                                 JUDGE PATRICIA A. GAUGHAN
                                                 UNITED STATES DISTRICT JUDGE