**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Jeronique D. Cunningham, | : | Case No. 3:06 CV 167 |
| | : | |
| Petitioner, | : | |
| | : | **CHIEF JUDGE PATRICIA A.** |
| | | **GAUGHAN** |
| vs. | : | |
| | : | |
| Tim Shoop, Warden, | : | **MEMORANDUM OF OPINION** |
| | : | **AND ORDER** |
| Respondent. | : | |

**INTRODUCTION**

Before the Court in this capital habeas case is Petitioner Jeronique Cunningham's

Motion to Compel Documentary Discovery (Doc. 230) and Motion for Funds to Employ an

Investigator (Doc. 231).  Cunningham makes these requests to support the factual

development of two juror-bias claims that the Sixth Circuit Court of Appeals has remanded

to this Court for an evidentiary hearing.  *See Cunningham v. Shoop*, 23 F.4th 636, 662-63

(6th Cir. 2022).  Respondent Warden Tim Shoop opposes the motions.  (Doc. 233).

Cunningham has replied to Respondent's opposition brief.  (Doc. 236).  For the following

reasons, the Court GRANTS Cunningham's motions.

**RELEVANT PROCEDURAL HISTORY**

Cunningham was convicted and sentenced to death in an Ohio state court nearly twenty-one years ago for the aggravated murder of three-year-old Jala Grant and seventeen-year-old Leneshia Williams.  *See State v. Cunningham*, 105 Ohio St. 3d 197, 197-200 (Ohio 2004).  The deaths occurred when Cunningham and his half-brother Cleveland Jackson robbed and shot several friends and their family members.  *Id*.[1]  Jackson, who was tried after Cunningham, also was convicted of the murders and sentenced to death.  *See State v. Jackson*, 107 Ohio St 3d 53 (2005).

Cunningham's convictions and sentence were affirmed on direct appeal in 2004.  *State v. Cunningham*, 105 Ohio St. 3d at 224.  Meanwhile, Cunningham discovered from Jackson's investigator that the jury foreperson at his trial, Nicole Mikesell, may have obtained prejudicial outside information about him before trial from colleagues at the social services agency where she worked as an investigator at the time.  (*See* Doc. 192-4 at 119, 310-11 (Post-Conv. Pet. Exs. D, R).)[2]  He asserted a claim of juror bias based on this information, among other claims, in his state post-conviction petition.  (*Id*. at 84-86 (Post-

---

[1]  The facts and procedural history of this case are more fully set forth in *State v.Cunningham*, 105 Ohio St. 3d 197 (Ohio 2004), and this Court's Memorandum of Opinion and Order, dated December 7, 2010 (Doc. 157).

[2]  For ease of reference, all citations to page numbers of documents filed in the Court's electronic court filing system ("ECF") are to the ECF-assigned page numbers of the individual documents, not to the documents' original page numbers or the ECF "PageID" numbers.

2

Conv. Pet.).)  The trial court denied his petition without allowing discovery or an evidentiary hearing.  (Doc. 192-5 at 8-30).  The state appellate court affirmed that judgment, *see State v. Cunningham*, No. 1 04 19, 2004 WL 2496525, at \*17 (Ohio Ct. App. Nov. 8, 2004), and the Ohio Supreme Court denied discretionary review, *State v. Cunningham,* 105 Ohio St. 3d 1464 (2005).

In 2006, Cunningham filed a petition for writ of habeas corpus in this Court, asserting fourteen claims for relief.  (Doc. 19).  His first claim asserted juror bias based on Juror Mikesell's knowledge of extra-judicial information about him.  (Doc. 19-2 at 1-6).  In 2008, while conducting discovery related to that juror-bias claim, Cunningham uncovered additional information regarding Juror Mikesell, indicating that she told her fellow jurors during deliberations that she knew the families of the murder victims and may have to work with them in the future, and pressured the jurors to recommend a death sentence.  (*See* Docs. 103-1, 104-1 (Juror Affs.).)  Cunningham then requested and was granted permission to amend his habeas petition to include a second juror-bias claim based on this new information.  (Doc. 141).  This Court denied Cunningham's petition in 2010, rejecting the outside-information juror-bias claim on the merits and the family-relationship juror-bias claim as procedurally defaulted and without merit.  (Doc. 157 at 26-32).

