**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Jeronique D. Cunningham, | : | **Case No. 3:06 CV 167** |
| | : | |
| Petitioner, | : | |
| | : | **JUDGE PATRICIA A. GAUGHAN** |
| vs. | : | |
| | : | |
| Tim Shoop, Warden, | : | **MEMORANDUM OF OPINION** |
| | : | **AND ORDER** |
| Respondent. | : | |

**INTRODUCTION**

This matter is before the Court upon Respondent Warden Tim Shoop's Motion in Limine. (Doc. 248.)  Respondent asks this Court to exclude evidence of juror deliberations that Petitioner Jeronique Cunningham obtained through discovery. Petitioner opposed the motion and Respondent filed a reply. For the following reasons, the motion is DENIED without prejudice as premature.

**RELEVANT PROCEDURAL HISTORY**

Petitioner was convicted and sentenced to death in an Ohio state court 22 years ago for the aggravated murder of three-year-old Jala Grant and 17-year-old Leneshia Williams.  *See State v.*

*Cunningham*, 105 Ohio St. 3d 197, 197-200 (Ohio 2004).  The deaths occurred when Petitioner and his half-brother Cleveland Jackson robbed and shot several friends and their family members. *Id*.[1]  Jackson, who was tried after Petitioner, also was convicted of the murders and sentenced to death.  *See State v. Jackson*, 107 Ohio St 3d 53 (2005).

Petitioner's conviction and sentence were affirmed on direct appeal in 2004. Meanwhile, Petitioner discovered that the jury foreperson at his trial, Nicole Mikesell, may have obtained prejudicial outside information before trial from colleagues at Allen County Children's Services (ACCS), a social-services agency where she worked as an investigator at the time.  (*See* Doc. 192-4 at 119, 310-11 (Post-Conv. Pet. Exs. D, R).)[2]  He asserted a claim of juror bias based on this information, among other claims, in his state post-conviction petition.  (*Id*. at 84-86 (Post-Conv. Pet.).)  The trial court denied his petition without allowing discovery or an evidentiary hearing.  (Doc. 192-5 at 8-30.)  The state appellate court affirmed that judgment, *see State v. Cunningham*, No. 1–04–19, 2004 WL 2496525, at *17 (Ohio Ct. App. Nov. 8, 2004), and the Ohio Supreme Court denied discretionary review. *State v. Cunningham,* 105 Ohio St. 3d 1464 (2005).

---

[1] The facts and procedural history of this case are more fully set forth in *State v. Cunningham*, 105 Ohio St. 3d 197 (Ohio 2004), and this Court's Memorandum of Opinion and Order, dated December 7, 2010 (Doc. 157).

[2] For ease of reference, all citations to page numbers of documents filed in the Court's electronic court filing system ("ECF") are to the ECF-assigned page numbers of the individual documents, not to the documents' original page numbers or the ECF "PageID" numbers.

2

In 2006, Petitioner filed a Petition for Writ of Habeas Corpus in this Court, asserting 14 claims for relief.  (Doc. 19.)  His first claim asserted juror bias based on Juror Mikesell's knowledge of extra-judicial information about him.  (Doc. 19-2 at 1-6.)  Petitioner alleges that in 2008, while deposing jurors during discovery related to that juror-bias claim, Petitioner uncovered additional information indicating that Juror Mikesell told her fellow jurors during deliberations that she knew the families of the murder victims and may have to work with them at ACCS in the future, and pressured the jurors to recommend a death sentence.  (*See* Docs. 103-1, 104-1 (Juror Affs.).)

Petitioner's counsel then deposed Mikesell in January 2009.  (Doc. 188-1 (Mikesell 2009 Dep.).)  She testified that she did not speak to colleagues from ACCS about Petitioner before the trial, but that she did look at his file after the trial was over.  (*Id*. at 118.)  Petitioner's counsel also asked Mikesell if she had  "worked with," gained "any knowledge of," or "had any conversation with," any of the victims or their families prior to Petitioner's trial.  (*Id*. at 120-21.)  Respondent's counsel objected on the ground that the question was beyond the scope of the outside-information juror-bias claim, and the federal magistrate judge presiding over the deposition sustained the objection.  (*Id*. at 120.)