Cunningham appealed that judgment to the Sixth Circuit, and in 2014, the circuit court issued a per curiam opinion addressing Cunningham's claim of juror bias based on Mikesell's relationship with the victims' families.  *See Cunningham v. Hudson*, 756 F.3d

3

477 (6th Cir. 2014).  It determined that this juror-bias claim was unexhausted and was "not plainly meritless," as "evidence of [Mikesell's] alleged relationship with the families of the victims raises grave concerns about her impartiality . . . ."  *Id*. at 486-87.  It, therefore, vacated this Court's judgment denying Cunningham's petition and remanded the petition to this Court "to determine whether it is appropriate to stay-and-abey the petition while Cunningham returns to state court to exhaust this claim."  *Id*. at 479.  This Court then granted Cunningham's request to stay this matter and hold it in abeyance while he exhausted his claim in state courts, observing that "Cunningham [had] not engaged in abusive litigation tactics or intentional delay[,]" but had "diligently sought to develop the factual basis of this claim in both state and federal court."  (Doc. 173 at 6).

On remand to the state trial court, Cunningham filed a second-in-time petition for post-conviction relief and motion for leave to file a delayed motion for a new trial, each asserting a single claim of juror bias based on both Mikesell's alleged extra-judicial information about him and her alleged relationship with the victims' families.  (Doc. 188-1 (Second Post-Conv. Pet.) at 38-40; Doc. 209-1 (New-Trial Motion) at 14-17).  He also filed a motion for funds to employ an investigator (Doc. 209-1 at 4-10) and requested discovery and an evidentiary hearing.  (Doc. 188-1 at 31; Doc. 209-1 at 17).  In 2015, the trial court denied the post-conviction petition and motion for a new trial on procedural grounds without permitting discovery or an evidentiary hearing; denied the motion for funds to employ an investigator; and granted the State's motion to dismiss.  (Doc. 188-1 at 223-

4

38).

Cunningham appealed the trial court's judgment to the state appellate court, which affirmed the ruling, also on procedural grounds, in 2016.  (Doc. 188-2 at 159-83). Cunningham appealed that judgment to the Ohio Supreme Court, which declined jurisdiction over the appeal the following year.  (Doc. 188-3 at 96).

Cunningham then returned to this Court in 2018 and filed an amended habeas petition.  (Doc. 200).  He also filed a motion for discovery.  (Doc. 206).  In 2019, this Court again denied Cunningham's family-relationship juror-bias claim as procedurally defaulted and meritless, and denied his motion for discovery.  (Doc. 211).

Two years later, the Sixth Circuit reversed that judgment and again remanded the case, this time ordering this Court to "conduct an evidentiary hearing to investigate Cunningham's two juror-bias claims." *Cunningham*, 23 F.4th at 678.  As to the outside-information juror-bias claim, the court ruled that the Ohio courts unreasonably applied *Remmer v. United States*, 347 U.S. 227 (1954), which holds that a prima facie showing of juror bias entitles a defendant to a hearing, when they rejected the claim without conducting a hearing.  *Id*. at 650.  It reasoned that any "colorable claim" of outside influence entitles a defendant to a "*Remmer* hearing," and it held that Cunningham had met that standard by alleging that Mikesell had obtained external information about Cunningham by speaking to her social services colleagues or reviewing his file.  *Id*. at 651.

The circuit court further held that Cunningham was entitled to a hearing on the

5

family-relationship juror-bias claim under 28 U.S.C. § 2254(e)(2). *Id.* at 662. It found that

the claim was not procedurally defaulted because Cunningham's diligence in developing it

demonstrated cause to excuse any default. *Id*. at 659. And, while it did not dispute that

Federal Rule of Evidence 606(b), which generally prohibits jurors from testifying about jury

deliberations to impeach a verdict, may apply to exclude some evidence at the hearing, the

court suggested that Cunningham conceivably could develop on remand other admissible

evidence, such as the testimony of a victim's family member. *Id*. at 661 62.