Petitioner then requested and was granted permission to amend his habeas petition to include a second juror-bias claim based on new information.  (Doc. 141.)  This Court denied Petitioner's petition in 2010, rejecting the outside-information juror-bias claim on the merits and the family-relationship juror-bias claim as procedurally defaulted and without merit.  (Doc. 157 at

3

26-32.)

Petitioner appealed that judgment to the Sixth Circuit and in 2014, the circuit court issued a per curiam opinion addressing Petitioner's claim of juror bias based on Mikesell's alleged relationship with the victims' families.  *See Cunningham v. Hudson*, 756 F.3d 477 (6th Cir. 2014).  It determined that this second juror-bias claim was unexhausted and was "not plainly meritless," as "evidence of [Mikesell's] alleged relationship with the families of the victims raises grave concerns about her impartiality . . . ."  *Id*. at 486-87.  It, therefore, vacated this Court's judgment denying Petitioner's petition and remanded the matter to this Court to determine whether it was appropriate to stay-and-abey the petition while Petitioner returned to state court to exhaust the claim.  *Id*. at 479.  This Court subsequently granted Petitioner's request to stay this matter and hold it in abeyance while he exhausted his claim in state court.  (Doc. 173 at 6.)

In state court, Petitioner filed a second-in-time post-conviction petition and motion for leave to file a delayed motion for a new trial, each asserting a single claim of juror bias based on both Mikesell's alleged extra-judicial information about him and her alleged relationship with the victims' families.  (Doc. 188-1 (Second Post-Conv. Pet.) at 38-40; Doc. 209-1 (New-Trial Motion) 14-17.)  In 2015, the trial court denied the post-conviction petition and motion for a new trial on procedural grounds without permitting discovery or an evidentiary hearing.  (Doc. 188-1 at 223-38.)  The state appellate court affirmed the ruling in 2016 (Doc. 188-2 at 159-83), and the Ohio Supreme Court declined jurisdiction over the appeal the following year (Doc. 188-3

4

at 96).

Petitioner then returned to this Court in 2018 and filed an amended habeas petition.  (Doc. 200.)  He also filed a motion for discovery.  (Doc. 206.)  In 2019, this Court again denied Petitioner's family-relationship juror-bias claim as procedurally defaulted and meritless, and denied his motion for discovery.  (Doc. 211.)

Two years later, the Sixth Circuit reversed that judgment and again remanded the case, this time ordering this Court to conduct an evidentiary hearing to investigate Petitioner's two juror-bias claims. *Cunningham v. Shoop*, 23 F.4th 636, 678 (6th Cir. 2022).  As to the family-relationship claim in particular, the circuit court did not dispute that Federal Rule of Evidence 606(b), which generally prohibits jurors from testifying about jury deliberations to impeach a verdict, may apply to exclude evidence at the hearing regarding the jury's deliberations. *Id.* at 661-62.  But, the court suggested that Petitioner conceivably could develop on remand other admissible evidence, such as the testimony of Mikesell or a victim's family member to show that Mikesell intentionally concealed her relationship with the families during voir dire and a truthful response would have provided a valid basis for a challenge for cause, or evidence that the relationship constituted grounds for finding actual or implied bias against Petitioner. *Id*.

Petitioner returned to this Court, which granted him leave to conduct discovery.  (Doc. 237.)  Petitioner obtained more than 4,000 pages of ACCS records (Doc. 249) and conducted depositions, including one of Nichole Mikesell on April 1, 2024 (Doc. 251-1).  The Court's deadline for discovery was April 30, 2024.  (Marginal docket entry of February 7, 2024.)