The Sixth Circuit carefully set forth its remedy as follows:

> To recap, Cunningham is entitled to habeas relief for both of his juror-bias
> claims. When we determine in a habeas case that a *Remmer* hearing is in order,
> we often grant habeas relief unless the State takes steps to conduct a proper
> evidentiary hearing on juror misconduct within a reasonable time. *See Ewing*,
> 914 F.3d at 1034; *see also Nian*, 994 F.3d at 759 (citing *Ewing* and issuing the
> same remedy). Our customary remedy makes sense for Cunningham's first
> juror-bias claim. But Cunningham receives relief for his second juror-bias claim
> under § 2254(e)(2), which governs the federal courts    not the state courts. And
> conducting parallel hearings about the same juror in the state and federal courts
> with the same witnesses makes no sense, depletes judicial resources, and wastes
> everyone's time.
>
> We therefore order the federal district court to conduct a *Remmer* hearing to
> investigate both juror-bias claims. Cunningham is entitled to a "'meaningful
> opportunity' to demonstrate jury bias at the *Remmer* hearings." *Lanier*, 988
> F.3d at 295 (quoting *Herndon*, 156 F.3d at 637). Under Sixth Circuit precedent,
> Cunningham bears the burden of proving actual or implied bias at that hearing.
> *See Zelinka*, 862 F.2d at 95; *Treesh*, 612 F.3d at 437. Because this evidentiary
> hearing will transpire nearly two decades after Cunningham's trial, we
> acknowledge that it may be complicated to locate jurors and to navigate the
> jury's waning memories. *See Lanier*, 988 F.3d at 298. "[T]he district court
> should [be] extra attentive [and] ensur[e] that this belated, postverdict hearing
> would serve as an adequate forum for investigating juror bias, especially
> because the accuracy of the information yielded at *Remmer* hearings declines

6

over time." *Id*. If the hearing turns out to be "both constitutionally deficient and practically pointless," *id.*, Cunningham is free to seek habeas relief again, *see Ewing*, 914 F.3d at 1033.

*Id.* at 662-63.

Having returned to this Court, Cunningham now has filed a Motion to Compel Documentary Discovery from Respondent and/or Allen County Children's Services, where Juror Mikesell was employed, and a Motion for Funds to Employ an Investigator.

**ANALYSIS**

**A.      The Sixth Circuit's Mandate**

As a preliminary matter, Respondent argues that because of a recent change in the law governing factual development in federal habeas proceedings, Cunningham is not entitled to discovery or an evidentiary hearing on his juror-bias claims. (Doc. 233 at 1-2). He urges this Court to disregard the Sixth Circuit's mandate to hold a hearing due to this change in the law, and instead conduct "a *de novo* assessment [of] the order for evidentiary hearing," which he contends will demonstrate that a hearing is now barred. (*Id*.)

The doctrine of law of the case provides that findings made at one point in litigation become the binding law of the case for subsequent stages of that same litigation. *United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994) (citing *United States v. Bell*, 988 F.2d 247, 250 (1st Cir. 1993)). A related theory is the mandate rule, which "requires lower courts to adhere to the commands of a superior court." *Id*. (citing *Bell*, 988 F.2d at 251). Once an appellate court remands a case for further proceedings, therefore,

7

> "the trial court must 'proceed in accordance with the mandate and the law of the case as established on appeal.' The trial court must 'implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces.'"

*Id*. (quoting *United States v. Kikumura*, 947 F.2d 72, 76 (3d Cir. 1991) (citations omitted)).

Appellate courts have broad discretion to issue either a general or limited remand. *United States v. Campbell*, 168 F.3d 263, 265 (6th Cir. 1999) (citing 28 U.S.C. § 2106). General remands "give district courts authority to address all matters as long as remaining consistent with the remand." *Id*. Limited remands, on the other hand, "explicitly outline the issues to be addressed by the district court and create a narrow framework within which the district court must operate." *Id*. "Traditionally, the mandate rule instructs that the district court is without authority to expand its inquiry beyond the matters forming the basis of the appellate court's remand." *Id*.

In this case, the Sixth Circuit's mandate is limited and explicit:  this Court must conduct an evidentiary hearing on Cunningham's two juror-bias claims.  Nevertheless, Respondent argues that an exception to the mandate rule applies because there has been a "subsequent contrary view of the law by a controlling authority." (Doc. 233 at 2 (quoting *Petition of United States Steel Corp.*, 479 F.2d 489, 494 (6th Cir. 1973).)  He maintains that two Supreme Court cases decided shortly after the Sixth Circuit delivered the mandate at issue here    *Shinn v. Ramirez*,    U.S.   , 142 S. Ct. 1718 (2022), and *Shoop v. Twyford*, U.S.   , 142 S. Ct. 2037 (2022)    changed the law regarding factual development in federal habeas proceedings in a manner that precludes a hearing on Cunningham's claims.