5

At Mikesell's deposition, she explained that prior to Petitioner's trial, she had heard at work the general facts about the murders at issue – that two individuals shot several people, resulting in two children's deaths – but she did not learn anything more specific about Petitioner until she reviewed his file after the trial.  (Doc. 251-1 (Mikesell 2024 Dep.) at 13-17.)  She further testified that she had "no contact" with the murder victims' families before the trial, and she could not recall if she knew anything about ACCS's involvement with the victims at that time.  (*Id*. at 18-19.)  When asked whether she "ever mention[ed] anything about [ACCS] or her role in [ACCS] to the other jurors[,]" she replied that she could not recall, as the trial took place 22 years ago.  (*Id*. at 19-20.)  Respondent's counsel then objected to that question under Evidence Rule 606(b), as it encompassed the time the jury was deliberating.  (*Id.* at 20.)  Following what he claimed was the "format" that the Magistrate Judge established at Mikesell's 2009 deposition, he instructed Mikesell not to answer any questions concerning jury deliberations pursuant to Rule 606(b).  (*See id.* at 23-34.)  Petitioner's counsel disagreed with the objection, maintaining that the questions were central to the claims at issue and within the scope of the remand, but agreed to have Mikesell not answer objected-to questions with the understanding that he would later seek this Court's ruling on the matter.  (*Id*. at 31.)

Petitioner's counsel then established through questioning that, outside the jury's deliberations, Mikesell never spoke to the other jurors about the victims' families.  (*Id*. at 35-36.)  But, Respondent instructed her not to answer, and she did not answer, the following two questions:  (1) "During deliberations did you ever say to your fellow jurors, you don't understand,

6

I know the victims' families and I'm going to have to go and see them, these families are my clients?"; (2) "[D]uring deliberations did you ever discuss your employment with [ACCS] to any of the other jurors?" (*Id*. at 36.)  At the next status conference held in the case, Petitioner's counsel asked the Court for, and received, permission to brief the issue of Respondent's ability to prevent Mikesell from responding to this line of inquiry under Federal Evidence Rule 606(b). (Marginal docket entry of June 20, 2024.)

Now, Respondent has filed a Motion in Limine, arguing that discovery is "closed" and requesting that, pursuant to Federal Evidence Rule 606(b), this Court not "receive" any evidence of jury deliberations at the evidentiary hearing on Petitioner's juror-bias claims. Petitioner opposes the motion.

### ANALYSIS

As a preliminary matter, Petitioner argues that Respondent's Motion in Limine is premature because discovery is not completed as Respondent contends. The issue of whether Mikesell can answer the questions at her recent deposition about whether she spoke to her follow jurors about her relationship with the victims' families during deliberations remains unresolved. The Court agrees.  It must first determine whether Petitioner can resume Mikesell's deposition and question her on this matter before considering Respondent's Motion in Limine about admissible evidence at the hearing.

According to Petitioner, Respondent improperly instructed Mikesell not to answer the questions at issue.  He points to Rule 30(c)(2) of the Federal Rules of Civil Procedure, which

7

governs objections at depositions.[3]  It provides that "[a]n objection at the time of the examination

. . . must be noted on the record, but the examination still proceeds; the testimony is taken subject

to any objection."  Fed. R. Civ. P. 30(c)(2).  A person may instruct a deponent not to answer

"*only* when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to

present a motion [to terminate or limit the deposition on the ground that it is being conducted in

bad faith] under Rule 30(d)(3)."  *Id.* (emphasis added).

 Respondent does not contend that any of the exceptions to Rule 30(c)(2) apply here.

Instead, he argues that the Court should follow Magistrate Judge McHargh's ruling at Mikesell's

2009 deposition sustaining Respondent's objection to defense counsel's questions about her

knowledge of the victims or their families and precluding her from answering.  But, the

Magistrate Judge did not base his decision on Rule 606(b).  He sustained Respondent's objection

on the ground that the question went beyond the scope of the deposition, which concerned only

the initial, outside-information juror-bias claim. Petitioner had not yet asserted the family-

relationship juror-bias claim.  (Doc. 188-1 (Mikesell 2009 Dep.) at 120.)  The 2024 deposition

covered both claims, and the Magistrate Judge's rulings do not apply.