8

Generally, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which governs federal habeas petitions, limits habeas courts' review to evidence presented in the state-court record. *See* 28 U.S.C. § 2254(d)(2); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). In some circumstances, however, AEPDA's § 2254(e)(2) permits a federal habeas court to grant an evidentiary hearing or admit new evidence. Its standard for the expansion of the state-court record is a "stringent one," however, barring evidentiary hearings "[i]n all but . . . extraordinary cases." *Ramirez*, 142 S. Ct. at 1728. It provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that
>
> (A)  the claim relies on
>
> > (i)  a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> > (ii)  a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B)  the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

The Supreme Court interpreted § 2254(e)(2)'s opening clause in *Michael Williams v. Taylor*, 529 U.S. 420 (2000), to require some degree of fault on the applicant's part before the provision will apply and the requirements set forth in subsections (A) and (B) are

9

triggered.  The Court held that "a failure to develop the factual basis of a claim is not established unless there is a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Id*. at 432.  Under AEDPA, therefore, district courts may conduct a hearing to introduce new evidence in support of a claim "only if [the prisoner] was not at fault in failing to develop that evidence in state court, or (if he was at fault) if the conditions prescribed in § 2254(e)(2) were met." *Holland v. Jackson*, 542 U.S. 649, 652-53 (2004).

The Sixth Circuit, in applying *Michael Williams* to Cunningham's family-relationship juror-bias claim, determined that Cunningham was entitled to an evidentiary hearing on the claim under § 2254(e)(2) because he had been diligent in attempting to develop its factual basis in state-court proceedings and, therefore, was not at fault for the state-court record's lack of development.  *Cunningham*, 23 F.4th  at 655-59.  As the court found diligence on Cunningham's part, there was no need for it to consider whether he met the requirements of § 2254(e)(2)(A) and (B).

Respondent contends, however, that the circuit court's analysis no longer holds, and Cunningham is no longer entitled to a hearing on his juror-bias claims, because *Ramirez* and *Twyford* now require that "factual development [beyond the state-court record] for any reason must first pass the statutory test of [§] 2254(e)(2)," including the two conditions of § 2254(e)(2)(A) and (B), which Cunningham cannot meet.  (Doc. 233 at 1-2, 8.)  The Court disagrees.

10

In both *Ramirez* and *Twyford,* the Supreme Court restricted the ability of federal habeas courts to facilitate the development of or consider new evidence.  In *Ramirez*, the Court held that "under § 2254(e)(2), a federal habeas court may not . . . consider evidence beyond the state-court record based on ineffective assistance of state postconviction counsel." *Ramirez*, 142 S. Ct. at 1734.  And in *Twyford*, the Court held that a district court's transportation order permitting a prisoner to obtain neurological testing in search of new evidence to support his habeas petition was not authorized under the All Writs Act or § 2254(e)(2) where the petitioner did not show that the desired evidence would have been admissible in supporting a claim for relief.  *Twyford*, 142 S. Ct. at 2044-46.

But in neither of these cases did the Court change its well-established construction of § 2254(e)(2).  Indeed, in *Ramirez*, the Court expressly followed *Michael Williams*' interpretation of § 2254(e)(2)'s opening clause, upon which the Sixth Circuit heavily relied in ruling that Cunningham was entitled to a hearing on his family-relationship juror-bias claim.  The *Ramirez* Court explained the historical significance of *Michael Williams*' holding that  "§ 2254(e)(2) applies only when a prisoner 'has failed to develop the factual basis of a claim[,]' [and] 'fail' . . . mean[s] that the prisoner must be 'at fault' for the undeveloped record in state court." *Ramirez,* 142 S. Ct. at 1734 (quoting *Michael Williams*, 529 U.S. at 432); *see also Twyford*, 142 S. Ct. at 2044 (adhering to  *Michael Williams*' § 2254(e)(2) analysis).  And it concluded that a prisoner is "at fault" even when state post-conviction counsel is negligent, noting that in *Michael Williams* it held that fault

11

for failing to develop the state-court record under § 2254(e)(2) could be "'attributable to the prisoner *or the prisoner's counsel*.'" *Id*. at 1735 (quoting *Michael Williams*, 529 U.S. at 432) (emphasis added by *Ramirez* Court).

Furthermore, *Ramirez* and *Twyford* do not apply at all to Cunningham's outside-information juror-bias claim. The Sixth Circuit held that Cunningham was entitled to a hearing on that claim based on *Remmer v. United States* which, as noted above, holds that a prima facie showing of juror bias entitles a defendant to a hearing not § 2254(e)(2). *Cunningham*, 23 F.4th at 650-54. And, neither *Ramirez* nor *Twyford* concerned a *Remmer* claim.