 Respondent next argues that Mikesell's testimony about what she may have said regarding

the victims' families during jury deliberations is prohibited by Evidence Rule 606(b), which

codifies the longstanding "no impeachment rule." It provides:

---

[3] The Federal Rules of Civil Procedure apply to habeas corpus cases "to the extent that they are not inconsistent with any statutory provisions or these rules."  R. 12, Rules Governing § 2254 Cases in the United States District Courts.

(b) **During an Inquiry Into the Validity of a Verdict or Indictment**.

(1) **Prohibited Testimony or Other Evidence**. During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

(2) **Exceptions**. A juror may testify about whether:
(A) extraneous prejudicial information was improperly brought to the jury's attention;
(B) an outside influence was improperly brought to bear on any juror; or
(C) a mistake was made in entering the verdict on the verdict form.

Fed. R. Evid. 606(b).

As Respondent notes, this rule is grounded in the strong policy interests of "promoting the finality of verdicts and insulating the jury from outside influences." *Warger v. Shauers*, 574 U.S. 40, 45-47 (2014) (citing *McDonald v. Pless*, 238 U.S. 264 (1915)); *see also McKnight v. Bobby*, No. 2:09-CV-059, 2011 WL 379185, at *7 (S.D. Ohio Feb. 2, 2011) (Merz, M.J.) ("In declining to allow depositions of the jurors . . ., the Magistrate Judge intends to enforce the policies behind Fed. R. Evid. 606(b), believing that those policies are properly considered when determining whether there is good cause for discovery under Habeas Rule 6.").

Respondent argues that it is unlikely that the questioning at issue will lead to admissible information relevant to Petitioner's family-relationship juror-bias claim.  Mikesell testified at her recent deposition that she did not recall having any contact with the victims' families or information about their involvement with ACCS prior to trial or "ever mention[ing] anything about [ACCS] or her role in [ACCS] to the other jurors"; and that, outside the jury's

deliberations, she never spoke to the other jurors about the victims' families.  (Doc. 251-1 (Mikesell 2024 Dep.) at 19, 20, 35-36.)

Nevertheless, it is possible that if Mikesell provides any relevant information upon further questioning, it will either be admissible under one of the exceptions to Rule 606(b) or lead to the discovery of admissible, relevant evidence.  And, this Court is mindful of the Sixth Circuit's clear directive in its decision remanding this case that Petitioner must be provided a meaningful opportunity to prove this claim.  Indeed, it specifically mentioned that Mikesell was prevented from answering questions about her knowledge of the victims and their families at her 2009 deposition, observing that:

> Cunningham attempted to offer more evidence in support of his allegations, but his failure to do so was not his fault. As Cunningham noted in his 2018 post-conviction petition, Cunningham asked Mikesell about her relationship with the victims during her deposition, but the district court did not allow Mikesell to answer. R. 188-1 (2018 Postconviction Pet. at 9) (Page ID #2836); R. 188-1 (Mikesell Dep. at 19–20) (Page ID #2917). Cunningham may not be able to rely on juror testimony at the evidentiary hearing, but he does not need to do so to be offered an *opportunity* to prove actual bias. The dissent makes some valid points, which will no doubt constrain the parameters of the evidentiary hearing, but they have no bearing on Cunningham's right to such a hearing.

*Cunningham*, 23 F.4th at 662 (emphasis in original).

Given the circuit court's mandate and the long history of this case, the Court finds the most prudent and efficient course is to permit Petitioner to complete Mikesell's deposition and resume his questioning regarding any discussions she may have had with her fellow jurors about her relationship with the victims' families during deliberations.  Respondent's Motion in Limine, therefore, is premature until that discovery is complete.

**CONCLUSION**

Accordingly, this Court denies without prejudice Respondent's Motion in Limine.  It further orders that the deposition of Nicole Mikesell resume consistent with this opinion.  Any objections to her testimony will be noted and preserved, and Respondent may seek the Court's determination as to the application of Federal Evidence Rule 606(b) to any challenged testimony. The deposition transcript is to be filed under seal, and any testimony found inadmissable under Rule 606(b) will be stricken from the record.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan

PATRICIA A. GAUGHAN
United States District Court

Dated: 11/5/24

11