*Ramirez* and *Twyford*, therefore, did not change the law controlling the Sixth Circuit's determination that Cunningham is entitled to an evidentiary hearing on his two juror-bias claims, and this Court must follow the circuit court's mandate.

### B.     Cunningham's Discovery Requests

A federal habeas petitioner, "unlike the usual civil litigant, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Discovery in habeas cases is governed by Rule 6 of the Rules Governing § 2254 Cases in the United States District Courts, which permits petitioners to initiate discovery available under the federal civil rules "if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise." Habeas R. 6(a). "Good cause" for discovery under Rule 6 exists only "'where specific allegations before the court

12

show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief . . . .'" *Bracy*, 520 U.S. at 908 09 (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)).

The burden is on the petitioner to demonstrate the materiality of the information requested. *See Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004). Habeas Rule 6 does not "sanction fishing expeditions based on a petitioner's conclusory allegations." *Id.* (internal quotation marks and citations omitted). Instead, the petitioner "must set forth specific allegations of fact." *Id*. (internal quotation marks and citations omitted).

Cunningham has satisfied that burden here. He makes two basic requests: (1) funds to employ an investigator and (2) records of Allen County Children Services, where Juror Mikesell worked at the time of the trial. The records include those relating to Cunningham; Cleveland Jackson, his accomplice; Terra and Bettye Cunningham, Cunningham's sister and mother, respectively; Lenishia Williams and Jala Grant, the murder victims; Loyshane Liles, Cunningham's friend and the target of the theft; and friends and members of the Liles family who were guests at Liles' house the evening of the murder: Tomeka Grant, James Grant (Jala Grant's father), Coron Liles, Dwight Goodloe Jr., and Armetta Robinson. (*Id*. at 6.)[3] Cunningham contends these records will reveal information that is relevant and material to

---

[3]     The Court notes that several of the individuals' names referenced in Cunningham's document requests are spelled differently in other parts of the record. But for the sake of clarity, the Court will use the spelling provided in the discovery motion at issue here (Doc. 230).

13

his claims, such as whether Juror Mikesell ever had direct contact with Cunningham or his family or with the victims and their families, and the nature and source of the outside information about Cunningham that she obtained and when she obtained it. (*Id*. at 5-6.)

The Sixth Circuit emphasized that Cunningham is entitled to a "meaningful opportunity" to demonstrate juror bias at the evidentiary hearing it has ordered. *Cunningham*, 23 F.4th at 662 (citation and quotation marks omitted). And, Cunningham has demonstrated good cause for these requests. Funds for an investigator and access to the requested records will assist Cunningham in locating the jurors and are likely to lead to the discovery of relevant evidence that could be presented at the evidentiary hearing and may entitle him to relief on his juror-bias claims. *Bracy*, 520 U.S. at 908-09.

Respondent argues that "any grant of discovery would be an abuse of discretion because [Evidence Rule 606(b)] would render any fruits of discovery inadmissible for any purpose." (Doc. 233 at 2, 16-18.) As explained above, that rule generally prohibits jurors from testifying about jury deliberations to impeach a verdict. Fed. R. Civ. P. 606(b). The Court also notes the Supreme Court's admonition in *Twyford* that habeas courts "must, before facilitating the development of new evidence, determine that it could be legally considered in the prisoner's case." *Twyford*, 142 S. Ct. at 2044. As Cunningham responds, however, evidence demonstrating a relationship between Juror Mikesell and the victims and/or their families, or evidence of her exposure to Cunningham's records or her colleagues at the social services agency who knew him before or during trial "cannot be

14

characterized as jury deliberations" and, therefore, are admissible evidence. (Doc. 236 at 7.)

Indeed, the Sixth Circuit directly addressed this issue, explaining that it "would . . . be

possible for Cunningham to prove that Mikesell was actually biased without relying on juror

testimony in violation of [Rule 606(b),]" and it even provided several examples of relevant,

admissible evidence that he could offer. *Cunningham*, 23 F.4th at 661-62.

In accordance with the Sixth Circuit's mandate, therefore, Cunningham is entitled to

funds for an investigator and the records he seeks from Allen County Children Services.

### CONCLUSION

For the foregoing reasons, this Court grants Cunningham's motion to compel

documentary discovery and motion for funds to employ an investigator.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
Chief Judge
United States District Court

Dated:  4/10/23

15